**IN THE CIRCUIT COURT OF JEFFERSON COUNTY ARKANSAS**
5ᵗʰ  **CIVIL DIVISION**

**PINE BLUFF SCHOOL DISTRICT**                                      **PLAINTIFF**

**VS.**                                    35CV-18-627

**ACE AMERICAN INSURANCE COMPANY**
**AND CHUBB INSURANCE COMPANY**                          **DEFENDANTS**

### COMPLAINT

### JURISDICTION AND VENUE

1.     The Circuit Court of Jefferson County, Arkansas has jurisdiction

of this case because of the fact the Plaintiff is seeking a Declaratory

Judgment and damages against the Defendants in this civil proceeding

thereby giving this Court jurisdiction under Ark. Const. Art. 7 § 11 and Ark.

Code Ann. § 16-13-201.

2.     The venue for this action is in Jefferson County, Arkansas

pursuant to the provisions of Ark. Code Ann. §16-60-101 and Ark Code

Ann. § 23-79-204 and Ark. Code Ann. § 16-66-213 (Civil Justice Reform

Act of 2003).

### PARTIES

3.     Plaintiff is a school district located in Pine Bluff, Jefferson

County, Arkansas. Dr. Michael Robinson, Superintendent of the Pine Bluff

School District (hereinafter Pine Bluff or District) authorized the filing of this



**EXHIBIT**
**A**

FILED IN MY OFFICE AND SUMMONS
ISSUED AT 2:11   O'CLOCK  PM
6-1-18                    DATE
LAFAYETTE WOODS, SR., CLERK
Lisa Jones DC

Complaint and David Hodges, the attorney filing the Complaint, has been authorized to file this lawsuit on behalf of the Plaintiff. Dr. Michael Robinson is located at Pine Bluff School District, 512 South Pine Street, Pine Bluff, Arkansas 71601.

4.     The Defendant is Ace American Insurance Company who issued a policy of insurance, to the Plaintiff, and the Notice can be given to this company, pursuant to the terms of the policy, at the following:

Ace USA - Professional Risk, 1133 Avenue of the Americas, 32nd Floor, New York, New York 10036.

5.     The agent for service for Ace American Insurance Company (hereinafter Ace) is as follows:

The Corporation Company, 124 West Capitol, Suite 1900, Little Rock, Arkansas 72201

6.     The agent for service for Chubb Insurance Company is as follows:

President, Chubb Insurance, 11575 Great Oaks Ways, Suite 200, Alpharetta, AR 30022

## FACTUAL BACKGROUND AND ALLEGATIONS
## COMMON TO ALL COUNTS

7.     Attached hereto as Exh. A is a copy of the policy issued by Ace

American Insurance Company and Chubb Insurance Company to the Plaintiff.

8.     The events described in the underlying litigation against the Plaintiff, filed in Federal Court, occurred during the policy period.

9.     Plaintiff complied with all the terms and conditions requiring coverage for the Plaintiff for the lawsuit brought by Celeste Alexander, Plaintiff, against Pine Bluff School District No. 3, Jefferson County, Pine Bluff, Arkansas, in the United States District Court, Eastern District of Arkansas, Pine Bluff Division, in a Complaint filed September 22, 2016. Attached hereto as Exh. B is a copy of the Complaint filed by Celeste Alexander (hereinafter Alexander) on September 22, 2016.

10.    Defendants employed Cody Kees, a Little Rock, Arkansas, attorney, to defend Pine Bluff School District in the underlying Federal Court case described in Exh. B.

11.    Attached hereto as Exh. C is a copy of the letter issued by Defendants through Whit Kelly, claims specialist – Chubb North American Financial Lines–E.P.L. dated October 25, 2016.

12.    Attached hereto is a letter from Whit Kelly, Claims Specialist, to Dr. Michael Robinson on February 14, 2018, attached hereto as Exh. D.

13.    The Defendants instructed Cody Kees to employ a separate lawyer to represent Michael Nellums, individually, and the Defendant and

Cody Kees employed Khayyam Eddings, an attorney with the Friday, Eldredge & Clark Law Firm, to defend Michael Nellums, who was a principal in the Pine Bluff School District, during the events described in this litigation.

14.    Plaintiff contends there is coverage under the policy for the events described in the underlying Federal Court case.

15.    Plaintiff alleges the Defendants waived any objections to providing full and complete coverage to the Plaintiff under these circumstances.

16.    Plaintiff contends the Defendants are estopped from denying coverage, under these circumstances, because of the facts in this situation.

17.    Plaintiff asks for a Declaratory Judgment that there is coverage from the Defendants in favor of the Plaintiff for the underlying lawsuit filed by Celeste Alexander and that the Defendants owe the cost of defense together with any and all settlement reached with the Plaintiff Celeste Alexander in the underlying Federal Court action together with the payment of all expenses and attorney's fees paid by the Plaintiff arising from the Celeste Alexander litigation together with interest on the amount due from the date of the accrual of the claim until the entry of judgment in the case together with a 12% penalty in attorneys' fees for the maintenance of this lawsuit.

## COUNT I

18.   As a cause of action and ground for relief, Plaintiff alleges the factual matters described in paragraphs no. 1 through 17, inclusive, of the Complaint as a part of this Count.

19.   Plaintiff asks for a Declaratory Judgment that there is coverage from the Defendants in favor of the Plaintiff for the underlying lawsuit filed by Celeste Alexander in the Federal Court, described as Exh. B.

## COUNT II

20.   As a cause of action and ground of relief, Plaintiff alleges the factual matters described in paragraphs no. 1 through 19, inclusive, of the Complaint as a part of this Count.

21.   Plaintiff alleges that the Defendants breached the agreement by failing to pay for all expenses arising from the underlying Federal Court litigation including, but not limited to, paying the attorneys' fees for the attorney for Michael Nellums, paying the amount arrived at by way of settlement in this case with the Plaintiff in the underlying case, including payment of attorneys' fees and all other expenses arising from the defense of the underlying case in Federal Court.

## COUNT III

22.   As a cause of action and ground for relief, Plaintiff alleges the

factual matters described in paragraphs no. 1 through 21, inclusive, of the

Complaint as a part of this Count.

23.    Plaintiff contends that the Defendant waived any and all alleged

defenses to coverage under these circumstances by the facts arising in this

situation.

## COUNT IV

24.    As a cause of action and ground for relief, Plaintiff alleges the

factual matters described in paragraphs no. 1 through 23, inclusive, of the

Complaint as part of this Count.

25.    Plaintiff contends the Defendants are estopped from claiming no

coverage under these circumstances by reason of the facts arising in this

situation.

## DAMAGES

26.    Plaintiff asks for an award of damages for all of the expenses

paid by the Plaintiff arising from the Federal Court litigation including, but not

limited to, attorneys' fees expended, costs paid by the Plaintiff, together

with a Declaratory Judgment that there is coverage from the Defendants to

the Plaintiff under these circumstances together with a 12% penalty in

attorneys' fees, and any all other expenses incurred by the Plaintiff in the

defense of the underlying case including, but not limited to, the settlement

amount reached with the Plaintiff in the underlying case, Celeste Alexander, together with any award of attorneys' fees by the Federal Court to the attorney for Celeste Alexander, together with any and all other expenses incurred and/or sustained by the Plaintiff arising from this incident.

### JURY DEMAND

27.   Plaintiff, pursuant to Rule 38 of Arkansas Rules of Civil Procedure, demands a jury trial on all factual issues.

**PINE BLUFF SCHOOL DISTRICT, PLAINTIFF**

By: _____

**David A. Hodges**
**Attorney at Law**
**Centre Place**
**212 Center Street, Fifth Floor**
**Little Rock, Arkansas 72201-2429**
**Arkansas Bar No. 65021**
**Telephone: (501) 374-2400**
**Facsimile:  (501) 374-8926**
**E-Mail:     david@hodgeslaw.com**


**ACE American Insurance Company**

# ACE Scholastic Advantage<sup>SM</sup>
## Educators Legal Liability Policy
### Declarations

**This Policy is issued by the stock insurance company listed above.**

THIS POLICY IS A CLAIMS MADE AND REPORTED POLICY.   EXCEPT AS OTHERWISE PROVIDED HEREIN, THIS POLICY COVERS ONLY CLAIMS FIRST MADE AGAINST THE INSUREDS AND REPORTED TO THE INSURER DURING THE POLICY PERIOD OR EXTENDED REPORTING PERIOD, IF APPLICABLE. AMOUNTS INCURRED FOR DAMAGES AND CLAIMS EXPENSES SHALL BE APPLIED AGAINST THE RETENTION AMOUNT. PLEASE READ THIS POLICY CAREFULLY.

TERMS THAT APPEAR IN BOLD FACE TYPE HAVE SPECIAL MEANING.  PLEASE REFER TO SECTION II, DEFINITIONS.

| Policy No. EON G23670471 004 | |
|---|---|
| Item 1. | **Educational Institution:**     Pine Bluff School District<br>           **Principal Address:**     512 S. Pine St<br>                                          Pine Bluff, AR 71601 |
| Item 2. | **Policy Period:**<br>           From: 12:01 a.m. 02/01/2016          To: 12:01 a.m 02/01/2017<br>           (Local time at the address shown in Item 1) |
| Item 3. | Limits of Liability Each **Claim** and in the Aggregate for all **Claims** including **Claims Expenses:**<br><br>           $1,000,000 |
| Item 4. | Retention<br><br>     A.    For **Damages** and **Claims Expenses** under Insuring Agreement IA.1:<br>            $ Zero                      each **Claim**<br><br>     B.    For **Damages** and **Claims Expenses** under Insuring Agreement IA.2 and IB:<br>            $25,000                    each **Claim**<br><br>     C.    For **Damages** and **Claims Expenses** under Insuring Agreement IC:<br>            $25,000                    each **Claim** |

**EXHIBIT A**

| Item 5. | Notice to Insurer: | | |
|---|---|---|---|
| | A. | Notice of **Claim** or **Wrongful Act**: | |
| | | Director of Professional Liability Claims<br>**ACE** Professional Risk<br>P.O. Box 5105<br>Scranton, PA 18505-0518<br>Fax Number: 877-201-8787 | |
| | B. | All other notices: | |
| | | Chief Underwriting Officer<br>ACE USA - Professional Risk<br>1133 Avenue of the Americas, 32nd Floor<br>New York, NY 10036 | |
| Item 6. | **Policy Premium:** | | $22,500 |
| Item 7. | **Extended Reporting Period:** | | |
| | A. | Additional Premium: | 100% of Annual Premium |
| | B. | Additional Period: | 12 Months |
| Item 8. | **Crisis Management Fund:** | | |
| | $25,000 | | |

IN WITNESS WHEREOF, the **Insurer** has caused this **Policy** to be countersigned by a duly authorized representative of the **Insurer**.

DATE: 02/23/2016

JOHN J. LUPICA, President
**Authorized Representative**



**ACE American Insurance Company**

# ACE Scholastic Advantage<sup>SM</sup> Educators Legal Liability Policy

In consideration of the payment of the premium, in reliance upon the **Application**, and subject to the Declarations and the terms and conditions, limit of liability and other provisions of this **Policy**, the **Insureds** and the **Insurer** agree as follows:

I.   INSURING AGREEMENTS

   A.   **Insured Educators' Legal Liability**

      1.   **School Officials' Liability**

         The **Insurer** will pay on behalf of the **Insured Educators** all **Damages** and **Claims Expenses** for which the **Insured Educators**:

         a.   are not indemnified by the **Educational Institution**, and

         b.   which the **Insured Educators** become legally obligated to pay

         by reason of a **Claim** first made against the **Insured Educators** and reported to the **Insurer** during the **Policy Period** or, if elected, the **Extended Reporting Period**, for any **Wrongful Act** taking place prior to the end of the **Policy Period**.

      2.   **Educational Institution Reimbursement**

         The **Insurer** will pay on behalf of the **Educational Institution** all **Damages** and **Claims Expenses** for which the **Educational Institution**:

         a.   has indemnified the **Insured Educators**,  and

         b.   which the **Insured Educators** become legally obligated to pay

         by reason of a **Claim** first made against the **Insured Educators** and reported to the **Insurer** during the **Policy Period** or, if elected, the **Extended Reporting Period**, for any **Wrongful Act** taking place prior to the end of the **Policy Period**.

   B.   **Educational Institution Liability**

      The **Insurer** will pay on behalf of the **Educational Institution** all **Damages** and **Claims Expenses** for which the **Educational Institution** becomes legally obligated to pay by reason of a **Claim** first made against the **Educational Institution** and reported to the **Insurer** during the **Policy Period** or, if elected, the **Extended Reporting Period**, for any **Wrongful Act** taking place prior to the end of the **Policy Period**.

   C.   Employment Practices Liability

      The **Insurer** will pay on behalf of the **Insureds** all **Damages** and **Claims Expenses** for which the **Insureds** becomes legally obligated to pay by reason of a **Claim** first made against an **Insured** and reported to the **Insurer** during the **Policy Period** or, if elected, the **Extended Reporting Period**, for any **Wrongful Act** taking place prior to the end of the **Policy Period**.

D.  **Educational Institution** Crisis Management Coverage

The **Insurer** will pay on behalf of the **Educational Institution** the **Crisis Management Expense** for which the **Educational Institution** becomes legally obligated to pay by reason of a **Crisis Event** first occurring during the **Policy Period**, but only up to the limit of liability for the **Crisis Management Fund**.

II.  DEFENSE

A.  The **Insurer** shall have the right and duty to defend any covered **Claim** made against the **Insured** and reported to the **Insurer** during the **Policy Period** or, if elected, the **Extended Reporting Period**, for any **Wrongful Act** taking place prior to the end of the **Policy Period**, even if such **Claim** is groundless, false or fraudulent.

B.  The **Insured** shall not admit or assume liability or settle or negotiate to settle any **Claim** or incur any **Claims Expenses** without the prior written consent of the **Insurer**.

C.  The **Insurer** shall have the right to appoint counsel and to make such investigation and defense of a covered **Claim** as it deems necessary.

D.  The **Insurer** shall not settle any **Claim** without the written consent of the **Educational Institution**, which consent shall not be unreasonably withheld.

E.  The **Educational Institution** may settle any **Claim** to which this insurance applies provided that the **Educational Institution** does so:

1.  on behalf of all **Insureds** with prejudice; and

2.  without incurring any **Claims Expenses** and/or **Damages** in excess of the Retention.

F.  If the **Educational Institution** refuses to consent to a settlement or a compromise recommended by the **Insurer** and acceptable to the claimant, then the **Insurer's** Limit of Liability under this **Policy** with respect to such **Claim** shall be reduced to:

1.  the amount of **Damages** for which the **Claim** could have been settled plus all **Claims Expenses** incurred until the date of such refusal, and

2.  50% of all subsequent covered **Claims Expenses** in excess of such amount, which sum shall not exceed the unexhausted Limits of Liability specified in Item 3 of the Declarations.

The remaining 50% of **Claims Expenses** and all subsequent **Damages** shall be borne uninsured by the **Insureds** and at their own risk.

In such event, the **Insurer** shall tender a check to the **Insured** for the recommended settlement amount, and shall be relieved of any further duty or obligation, except as otherwise stated in this subsection F.2. above.

G.  The **Insurer** shall not be obligated to investigate, defend, pay or settle, or continue to investigate, defend, pay or settle, any **Claim** after any applicable Limit of Liability specified in Item 3 of the Declarations has been exhausted:

1.  by payment of **Damages** and **Claims Expenses**, or by any combination thereof, or

2.  after the **Insurer** has deposited the remainder of any unexhausted applicable Limit of Liability into a court of competent jurisdiction.

In such case, the **Insurer** shall withdraw from the investigation, defense, payment or settlement of such **Claim** and shall tender the investigation, defense and control of such **Claim** to the **Insured**.

H. The **Insureds** shall cooperate with the **Insurer**, and provide to the **Insurer** all information and assistance which the **Insurer** reasonably requests including but not limited to:

1. attending hearings,

2. depositions and trials and assistance in effecting settlements,

3. securing and giving evidence, or

4. obtaining the attendance of witnesses and conducting the defense of any **Claim** covered by this **Policy**.

I. The **Insureds** shall do nothing that may prejudice the **Insurer's** position.

J. The **Insureds** shall immediately forward to the **Insurer**, at the address indicated in Item 5A of the Declarations, every demand, notice, summons, or other process or pleadings received by the **Insured** or its representatives.

III. DEFINITIONS

When used in this **Policy**, the following bold-faced words have the following meaning:

A. **Adverse Publicity**: The publication of unfavorable information regarding the **Educational Institution** which can reasonably be considered to materially reduce public confidence in the competence, integrity or viability of the **Educational Institution** to conduct operations.

Such publication must occur in a report about an **Insured** appearing in:

1. a daily newspaper of general circulation;

2. a magazine or other published periodical; or

3. a radio or television news program.

B. **Application**:

1. all applications, including any attachments thereto, and

2. all other information and materials submitted by or on behalf of the **Insureds** to the **Insurer** in connection with the **Insurer** underwriting this **Policy** or any **Policy** of which this **Policy** is a direct or indirect renewal or replacement or which it succeeds in time.

All such applications, attachments, information and materials are deemed attached to and incorporated in this **Policy**.

C. **Bodily Injury**:

1. physical injury to the body,

2. physical pain,

3. sickness,

4. disease,

5. death, and

6. **Mental Distress**.

D.  **Claim:**

1.  a written demand against any **Insured** for monetary **Damages** or non-monetary or injunctive relief;

2.  a civil proceeding against any **Insured** seeking monetary **Damages** or non-monetary or injunctive relief, commenced by the service of a complaint or similar pleading;

3.  a mediation or arbitration proceeding, but only if the **Insurer** has provided its prior written consent to such proceeding, against any **Insured** seeking monetary **Damages** or non-monetary or injunctive relief;

4.  a civil, administrative or regulatory proceeding against any **Insured** commenced by:

    a.  the issuance of a notice of charge or formal investigative order, including without limitation any such proceeding by or in association with:

        i.  the Equal Employment Opportunity Commission, or

        ii. any other similar federal, state or local governmental authority located anywhere in the world;

    b.  the service upon or other receipt by any **Insured** of a written notice or subpoena from the investigating authority identifying any **Insured** as an individual against whom a civil, administrative or regulatory investigation or proceeding is to be commenced;

5.  a **Special Needs Hearing;** or

6.  a written request of the **Insured** to toll or waive a statute of limitations applicable to a **Claim** described in paragraphs 1 through 4 above; provided however, this subparagraph only applies with respect to coverage provided under Insuring Agreement I.C,

including any appeal from any of the above.

In all cases, **Claim** shall not include a labor or grievance arbitration or proceeding which is subject or pursuant to a collective bargaining agreement.

E.  **Claims Expenses:**

1.  reasonable and necessary attorneys' fees, expert witness fees and other fees and costs incurred by the **Insurer**, or by the **Insured** with the **Insurer's** prior written consent, in the investigation and defense of covered **Claims;** and

2.  reasonable and necessary premiums for any appeal bond, attachment bond or similar bond; provided however the **Insurer** shall have no obligation to apply for or furnish such bond;

**Claims Expenses** shall not include wages, salaries, fees or costs of **Educational Executives** or **Employees** of the **Insurer** or the **Insured** or **Crisis Management Expense.**

F.  **Crisis Event:** One of the following, except where coverage is otherwise excluded under Exclusions E and N of the **Policy.**

1.  **Management Event:** The incapacity, death or state or federal criminal indictment of an **Educational Executive;**

2.  **Funding Cancellation:** The cancellation, withdrawal or revocation of $500,000 or more in funding, donation(s), grant(s) or bequest(s) by a non-government entity or person to the **Educational Institution;**

3. Bankruptcy:  The disclosure by the **Educational Institution** of:

    a.  its intention to file or its actual filing for protection under federal bankruptcy laws, or

    b.  a third-party's intention to file or its actual filing of an involuntary bankruptcy petition under federal bankruptcy laws with respect to the **Educational Institution**;

4. Employment Event:  The disclosure by the **Educational Institution** of the threatened or actual commencement by a third party of an action, audit or investigation alleging a **Wrongful Employment Practice** by the **Educational Institution** which has caused or is reasonably likely to cause **Adverse Publicity**; and

5. Material Event:  Any other material event which, in the good faith opinion of the **Educational Institution**, has caused or is reasonably likely to result in **Adverse Publicity**, but only if such material event is scheduled for coverage by written endorsement to this **Policy**.

G.  **Crisis Management Expense:**

1. expenses incurred by the **Educational Institution** during a period beginning ninety (90) days prior to and in reasonable anticipation of a **Crisis Event** and ending ninety (90) days after an actual or reasonably anticipated **Crisis Event.**

2. this is irrespective of whether a **Claim** is actually made with respect to the subject **Crisis Event.**

3. the **Insurer** must have been notified of the **Crisis Management Expense** within thirty (30) days of the date the **Educational Institution** first incurs the subject **Crisis Management Expense.**

4. such expenses are as follows:

    a.  the reasonable and necessary expenses directly resulting from a **Crisis Event** which the **Educational Institution** incurs for **Crisis Management Services** provided to the **Educational Institution** by a **Crisis Management Firm**; and

    b.  the reasonable and necessary expenses directly resulting from a **Crisis Event** which the **Educational Institution** incurs for:

        i.  advertising, printing, or the mailing of matter relevant to the **Crisis Event**, and

        ii.  out of pocket travel expenses incurred by or on behalf of the **Educational Institution** or the **Crisis Management Firm.**

5. **Crisis Management Expense** does not include those amounts which otherwise would constitute compensation, benefits, fees, overhead, charges or expenses of an **Insured** or any of the **Insured's Employees.**

H.  **Crisis Management Firm:**  A marketing firm, public relations firm, law firm, or other professional services entity retained by the **Insurer**, or by the **Educational Institution** with the **Insurer's** prior written consent, to perform **Crisis Management Services** arising from a **Crisis Event.**

I.  **Crisis Management Fund:**  The amount specified in Item 8 of the Declarations.

J.  **Crisis Management Services:**  The professional services provided by a **Crisis Management Firm** in counseling or assisting the **Educational Institution** in reducing or minimizing the potential harm to the **Educational Institution** caused by the public disclosure of a **Crisis Event.**

K. **Damages:**

1. compensatory damages,

2. judgments,

3. any award of prejudgment and post-judgment interest, and

4. settlements

which the **Insured** becomes legally obligated to pay on account of any **Claim** first made against any **Insured** during the **Policy Period** or, if elected, the **Extended Reporting Period**, for Wrongful Acts to which this **Policy** applies.

**Damages** also include punitive and exemplary damages and the multiple portion of any multiplied damage award, if and to the extent such damages are insurable under the law of the applicable jurisdiction most favorable to the insurability of such damages.

With respect to any **Claim** arising out of a **Wrongful Employment Practice**, **Damages** shall also mean:

1. front pay and back pay, except as otherwise stated below; and

2. liquidated damages awarded pursuant to the Age Discrimination in Employment Act of 1967 or the Equal Pay Act of 1963.

**Damages** shall not include:

1. any amount for which the **Insured** is not financially liable or legally obligated to pay;

2. taxes, fines or penalties; provided, however. this limitation does not include the ten percent [10%] penalty excise tax imposed upon any **Insured Educator** pursuant to 26 U.S.C. §4558(a)(2) for participation in an excess benefit transaction;

3. matters uninsurable under the laws pursuant to which this **Policy** is construed;

4. employment-related benefits, retirement benefits, perquisites, vacation and sick days, medical and insurance benefits, deferred cash incentive compensation or any other type of compensation; provided, however, this limitation does not include salary, wages, bonuses, commissions and non-deferred cash incentive compensation in a settlement or judgment for a **Wrongful Employment Practice**;

5. the cost to comply with any injunctive or other non-monetary or declaratory relief, including specific performance, or any agreement to provide such relief;

6. any liability or costs incurred to modify any building or property to make it more accessible or accommodating to any person;

7. any liability or costs in connection with any educational, sensitivity or other corporate program, policy or seminar;

8. **Crisis Management Expense;**

9. the value of tuition of scholarship;

10. the reimbursement of tuition, books, transportation expenses and other fees associated with educational activities;

11. any amount that an **Insured** shall be required to pay pursuant to an **Special Needs Hearing** award, other than prevailing party fees;

12. liquidated damages, except to the extent specifically included as **Damages** above; or

13. the return of funds which were received:

    a. from any federal, state or local governmental agency and any interest, fines or penalties arising out of the return of such funds; or

    b. as donations from a third party.

L. **Discrimination:** Any actual or alleged violation of employment discrimination laws anywhere in the world, including violations based on race, color, religion, creed, age, sex, disability, marital status, national origin, pregnancy, HIV status, sexual orientation or preference, military status.

M. **Educational Executive:** An **Executive** of the **Educational Institution** or a **Subsidiary**.

N. **Educational Institution:** The institution of learning named in Item 1 of the Declarations. **Educational Institution** also shall include any such institution in its capacity as debtor-in-possession as defined in United States bankruptcy law or its equivalency where the laws of another country apply.

O. **Employee:** Any natural person whose services or labor is engaged and directed by, and who is acting solely within the scope of his or her employment with, the **Educational Institution**, including any:

1. principal, assistant principal, chancellor, provost, dean, personnel director, risk manager, university counsel, administrator, chaplain, guidance counselor, faculty member, student teacher, teaching assistant, faculty aid, or any other full-time, part-time, seasonal, leased or temporary employee or volunteer;

2. association member, representative to an education association of which the **Educational Institution** is a member, or any alumni council member of the **Educational Institution**;

3. student of the **Educational Institution** while serving in a supervised internship program in satisfaction of course requirements; or

4. independent contractors who are natural persons, but only with respect to:

    a. services performed by the independent contractor on behalf of the **Educational Institution** or **Subsidiary** thereof, and

    b. those independent contractors whom the **Educational Institution** is required to indemnify based upon written contract or indemnity agreement which was executed by both the **Educational Institution** or **Subsidiary** and the independent contractor prior to the commission of the **Wrongful Act** for which indemnity is being sought.

P. **Executive:** Any natural person who was, now is or shall become a duly elected or appointed director, officer, trustee, manager, in-house general counsel, governor, duly constituted committee member (or the functional equivalent of such positions).

Q. **Excluded Personal Conduct:**

1. dishonest, fraudulent, criminal or malicious act, error or omission by an **Insured**;

2. any intentional or knowing violation of the law by an **Insured**; or

3. any gaining in fact of any profit, remuneration or advantage to which any **Insured** was not legally entitled.

R.  **Extended Reporting Period:** The period for the extension of coverage, if elected, described in Section VII, **Extended Reporting Periods.**

S.  **Incidental Medical Malpractice:** Injury arising out of emergency medical services rendered or which reasonably should have been rendered to any person or persons by any duly certified emergency medical technician, paramedic or nurse who is:

1.  an **Employee** of the **Educational Institution**, or

2.  acting on its behalf to provide such services, but is not employed, either full-time or part-time, at a hospital, clinic or nursing home facility.

**Incidental Medical Malpractice** also includes injury arising out of the dispensation of prescribed medicine.

T.  **Insured:** The **Educational Institution, Subsidiaries** and any **Insured Educators.**

U.  **Insured Educators:**

1.  all persons who were, now are or shall be an **Educational Executive;**

2.  all persons who were, now are or shall be lawfully elected or appointed members of the board of education or board of regents of the **Educational Institution;**

3.  **Employees** of the **Educational Institution;**

4.  student teachers and volunteers while acting solely for or on behalf of, and at the written request and under the direction of, the **Educational Institution;**

5.  commissions, boards, or other units, and members and **Employees** thereof, operated by and under the jurisdiction of such **Educational Institution** and within an apportionment of the total operating budget indicated in the application for this **Policy;**

6.  elected or duly appointed **Educational Executives** and **Employees** of the **Educational Institution** while acting at the written request of the **Educational Institution** in their capacity as a duly appointed official of a governmentally-recognized outside tax exempt entity; or

7.  elected or duly appointed **Educational Executives** and **Employees** of the **Educational Institution** while acting at the written request of the **Educational Institution** and in their capacity as a director or officer of a **Not-for-Profit Entity** for any **Wrongful Acts** they have committed in their respective capacities as a director or officer of such **Not-for-Profit Entity,** provided that:

a.  the appointment of the elected or duly appointed official or **Employee** to such **Not-for-Profit Entity** is based solely upon the person's being an elected or duly appointed **Educational Executive** or **Employee** of the **Educational Institution;** and

b.  such elected or duly appointed **Educational Executive** or **Employee** is directed in writing by the **Educational Institution** to serve as a director or officer of such **Not-for-Profit Entity** prior to beginning such service;

Coverage afforded under this **Policy** to the above **Insured Educators** applies only to the extent such persons are acting solely in their capacities as legally authorized representatives, and solely within the scope, of their employment with or representation of the **Educational Institution**

V.  **Insured Educator's Legal Representatives:** The estate, heirs, legal representatives, assigns, spouses and legally recognized domestic partners of any **Insured Educator.**

W. **Insurer:** The insurance company providing this insurance.

X. **Interrelated Wrongful Acts:** All Wrongful Acts that have as a common nexus any fact, circumstance, situation, event, transaction, cause or series of related facts, circumstances, situations, events, transactions or causes.

Y. **Mental Distress:** Mental distress, mental injury, mental anguish, mental tension, pain and suffering, shock and humiliation; provided, however, such **Mental Distress** must arise from and be accompanied by objectively identifiable and demonstrable injury to the claimant's body, sickness, disease or death.

Z. **Network Security or Privacy Breach:**

1. The actual failure or inability of the security of the **Educational Institution's** computer system's to prevent a computer attack or mitigate loss arising in whole or in part from a computer attack;

2. physical theft, loss or mysterious disappearance of:

   a. firmware,

   b. hardware (including components thereof), or

   c. hard copy files,

   owned and/or controlled by the **Educational Institution** on which electronic data or **Personal Information** is stored, by a person other than an **Insured**, from a premises occupied and/or controlled by the **Educational Institution**, or

3. the wrongful disclosure of any **Personal Information** by any means whatsoever.

AA. **Not-for-Profit Entity:** A non-profit corporation, community chest, fund, foundation or other entity that is not included in the Definition of **Educational Institution** and that is exempt from federal income tax as an organization described in Section 501(c)(3) of the Internal Revenue Code of 1986, as amended.

BB. **Outside Entity:** Any

1. for-profit corporation or other for profit entity, or

2. **Not-for-Profit Entity.**

CC. **Personal Information:** An individual's

1. name,

2. social security number,

3. medical or healthcare data,

4. other protected health information,

5. drivers license number,

6. state identification number,

7. credit card number,

8. debit card number,

9. address,

10. telephone number,

11. account number,

12. account histories,

13. passwords, or

14. other nonpublic personal information as defined in **Privacy Regulations**.

**Personal Information** shall not include information that is lawfully made available to the general public for any reason, including but not limited to information from federal, state or local government records.

DD. **Personal Injury:** Injury arising out of one or more of the following offenses:

1. false arrest, detention or imprisonment;

2. malicious prosecution;

3. libel, slander or other defamatory or disparaging material;

4. publication or an utterance in violation of an individual's right to privacy; and

5. wrongful entry or eviction, or other invasion of the right to private occupancy.

EE. **Policy:** Collectively, the Declarations, the **Application**, this **Policy**, including any endorsements.

FF. **Policy Period:** The period of time specified in Item 2 of the Declarations, subject to prior termination pursuant to Section XIV, Termination of the **Policy**.

GG. **Pollutants:**

1. Any substance exhibiting any hazardous characteristics as defined by, or identified on, a list of hazardous substances issued by the United States Environmental Protection Agency or any federal, state, county, municipal or local counterpart thereof or any foreign equivalent.

2. Such substances shall include, without limitation:

    a. solids,

    b. liquids,

    c. gaseous or thermal irritants,

    d. contaminants or smoke,

    e. vapor,

    f. soot,

    g. fumes,

    h. acids,

    i. alkalis,

      j.   chemicals or waste materials, including materials to be recycled, reconditioned, or reclaimed.

3.   **Pollutants** shall also mean any other air emission, odor, waste water, oil or oil products, infectious or medical waste, asbestos or asbestos products, noise, lead, dust, fibers, germs, fungus (including mold or mildew and any mycotoxins, spores, scents or byproducts produced or released by fungi) and electric or magnetic or electromagnetic field.

HH.  **Privacy Regulations:** The following statutes and regulations associated with the care, custody, control or use of personally identifiable financial, medical or other sensitive information:

1.   Health Insurance Portability and Accountability Act of 1996 (Public Law 104-191);

2.   Gramm-Leach-Bliley Act of 1999;

3.   California Security Breach Notification Act (CA SB 1386);

4.   Section 5(a) of the Federal Trade Commission Act, 15 U.S.C. § 45(a), but solely for alleged violations of unfair or deceptive acts or practices in or affecting commerce;

5.   The Family Educational Rights and Privacy Act (also known as the Buckley Amendment); and

6.   other similar local, state, federal, or foreign identity theft and privacy protection legislation that requires commercial entities that collect **Personal Information** to post privacy policies, adopt specific privacy or security controls, or notify individuals in the event that **Personal Information** has potentially been compromised.

II.  **Professional Service:**

1.   services that may be legally performed only by an individual holding a professional license, regardless of whether the person is licensed or not, or

2.   any service provided for a fee or remuneration by an **Insured Educator** to any party other than an **Educational Institution.**

JJ.  **Property Damage:**

1.   physical injury to, or loss or destruction of, tangible or intangible property, including the loss of use thereof; and

2.   loss of use of tangible or intangible property which has not been physically injured, lost, damaged or destroyed.

KK.  **Retaliation:**  Retaliatory treatment on account of:

1.   the actual or attempted exercise by an **Employee** of any rights of such an **Employee** under law, including workers' compensation laws, the Family and Medical Leave Act, and the Americans with Disabilities Act;

2.   the filing of any claim under any statute, rule or regulation to protect an **Employee** from **Discrimination** by his or her employer if:

    a.   such **Employee** discloses or threatens to disclose to a superior or a governmental agency, or

    b.   such **Employee** gives testimony relating to, any activity within such employer's operations which may be in violation of a statute, rule or regulation or any professional codes of ethics, including the Federal False Claims Act;

3. the disclosure or threat of disclosure by an **Employee of the Educational Institution** to a superior or to any governmental agency of any act by an **Insured** which act is alleged to be a violation of any federal, state, local or foreign law, common or statutory, or any rule or regulation promulgated thereunder;

4. an **Employee** assisting, cooperating or testifying in any proceeding or investigation into whether an **Insured** violated any federal, state, local or foreign law, common or statutory, or any rule or regulation promulgated thereunder; or

5. any strike of any **Employee** of the **Educational Institution**

LL. **Sexual Abuse and Molestation:** Any actual, attempted or alleged criminal sexual conduct of a person by another person, or persons acting in concert, which causes physical and/or mental injuries. **Sexual Abuse and Molestation** includes:

1. sexual molestation,

2. sexual assault,

3. sexual exploitation, or

4. sexual injury.

**Sexual Abuse and Molestation** does not include **Sexual Harassment.**

MM. **Sexual Harassment:** Any actual or alleged unwelcome sexual advances, requests for sexual favors or other conduct of a sexual nature, of a person by another person, or persons acting in concert, which causes physical and/or mental injuries. **Sexual Harassment** includes the above conduct:

1. when submission to or rejection of such conduct is made either explicitly or implicitly a condition of a person's employment, or a basis for employment decisions affecting a person; or

2. when such conduct has the purpose or effect of unreasonably interfering with a person's work performance or creating an intimidating, hostile, or offensive work environment.

**Sexual Harassment** does not include **Sexual Abuse and Molestation.**

NN. **Special Needs Hearing:** A due process hearing:

1. conducted at the written request of a student's parent(s) or legal guardian;

2. which is presided over by an impartial arbiter; and

3. of which the subject is an individual education plan which addresses the special educational needs of a student with disabilities that is jointly developed by the **Educational Institution** and the student's parent(s) or legal guardian.

OO. **Subsidiary(ies):** Any entity, other than a joint venture, in which the **Educational Institution:**

1. on or before the inception date of the **Policy Period,** owns, directly or through one or more **Subsidiaries,** more than fifty percent (50%) of the voting, appointment or designation power, either directly or indirectly through one or more **Subsidiaries,** for the selection of a majority of such organization's voting directors or trustees;

2. has the right, pursuant to written contract or the by-laws, charter, operating agreement or similar documents of the **Educational Institution** or any **Subsidiary,** to elect, appoint or designate a majority of the organization's voting directors or trustees, whether directly or indirectly through on or more **Subsidiaries;**

3. acquires a greater than fifty percent (50%) interest during the **Policy Period** and of which the book value of such entity's assets determined in accordance with Generally Accepted Accounting Practices ("GAAP"):

   a. total less than 25% of the similarly calculated assets of the **Educational Institution** as of the inception date of the **Policy Period**. Provided that the **Educational Institution** shall provide the **Insurer** with full particulars of the **Subsidiary** before the end of the **Policy Period**, or

   b. exceeds 25% of the similarly calculated assets of the **Educational Institution** as of the inception date of the **Policy Period**. Such coverage is extended to such **Subsidiary** only upon the condition that within ninety (90) days after the date of its becoming a **Subsidiary** the **Educational Institution** shall :

      i. have provided the **Insurer** with full particulars of the new **Subsidiary**;

      ii. agreed to any additional premium or amendment of the provisions of this **Policy** required by the **Insurer** relating to such new **Subsidiary**, and

      iii. pay when due any additional premium required by the **Insurer** relating to the new **Subsidiary**.

Coverage afforded under this **Policy** with respect to **Claims** made against any **Subsidiary** or any **Insured Educator** thereof shall only apply for **Wrongful Acts** occurring after the effective time such **Subsidiary** became a **Subsidiary** and prior to the time such **Subsidiary** ceased to be a **Subsidiary**.

PP. **Wrongful Act**: With regard to:

1. Insuring Agreements I.A.1 and 1.A.2:

Any actual or alleged error, omission, act, misstatement, misleading statement, breach of duty by an **Insured Educator** while acting solely in their capacity as such and solely within the scope of their employment with or representation of the **Educational Institution**;

2. Insuring Agreement I.B:

Any actual or alleged error, omission, act, misstatement, misleading statement, breach of duty by the **Educational Institution** or by any independent contractor or leased employee that is not an **Insured Educator**; or

3. Insuring Agreement I.C:

   a. Solely with respect to **Claims** brought and maintained by or on behalf of any **Employee** or applicant for employment with the **Educational Institution**, a **Wrongful Employment Practice** committed or attempted by the **Educational Institution** or by any Insured **Educator** acting solely in their capacity as such and on behalf of the **Educational Institution** and only to the extent the **Insured Educator** or other alleged wrongful actor was acting solely within the scope of their employment with or representation of the **Educational Institution**; or

   b. with respect to all other **Claims**, **Discrimination** or **Sexual Harassment**, or a violation of a natural person's civil rights relating to such **Discrimination** or **Sexual Harassment**, whether direct, indirect, intentional or unintentional, by the **Insured Educator** acting solely within the scope of their employment with or representation of the **Educational Institution**.

4. **Wrongful Act**, in all cases, does not mean and shall not include any actual or alleged error, omission, act, misstatement, misleading statement, or breach of duty alleging, based on, arising out of or attributable to, in whole or in part, a **Network Security or Privacy Breach**.

QQ. **Wrongful Employment Practice:**  Any actual or alleged:

1. wrongful dismissal, discharge or termination, whether actual or constructive;

2. employment-related misrepresentation;

3. **Discrimination;**

4. **Sexual Harassment** or unlawful workplace harassment;

5. wrongful deprivation of a career opportunity;

6. wrongful demotion;

7. failure to employ or promote;

8. wrongful discipline;

9. **Retaliation;**

10. negligent evaluation;

11. employment-related libel, slander, defamation, humiliation, invasion of privacy;

12. the giving of negative or defamatory statements in connection with an **Employee** reference;

13. failure to grant tenure; and

14. with respect to paragraphs QQ.1 through QQ.13 above, inclusive, negligent hiring, retention, training or supervision; infliction of emotional distress or mental anguish; failure to provide or enforce adequate or consistent corporate policies and procedures; or violation of an individual's civil rights;

of any past, present or prospective full-time, part-time, seasonal and temporary **Employee** or volunteer or leased **Employee** or applicant for employment of the **Educational Institution.**  Coverage afforded by this **Policy** applies only to the extent that the **Employee,** volunteer or leased **Employee** or applicant for employment was acting:

a. solely in their capacity as such,

b. on behalf of the **Educational Institution,** and

c. only to the extent the person was acting solely within the scope of their actual or proposed employment with the **Educational Institution.**

The foregoing definitions shall apply equally to the singular and plural forms of the respective words.

## IV. EXCLUSIONS

Except as limited under Insuring Agreement I.D, **Educational Institution** Crisis Management Coverage, the **Insurer** shall not be liable for **Damages** or **Claims Expenses** on account of any **Claim:**

A. alleging, based upon, arising out of or attributable to any **Excluded Personal Conduct**. However, this exclusion shall not apply:

    1.  unless and until there is an adverse admission by, finding of fact, or final adjudication against any **Insured** as to such **Excluded Personal Conduct**, at which time the **Insured** shall reimburse the **Insurer** for all **Damages** and **Claims Expenses** paid or incurred on account of such **Claim**; or

    2.  that part of any **Claim** for **Wrongful Employment Practice.**

The **Wrongful Act** of any **Insured Educator** shall not be imputed to any other **Insured Educator** for the purpose of determining the applicability of the above exclusion. Further, only facts pertaining to and knowledge possessed by any past, present or future **Educational Executives** of the **Educational Institution** shall be imputed to the **Educational Institution**.

B. seeking relief or redress in any form other than monetary damages, or **Claims Expenses** for a **Claim** seeking injunctive or other non-monetary relief. However, the **Insurer** shall defend such a **Claim** in accordance with Section II, Defense, subject to a **Policy Period** aggregate limit of liability of $100,000. This limit shall be part of the Limit of Liability stated in Item 3 of the Declarations.

C. alleging, based upon, arising out of or attributable to any:

    1.  **Bodily Injury**, other than **Mental Distress** arising out of a **Wrongful Employment Practice**. This also includes, but is not limited to, corporal punishment;

    2.  **Property Damage;**

    3.  **Personal Injury**, other than libel, slander or defamation in any form arising out of a **Wrongful Employment Practice;** or

    4.  any allegation relating to the foregoing C.1, C.2 or C.3:

        a.  that an **Insured** negligently employed, investigated, supervised or retained a person, or

        b.  based on an alleged practice, custom or policy and including, without limitation, any allegation that the violation of a civil right caused or resulted from such **Damages**, **Claims Expenses** or **Claim.**

D. alleging, based upon, arising out of or attributable to the failure to effect or maintain any insurance or bond, including any insurance provided by self-insurance arrangements, self-insurance trusts, pools, captive insurance companies, retention groups, reciprocal exchanges or any other plan or agreement of assumption or risk transfer. However, this exclusion shall not apply to **Claims Expenses.**

E. alleging, based upon, arising out of or attributable to:

    1.  the actual, alleged or threatened discharge, dispersal, release, escape, seepage, migration or disposal of **Pollutants;** or

    2.  any direction or request that any **Insured** test for, monitor, clean up, remove, contain, treat, detoxify or neutralize **Pollutants**, or any voluntary decision to do so.

F. alleging, based upon, arising out of or attributable to:

    1.  the planning, construction, maintenance, operation or use of any nuclear reactor, nuclear waste storage or disposal site or any other nuclear facility;

    2.  the transportation of nuclear material; or

    3.  any nuclear reaction or radiation, or radioactive contamination, regardless of its cause.

G.  brought by or on behalf of any **Insured**.  However, with respect to any **Claim** alleging any **Wrongful Employment Practice**, this exclusion shall only apply to cross-claims or counter-claims brought by one **Insured** against another **Insured**.

H.  alleging, based upon, arising out of or attributable to:

1.  a breach of any express, implied, actual or constructive contract, agreement, warranty, guarantee or promise, including a contract with a student for educational services.

    However:

    a.  the **Insurer** shall indemnify the **Insured** for **Claims Expenses** with respect to a **Claim** that alleges a breach of contract subject to a **Policy Period** aggregate limit of liability of $100,000. This limit shall be part of the Limit of Liability stated in Item 3 of the Declarations; and

    b.  this subsection of this exclusion shall not apply to any **Claim** alleging any **Wrongful Employment Practice**.

I.  alleging, based upon, arising out of or attributable to:

1.  any construction, architectural or engineering contracts and/or agreements, or

2.  the actual or alleged liability assumed by the **Insured** under any express, implied, actual or constructive contract, agreement, warranty, guarantee, promise, collective bargaining agreement or negotiated labor agreement, unless such liability would have attached to the **Insured** even in the absence of such contract, agreement, warranty, guarantee, promise, collective bargaining agreement or negotiated labor agreement.

J.  alleging, based upon, arising out of or attributable to any misappropriation of any trade secret or infringement of patent, collective mark, certification mark, registered mark, service mark, trademark, trade dress, trade name, domain, title, slogan, copyright or service name.

K.  alleging, based upon, arising out of or attributable to the rendering or failure to render:

1.  medical services, including **Incidental Medical Malpractice**; or

2.  **Professional Services** provided by any psychologist, counselor, career counselor, advisor, or other professional or quasi-professional except as stated in K.3. immediately below; or

3.  **Professional Services** provided by any **Insured Educator** other than purely educational services. However this exclusion shall not apply to the extent the **Professional Services** are being provided by an attorney directly to and for the sole benefit of the **Educational Institution**.

L.  alleging, based upon, arising out of or attributable to any **Insured's** activities as a trustee or fiduciary as respects to:

1.  any type of employee benefit plan, including any pension, savings, or profit sharing plan;

2.  any amounts or benefits due under any fringe benefit program, retirement program, incentive program, perquisite program, entitlement program or

3.  any other benefits owed to any **Employee**.

This includes, but is not limited to, any actual or alleged violation of the responsibilities, obligations or duties imposed by the Employee Retirement Income Security Act of 1974, any similar state or local laws, and any rules and regulations promulgated thereunder and amendments thereto.

However, the **Insurer** shall indemnify the **Insured** for **Claims Expenses** but only with respect to a **Claim** that alleges a breach of fiduciary duty, responsibility or obligation in connection with any employee benefit or pension plan, or to any amount due under any fringe benefit or retirement program and subject to a **Policy Period** aggregate limit of liability of $25,000. This limit shall be part of the Limit of Liability stated in Item 3 of the Declarations.

M. alleging, based upon, arising out of or attributable to:

    1. any prior or pending litigation or administrative or regulatory proceeding, or any U.S. Equal Employment Opportunity Commission or similar state, local or foreign agency proceeding or investigation, filed on or before the effective date of the first policy issued and continuously renewed by the **Insurer**, or the same or substantially the same **Wrongful Act**, fact, circumstance or situation underlying or alleged therein; or

    2. any other **Wrongful Act** whenever occurring which, together with a **Wrongful Act** underlying or alleged in such prior or pending proceeding, would constitute **Interrelated Wrongful Acts**.

N. alleging, based upon, arising out of, or attributable to:

    1. any **Wrongful Act**, fact, circumstance or situation which has been the subject of any written notice given under any other policy of which this **Policy** is a renewal or replacement or which it succeeds in time; or

    2. any other **Wrongful Act** whenever occurring which, together with a **Wrongful Act** which has been the subject of such notice, would constitute **Interrelated Wrongful Acts**.

O. alleging, based upon, arising out of or attributable to any **Wrongful Act** prior to the inception date of the first policy issued by the **Insurer** or any affiliate thereof, and continuously renewed and maintained, if, on or before such date, any **Insured** knew or could have reasonably foreseen that such **Wrongful Act** could lead to a **Claim.**

P. alleging, based upon, arising out of or attributable to any:

    1. purchase, sale, offer of or solicitation of an offer to purchase or sell securities, or violation of any securities law, including provisions of the Securities Act of 1933, or the Securities Exchange Act of 1934, as amended;

    2. violation of the Organized Crime Control Act of 1970 (commonly known as "Racketeer Influenced And Corrupt Organizations Act" or "RICO"), as amended;

    3. regulation promulgated under the foregoing laws; or

    4. any federal, state, local or foreign laws:

        a. similar to the foregoing laws (including "Blue Sky" laws), or

        b. regulating the same or similar conduct or services, whether such law is statutory, regulatory or common law.

Q. alleging, based upon, arising out of or attributable to:

    1. **Sexual Abuse and Molestation**, including any allegation that an **Insured** negligently, recklessly or intentionally employed, investigated, supervised or retained any person who allegedly or actually committed such acts, or

    2. any alleged practice, policy or custom, including any violation of a civil right, that gave rise to, caused, or resulted in such **Sexual Abuse and Molestation**.

R.  alleging, based upon, arising out of or attributable to any **Wrongful Act** arising out of an **Insured Educator** serving as an **Executive** or employee of an **Outside Entity**, if such **Claim** is brought by the **Outside Entity** or by any **Executive** or employee.

S.  alleging, based upon, arising out of or attributable to strikes, riots or civil commotions.

T.  alleging, based upon, arising out of or attributable to the failure to pay any bond, interest on any bond, any debt, financial guarantee or debenture.

U.  solely with respect to any **Claim** arising out of a **Wrongful Employment Practice**:

1.  alleging, based upon, arising out of or attributable to any violation of the responsibilities, obligations or duties imposed by any worker's compensation, disability benefits, unemployment compensation, unemployment insurance, retirement benefits, social security benefits or similar law. However, this exclusion shall not apply to that part of any **Claim** for **Retaliation**;

2.  for an actual or alleged violation of:

a.  the Employee Retirement Income Security Act of 1974 (except section 510 thereof);

b.  the Fair Labor Standards Act (except the Equal Pay Act),

c.  the National Labor Relations Act,

d.  the Worker Adjustment and Retraining Notification Act,

e.  the Consolidated Omnibus Budget Reconciliation Act,

f.  the Occupational Safety and Health Act; or any similar federal, state or local laws, and any rules and regulations promulgated thereunder and amendments thereto anywhere in the world.

However, this exclusion shall not apply to that part of any **Claim** for **Retaliation**;

3.  alleging, based upon, arising out of or attributable to:

a.  any costs or liability incurred by any **Insured** to provide any reasonable accommodations required by, made as a result of, or to conform with the requirements of, the Americans With Disabilities Act of 1992, as amended, or any similar federal, state or local law, regulation or ordinance, including the modification of any building, property or facility to make it more accessible or accommodating to any disabled person; or

b.  improper payroll deductions or any **Claims** for unpaid wages or overtime pay for hours actually worked or labor actually performed by any **Employee** of a **Educational Institution**, or any violation of any federal state, local or foreign statutory law or common law that governs the same topic or subject, and any rules, regulations and amendments thereto.

However, this exclusion shall not apply to that part of any **Claim** for **Retaliation**.

V.  **CRISIS MANAGEMENT** COVERAGE PROVISIONS

A.  No Retention shall apply to **Crisis Management Expense**.

B.  The **Insurer** shall pay such **Crisis Management Expense** from the first dollar subject to all other terms and conditions of this policy, including the **Policy** limit.

C.  An actual or anticipated **Crisis Event** shall be reported to the **Insurer** as soon as practicable, but in no event later than thirty (30) days after the **Educational Institution** first incurs **Crisis Management Expenses** for which coverage will be requested under this **Policy**.

VI. ESTATES, LEGAL REPRESENTATIVES AND SPOUSES

A. The **Insured Educator's Legal Representatives** shall be considered **Insureds** under this **Policy**. However, coverage is afforded to such **Insured Educator's Legal Representatives** only for a **Claim** arising solely out of their status as such.

B. In the case of a spouse or legally recognized domestic partner, where the **Claim** seeks damages from marital community property, jointly held property or property transferred from a natural person **Insured** to the spouse or legally recognized domestic partner.

C. No coverage is provided for any **Wrongful Act** of an **Insured Educator's Legal Representatives**.

D. All of the terms and conditions of this **Policy** including, without limitation, the Retention applicable to **Damages and Claims Expenses** incurred by **Insureds** shown in Item 4 of the Declarations, shall also apply to **Damages and Claims Expenses** incurred by such **Insured Educator's Legal Representatives**.

VII. **EXTENDED REPORTING PERIODS**

If the **Insurer** terminates or does not renew this **Policy** (other than for failure to pay a premium when due), or if the **Educational Institution** terminates or does not renew this **Policy** and does not obtain replacement coverage as of the effective date of such cancellation or non-renewal, the **Educational Institution** shall have the right, upon payment of the additional premium described below, to a continuation of the coverage granted by this **Policy** for at least one **Extended Reporting Period** as follows:

A. Automatic **Extended Reporting Period**

1. The **Educational Institution** shall have continued coverage granted by this **Policy** for a period of 60 days following the effective date of such termination or nonrenewal. Such coverage is only for **Claims** first made during such 60 days and arising from **Wrongful Acts** taking place prior to the effective date of such termination or nonrenewal.

2. This Automatic **Extended Reporting Period** shall immediately expire upon the purchase of replacement coverage by the **Educational Institution**.

B. Optional **Extended Reporting Period**

1. The **Educational Institution** shall have the right, upon payment of the additional premium set forth in Item 7A of the Declarations, to an Optional **Extended Reporting Period**, for the period set forth in Item 7B of the Declarations following the effective date of such cancellation or nonrenewal. Such coverage is only for **Claims** first made during such Optional **Extended Reporting Period** and arising from **Wrongful Acts** taking place prior to the effective date of such termination or nonrenewal.

2. This right to continue coverage shall lapse unless written notice of such election is given by the **Educational Institution** to the **Insurer**, and the **Insurer** receives payment of the additional premium, within 30 days following the effective date of termination or nonrenewal.

3. The first 60 days of the Optional **Extended Reporting Period**, if it becomes effective, shall run concurrently with the Automatic **Extended Reporting Period**.

4. The **Insurer** shall give the **Educational Institution** notice of the premium due for the **Extended Reporting Period** as soon as practicable following the date the **Educational Institution** gives such notice of such election. Such premium shall be paid by the **Educational Institution** to the **Insurer** within 10 days following the date of such notice by the **Insurer** of the premium due.

C. The **Extended Reporting Period** is not cancelable and the entire premium for the **Extended Reporting Period** shall be deemed fully earned and non-refundable upon payment.

D. The **Extended Reporting Period**, if elected, shall be part of and not in addition to the Limit of Liability for the immediately preceding **Policy Period**. The purchase of the **Extended Reporting Period** shall not increase or reinstate the Limit of Liability, which shall be the maximum liability of the **Insurer** for the **Policy Period** and **Extended Reporting Period**, combined.

E. A change in **Policy** terms, conditions, exclusions and/or premiums shall not be considered a nonrenewal for purposes of triggering the rights to the Automatic or Optional **Extended Reporting Period**.

## VIII. LIMITS OF LIABILITY

A. Payment of **Claims Expenses** without reduction of the Limit of Liability

1. The **Insurer** shall pay **Claims Expenses** in excess of the applicable Retention and up to an aggregate amount equal to the Limit of Liability stated in Item 3 of the Declarations without reduction of the applicable Limit of Liability. The total amount of such **Claims Expense** payments by the **Insurer** shall be capped at the amount of the Limit of Liability, and is not on a per **Claim** basis.

2. Once the **Insurer** has paid the amount set forth in Item 3 of the Declarations in aggregate **Claims Expenses** arising from or relating to any and all matters, all further payments by the **Insurer** of **Claims Expenses** shall reduce the applicable Limit of Liability.

B. Limit of Liability

1. Except as otherwise stated in Section VIII.A,

    A. the **Insurer's** maximum liability for the sum of all **Damages** and all **Claims Expenses** because of all **Claims** (including all **Claims** alleging any **Interrelated Wrongful Acts**) first made and reported during the **Policy Period** shall never exceed the amount stated in Item 3 of the Declarations.

    B. any payment of **Damages** and/or **Claims Expenses** by the **Insurer** will reduce the Limit of Liability stated in Item 3 of the Declarations.

2. All **Claims** arising out of the same **Wrongful Act** and all **Interrelated Wrongful Acts** of the **Insureds** shall be deemed to be one **Claim**. Such **Claim** shall be deemed to be first made on the date the earliest of such **Claim** is first made, regardless of whether such date is before or during the **Policy Period**.

3. All **Damages** and all **Claims Expenses** resulting from a single **Claim** shall be deemed a single **Damage** and **Claims Expense** and shall be allocable to the policy in effect on the date the **Claim** is first made, regardless of whether such date is before or during the **Policy Period**.

4. The **Insurer** is entitled to pay **Damages** and **Claims Expenses** as they become due and payable by the **Insureds**, without consideration of other future payment obligations.

5. Once the Limit of Liability has been exhausted by payments of any **Damages**, the obligations of the **Insurer** under this **Policy** shall be completely fulfilled and extinguished. This is without regard to whether the payment by the **Insurer** of **Claims Expenses** under section VIII.A. has exhausted, reached or exceeded the amount set forth in Item 3 of the Declarations.

6. The **Crisis Management Fund** is the **Insurer's** maximum liability for all **Crisis Management Expense** arising from any and all **Crisis Events** occurring during the **Policy Period**. This limit shall be the **Insurer's** maximum liability under this policy regardless of the number of **Crisis Events** reported during the **Policy Period**.

7. The **Insurer's** obligation to pay **Crisis Management Expense** terminates and ends upon the exhaustion of the **Crisis Management Fund**. The **Crisis Management Fund** shall be in addition to the aggregate Limit of Liability set forth in Item 3 of the Declarations.

IX. RETENTION

A. The liability of the **Insurer** shall apply only to that part of **Damages** and **Claims Expenses** which are in excess of the applicable Retention amount shown in Item 4 of the Declarations. Such Retention shall be borne uninsured by the **Educational Institution** and at the risk of all **Insureds**.

B. A single Retention amount shall apply to **Damages** and **Claims Expenses** arising from all **Claims** alleging **Interrelated Wrongful Acts**.

C. If different parts of a single **Claim** are subject to different Retentions, the applicable Retention shall be applied separately to each part of the **Damages** and **Claims Expenses**.   However, the sum of such Retentions shall not exceed the largest applicable Retention.

X. NOTICE

For coverage under this **Policy** (other than coverage for a **Crisis Event**):

A. The **Insured** shall, as a condition precedent to their rights under this **Policy**, give to the **Insurer** written notice of any **Claim** as soon as practicable, but in no event later than 30 days after:

   1. the end of the **Policy Period**, or

   2. with respect to **Claims** first made during any applicable Automatic or Optional Extended Reporting Period, the end of such Automatic or Optional **Extended Reporting Period**.

B. If, during the **Policy Period**, any **Insured** becomes aware of any specific **Wrongful Act** which may reasonably give rise to a future **Claim** covered under this **Policy**, and if the **Insureds** give written notice to the **Insurer** during the **Policy Period**, the Automatic **Extended Reporting Period**, or, if elected, the Optional **Extended Reporting Period** of:

   1. the identity of the potential claimants;

   2. a description of the anticipated **Wrongful Act** allegations;

   3. the identity of the **Insureds** allegedly involved;

   4. the circumstances by which the **Insureds** first became aware of the **Wrongful Act**;

   5. the consequences which have resulted or may result; and

   6. the nature of the potential monetary damages;

   then any **Claim** which arises out of such **Wrongful Act** shall be deemed to have been first made at the time such written notice was received by the **Insurer**.  No coverage is provided for fees, expenses and other costs incurred prior to the time such **Wrongful Act** results in a **Claim**.

C. All notices under any provision of this **Policy** shall be in writing and given by prepaid express courier, certified mail or facsimile transmission properly addressed to the appropriate party.

D. Notice to the **Insureds** may be given to the **Educational Institution** at the address shown in Item 1 of the Declarations.

E. Notice to the **Insurer** of any **Claim** or **Wrongful Act** shall be given to the **Insurer** at the address set forth in Item 5A of the Declarations.

F. All other notices to the **Insurer** under this **Policy** shall be given to the **Insurer** at the address set forth in Item 5B of the Declarations.

G. Notice given as described above shall be deemed to be received and effective upon actual receipt thereof by the addressee, or one day following the date such notice is sent, whichever is earlier.

## XI. PRESUMPTIVE INDEMNIFICATION

A. The **Educational Institution** agrees to indemnify the **Insured Educators** to the fullest extent permitted by law, taking all steps necessary or advisable in furtherance thereof. This includes the making in good faith of any application for court approval.

B. The **Educational Institution** further agrees to advance Defense Costs actually and reasonably incurred by any **Insured Educator** in defending any threatened, pending or contemplated action, suit or proceeding prior to a final disposition of any such action, suit or proceeding.

C. The **Educational Institution** shall not require any determination or adjudication, interim or final, of the entitlement of the **Insured Educator** to indemnification, where permitted by law to do so.

D. The financial ability of any **Insured Educator** to make repayment shall not be a prerequisite to the making of such an advance, and the right to receive advancement of **Claims Expenses** herein is a contractual right. The agreements contained in this paragraph are binding upon the **Educational Institution** and enforceable by the **Insurer** or the **Insured Educators**.

E. Notwithstanding anything in this section to the contrary, the **Educational Institution's** indemnification obligations under this section shall not apply in the event the **Educational Institution** is neither permitted nor required to grant such indemnification either because of the appointment by any state or federal official, agency or court of any receiver, conservator, liquidator, trustee, rehabilitator or similar official to take control of, supervise, manage or liquidate the **Educational Institution**, or because of the **Educational Institution** becoming a debtor-in-possession.

## XII. OTHER INSURANCE

If any **Damages** or **Claims Expenses** covered under this **Policy** are covered under any other valid and collectible insurance, then this **Policy** shall cover such **Damages** or **Claims Expenses**, subject to its terms and conditions, only to the extent that the amount of such **Damages** or **Claims Expenses** are in excess of the amount of such other insurance, whether such other insurance is stated to be primary, contributory, excess, contingent or otherwise, unless such other insurance is written only as specific excess insurance over the Limits of Liability provided by this **Policy**.

## XIII. REPRESENTATIONS

A. The **Insureds** represent and acknowledge that the statements and information contained in the **Application** are true and accurate and:

1. are the basis of this **Policy** and are to be considered as incorporated into and constituting a part of this **Policy**; and

2. shall be deemed material to the acceptance of this risk or the hazard assumed by the **Insurer** under this **Policy**.

B. It is understood and agreed that this **Policy** is issued in reliance upon the truth and accuracy of such representations.

C. In the event the **Application**, including materials submitted or required to be submitted therewith, contains any misrepresentation or omission made with the intent to deceive or which materially affects either the acceptance of the risk or the hazard assumed by the **Insurer** under this **Policy**, this **Policy** shall be void ab initio as to:

     1.  any **Insured Educator** who knew the facts misrepresented or omitted, whether or not such **Insured Educator** knew of the **Application** or this **Policy**; and

     2.  the **Educational Institution**. For purposes of this subsection C, the knowledge of any **Insured Educator** shall not be imputed to any other **Insured Educator**.

## XIV.  TERMINATION OF THE POLICY

A.  This **Policy** shall terminate at the earliest of the following times:

     1.  the effective date of termination specified in a prior written notice by the **Educational Institution** to the **Insurer**;

     2.  60 days after receipt by the **Educational Institution** of a written notice of termination from the **Insurer**;

     3.  10 days after receipt by the **Educational Institution** of a written notice of termination from the **Insurer** for failure to pay a premium when due, unless the premium is paid within such 10 day period;

     4.  upon expiration of the **Policy Period** as set forth in Item 2 of the Declarations; or

     5.  at such other time as may be agreed upon by the **Insurer** and the **Educational Institution**.

B.  If the **Policy** is terminated by the **Educational Institution**, the **Insurer** shall refund the unearned premium computed at the customary short rate.

C.  If the **Policy** is terminated by the **Insurer**, the **Insurer** shall refund the unearned premium computed *pro rata*.

D.  Payment or tender of any unearned premium by the **Insurer** shall not be a condition precedent to the effectiveness of such termination, but such payment shall be made as soon as practicable.

## XV.  TERRITORY AND VALUATION

A.  All premiums, limits, retentions, **Damages**, **Claims Expenses** and other amounts under this **Policy** are expressed and payable in the currency of the United States of America.

B.  If judgment is rendered, settlement is denominated or another element of **Damages** and **Claims Expenses** under this **Policy** is stated in a currency other than United States of America dollars, payment under this **Policy** shall be made in United States dollars at the applicable rate of exchange as published in *The Wall Street Journal* as of the date the final judgment is reached, the amount of the settlement is agreed upon or the other element of **Damages** or **Claims Expenses** is due, respectively or if not published on such date, the next date of publication of *The Wall Street Journal*.

C.  Coverage under this **Policy** shall extend to **Wrongful Acts** taking place or **Claims** made or **Damages** or **Claims Expenses** sustained anywhere in the world, provided the **Claim** is made within the jurisdiction of and subject to the laws of the United States of America, Canada or their respective territories or possessions.

## XVI.  SUBROGATION

A.  In the event of any payment under this **Policy**, the **Insurer** shall be subrogated to the extent of such payment to all the rights of recovery of the **Insureds**.

B.  The **Insureds** shall execute all papers required and shall do everything necessary to secure and preserve such rights.  This includes the execution of such documents necessary to enable the **Insurer** effectively to bring suit or otherwise pursue subrogation rights in the name of the **Insureds**.

XVII.  ACTION AGAINST THE **INSURER** AND BANKRUPTCY

    A.  No action shall lie against the **Insurer**, except as set forth below in Section XX, Alternative Dispute Resolution.

    B.  No person or organization shall have any right under this **Policy** to join the **Insurer** as a party to any action against any **Insured** to determine the liability of the **Insured** nor shall the **Insurer** be impleaded by any **Insured** or its legal representatives.

    C.  Bankruptcy or insolvency of any **Insured** or of the estate of any **Insured** shall not relieve the **Insurer** of its obligations nor deprive the **Insurer** of its rights or defenses under this **Policy**.

XVIII.  AUTHORIZATION CLAUSE

By the acceptance of this **Policy**, the **Educational Institution** agrees to act on behalf of all **Insureds** with respect to:

    A.  the giving and receiving of notice of **Claim,**

    B.  the giving or receiving of notice of termination or non renewal,

    C.  the payment of premiums and the receiving of any premiums that may become due under this **Policy,**

    D.  the agreement to and acceptance of endorsements,

    E.  consenting to any settlement,

    F.  exercising the right to the **Extended Reporting Period,** and

    G.  the giving or receiving of any other notice provided for in this **Policy**.

All **Insureds** agree that the **Educational Institution** shall so act on their behalf.

XIX.  ALTERATION, ASSIGNMENT AND HEADINGS

    A.  Notice to any agent or knowledge possessed by any agent or by any other person:

        1.  Shall not affect a waiver or a change in any part of this **Policy**.

        2.  Shall not prevent the **Insurer** from asserting any right under the terms of this **Policy**.

    B.  No change in, modification of, or assignment of interest under this **Policy** shall be effective except when made by a written endorsement to this **Policy**.   Such written endorsement must be signed by an authorized representative of the **Insurer**.

    C.  The titles and headings to the various parts, sections, subsections and endorsements of the **Policy** are included solely for ease of reference.  They do not in any way limit, expand or otherwise affect the provisions of such parts, sections, subsections or endorsements.

XX.  ALTERNATIVE DISPUTE RESOLUTION

    A.  The **Insureds** and the **Insurer** shall submit any dispute or controversy arising out of or relating to this **Policy** or the breach, termination or invalidity thereof to the alternative dispute resolution ("ADR") process set forth in this section.

    B.  Either an **Insured** or the **Insurer** may elect the type of ADR process discussed below.  The **Insured** shall have the right to reject the choice by the **Insurer** of the type of ADR process at any time prior to its

commencement. In this circumstance, the **Insured** shall have the right to select the type of ADR process to be used.

C.  There shall be two choices of ADR process:

1.  non-binding mediation administered by any mediation facility to which the **Insurer** and the **Insured** mutually agree. The **Insured** and the **Insurer** shall try in good faith to settle the dispute by mediation in accordance with the then-prevailing commercial mediation rules of the mediation facility; or

2.  arbitration submitted to any arbitration facility to which the **Insured** and the **Insurer** mutually agree. Such arbitration panel shall consist of three disinterested individuals.

D.  In either mediation or arbitration the mediator or arbitrators shall have knowledge of the legal, corporate management, or insurance issues relevant to the matters in dispute; and

E.  In the event of mediation, either party shall have the right to commence a judicial proceeding. No such judicial proceeding shall be commenced until at least 60 days after the date the mediation has been concluded or terminated.

F.  In the event of arbitration, the decision of the arbitrators shall be final and binding and provided to both parties, and the award of the arbitrators shall not include attorneys' fees or other costs.

G.  In all events, each party shall share equally the expenses of the ADR process.

H.  Either ADR process may be commenced in:

1.  New York, New York or

2.  in the state indicated in Item 1 of the Declarations as the principal address of the **Educational Institution**.

I.  The **Educational Institution** shall act on behalf of each and every **Insured** in connection with any ADR process under this section.

## XXI. INTERPRETATION

The terms and conditions of this **Policy** shall be interpreted and construed in an evenhanded fashion as between the parties. If the language of this **Policy** is deemed to be ambiguous or otherwise unclear, the issue shall be resolved in the manner most consistent with the relevant terms and conditions:

A.  without regard to authorship of the language,

B.  without any presumption or arbitrary interpretation or construction in favor of either the **Insureds** or the **Insurer**, and

C.  without reference to the reasonable expectations of either the **Insureds** or the **Insurer**.

# SIGNATURES

| Named Insured<br>**Pine Bluff School District** | | | Endorsement Number<br>**1** |
|---|---|---|---|
| Policy Symbol<br>**EON** | Policy Number<br>**G23670471 004** | Policy Period<br>**02/01/2016 to 02/01/2017** | Effective Date of Endorsement<br>**02/01/2016** |
| Issued By (Name of Insurance Company)<br>**ACE American Insurance Company** | | | |

THE ONLY SIGNATURES APPLICABLE TO THIS POLICY ARE THOSE REPRESENTING THE COMPANY NAMED ON THE FIRST PAGE OF THE DECLARATIONS.

By signing and delivering the policy to you, we state that it is a valid contract.

**INDEMNITY INSURANCE COMPANY OF NORTH AMERICA** (A stock company)
**BANKERS STANDARD FIRE AND MARINE COMPANY** (A stock company)
**BANKERS STANDARD INSURANCE COMPANY** (A stock company)
**ACE AMERICAN INSURANCE COMPANY** (A stock company)
**ACE PROPERTY AND CASUALTY INSURANCE COMPANY** (A stock company)
**INSURANCE COMPANY OF NORTH AMERICA** (A stock company)
**PACIFIC EMPLOYERS INSURANCE COMPANY** (A stock company)
**ACE FIRE UNDERWRITERS INSURANCE COMPANY** (A stock company)
**WESTCHESTER FIRE INSURANCE COMPANY** (A stock company)

436 Walnut Street, P.O. Box 1000, Philadelphia, Pennsylvania 19106-3703

REBECCA L. COLLINS, Secretary

JOHN J. LUPICA, President

Authorized Representative

CC-1K11h (03/14)

## TRADE OR ECONOMIC SANCTIONS ENDORSEMENT

| Named Insured<br>**Pine Bluff School District** | | | Endorsement Number<br>**2** |
|---|---|---|---|
| Policy Symbol<br>**EON** | Policy Number<br>**G23670471 004** | Policy Period<br>**02/01/2016  to 02/01/2017** | Effective Date of Endorsement<br>**02/01/2016** |
| Issued By (Name of Insurance Company)<br>**ACE American Insurance Company** | | | |

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

This insurance does not apply to the extent that trade or economic sanctions or similar laws or regulations prohibit us from providing insurance, including, but not limited to, the payment of claims.  All other terms and conditions of policy remain unchanged.

Authorized Agent

PF-46422 (07/15)

Page 1 of 1

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

| Named Insured<br>**Pine Bluff School District** | | | Endorsement Number<br>**3** |
|---|---|---|---|
| Policy Symbol<br>**EON** | Policy Number<br>**G23670471 004** | Policy Period<br>**02/01/2016  to 02/01/2017** | Effective Date of Endorsement<br>**02/01/2016** |
| Issued By (Name of Insurance Company)<br>**ACE American Insurance Company** | | | |

### Notice Amended

It is agreed that the Notice section of the **Policy** is amended by adding the following:

Notwithstanding anything in this section to the contrary, written **Claim** notices may also be transmitted via email to the following address:

ACEClaimsFirstNotice@acegroup.com

All other terms and conditions of this **Policy** remain unchanged.

_____
Authorized Representative

PF-33468 (02/11)                                            © 2011                                            Page 1 of 1

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

| Named Insured<br>**Pine Bluff School District** | | | Endorsement Number<br>**4** |
|---|---|---|---|
| Policy Symbol<br>**EON** | Policy Number<br>**G23670471 004** | Policy Period<br>**02/01/2016  to 02/01/2017** | Effective Date of Endorsement<br>**02/01/2016** |
| Issued By (Name of Insurance Company)<br>**ACE American Insurance Company** | | | |

### Amendatory Endorsement – Arkansas

IF THERE IS ANY CONFLICT BETWEEN THE POLICY, OTHER ENDORSEMENTS TO THE POLICY AND THIS ENDORSEMENT, THE TERMS PROVIDING THE BROADEST COVERAGE INSURABLE UNDER APPLICABLE LAW SHALL PREVAIL.

It is agreed that:

1.  Section V, **Crisis Management** Coverage Provisions, subsection C is amended by deleting the phrase "thirty (30) days" and inserting the phrase "sixty (60) days".

2.  Section VII, **Extended Reporting Periods**, is deleted in its entirety and the following is inserted:

### VII.  EXTENDED REPORTING PERIODS

If the **Insurer** or the **Educational Institution** terminates or does not renew this **Policy**, the **Educational Institution** shall have the right to a continuation of the coverage granted by this **Policy** for the Optional **Extended Reporting Period**, if elected, and the Automatic **Extended Reporting Period** as follows:

A.  Automatic Extended Reporting Period

   The **Educational Institution** shall have continued coverage granted by this **Policy** for a period of 60 days following the effective date of such termination or nonrenewal, but only for **Claims** first made during such 60 days and arising from **Wrongful Acts** taking place prior to the effective date of such termination or nonrenewal.

B.  Optional Extended Reporting Period

   1.  The **Educational Institution** shall have the right, upon payment of the additional premium set forth in Item 7A of the Declarations, to an Optional **Extended Reporting Period**, for the period set forth in Item 7B of the Declarations following the expiration date of the Automatic **Extended Reporting Period**.  Such coverage is only for **Claims** first made during such Optional **Extended Reporting Period** and arising from **Wrongful Acts** taking place prior to the effective date of termination or nonrenewal.

   2.  This right to continue coverage shall lapse unless written notice of such election is given by the **Educational Institution** to the **Insurer**, and the **Insurer** receives payment of the additional premium within 60 days following the effective date of termination or nonrenewal.

   3.  The Optional **Extended Reporting Period** is not cancelable and the entire premium for the Optional **Extended Reporting Period** shall be deemed fully earned and non-refundable upon payment.

C.  The Limit of Liability applicable to the Automatic **Extended Reporting Period** shall be part of and not in addition to the Limit of Liability shown in Item 3 of the Declarations for the immediately preceding **Policy Period**.  The Automatic **Extended Reporting Period** shall not increase or reinstate the Limit of Liability, which shall be the maximum liability of the **Insurer** for the **Policy Period** and the Automatic **Extended Reporting Period**, combined.

D.  The Limit of Liability applicable to the Optional **Extended Reporting Period**, if elected, shall be the greater of the unexhausted Limit of Liability of the immediately preceding **Policy Period** or 50% of the full amount of the Limit of Liability set forth in Item 3 of the Declarations at the inception of the immediately preceding **Policy Period** (hereinafter referred to as "Optional **Extended Reporting Period** Limit of Liability").  The Optional **Extended Reporting Period** Limit of Liability shall only

be available to pay **Damages** for **Claims** first made and reported during the Optional **Extended Reporting Period** and arising from **Wrongful Acts** taking place prior to the effective date of termination or nonrenewal (hereinafter referred to as "**Optional Extended Reporting Period Damages**"). The maximum liability for all **Optional Extended Reporting Period Damages** is the **Optional Extended Reporting Period Limit of Liability.**

E. If any **Claim** is covered, in whole or in part, under both the Automatic **Extended Reporting Period** and the Optional **Extended Reporting Period**, if elected, only the **Optional Extended Reporting Period Limit of Liability** shall apply.

F. A change in **Policy** terms, conditions, exclusions and/or premiums shall not be considered a nonrenewal for purposes of triggering the rights to the Automatic or Optional **Extended Reporting Period.**

3. Section X, Notice, subsection A is amended by deleting the phrase "30 days" and inserting the phrase "60 days".

4. Section XIV, Termination of the **Policy**, is amended by adding the following:

   - If this **Policy** has been in effect for more than 60 days, or is a renewal of a **Policy** the **Insurer** issued, the **Insurer** may terminate this **Policy** only for one or more of the following reasons:

     1. failure to pay a premium when due;

     2. fraud or material misrepresentation made by or with the knowledge of the **Educational Institution** in obtaining the **Policy**, continuing the **Policy**, or in presenting a **Claim** under the **Policy**;

     3. a material change in the risk that substantially increases any hazard insured against after **Policy** issuance;

     4. violation of any local fire, health, safety, building, or construction regulation or ordinances with respect to any insured property or the occupancy of the property that substantially increases any hazard insured against under the **Policy**;

     5. nonpayment of membership dues in those cases in which the **Insurer** issuing the **Policy** require payment as a condition of the issuance and maintenance of the **Policy**; or

     6. a material violation of a material provision of the **Policy**.

   - Notice of termination from the **Insurer** will state the effective date of termination and the reason(s) for termination, and will be mailed by certified mail to the **Educational Institution**, and by first-class mail to the agent or broker of record, and to any lienholder or loss payee listed in the **Policy**, at the last mailing addresses known to the **Insurer**. Proof of mailing will be sufficient proof of notice.

5. Section XVI, Subrogation, is amended by adding the following:

   The **Insurer** will be entitled to recovery only after the **Insured** has been fully compensated for **Damages**, **Claims Expenses** or **Crisis Management Expenses** sustained under this **Policy**, including expenses incurred in obtaining full compensation for such **Damages**, **Claims Expenses** or **Crisis Management Expenses.**

6. Section XX, Alternative Dispute Resolution, is amended as follows:

   a. Subsection A is deleted in its entirety and the following is inserted:

      A. The **Insureds** and the **Insurer** may, upon mutual agreement, submit any dispute or controversy arising out of or relating to this **Policy** or the breach, termination or invalidity thereof to the alternative dispute resolution ("ADR") process set forth in this section.

   b. Subsection F is amended by deleting the phrase "the decision of the arbitrators shall be final and binding" and inserting the phrase "the decision of the arbitrators shall be non-binding".

7. The following section is added to the **Policy**:

   - NONRENEWAL

     If the **Insurer** elects not to renew this **Policy**, it will mail written notice of nonrenewal by certified mail to the **Educational Institution**, and by first-class mail to the agent or broker of record, at the last mailing addresses known to the **Insurer**. Notice of nonrenewal will be mailed at least 60 days before the end of the **Policy Period**. Proof of mailing will be sufficient proof of notice.

All other terms and conditions of this **Policy** remain unchanged.

_____
Authorized Representative

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

| Named Insured<br>**Pine Bluff School District** | | | Endorsement Number<br>**5** |
| Policy Symbol<br>**EON** | Policy Number<br>**G23670471 004** | Policy Period<br>**02/01/2016  to 02/01/2017** | Effective Date of Endorsement<br>**02/01/2016** |
| Issued By (Name of Insurance Company)<br>**ACE American Insurance Company** | | | |

### Insured Choice of Defense Counsel Endorsement

It is agreed that Section II, Defense, subsection C, is deleted in its entirety and replaced with the following:

C.  The **Insured** shall have the right to appoint counsel subject to the prior written approval of the **Insurer** (which written approval shall not be unreasonably withheld); however, the **Insurer** shall make such investigation and defense of a **Claim** as it deems necessary."

All other terms and conditions of this **Policy** remain unchanged.

_____
                                        Authorized Representative

PF-26714 (01/09) SL                    © 2009                    Page 1 of 1

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

| Named Insured<br>**Pine Bluff School District** | | | Endorsement Number<br>**6** |
|---|---|---|---|
| Policy Symbol<br>**EON** | Policy Number<br>**G23670471 004** | Policy Period<br>**02/01/2016  to 02/01/2017** | Effective Date of Endorsement<br>**02/01/2016** |
| Issued By (Name of Insurance Company)<br>**ACE American Insurance Company** | | | |

### Limited Corporal Punishment Extension (Claims Expense Carveback – Final Adjudication; Authoritative Decision)

It is agreed that Section IV, Exclusions, subsection C, is amended at numbered paragraph 1 by adding the following:

However, this exclusion shall not apply to **Claims Expenses** in a **Claim** for alleged corporal punishment if:

1.  such **Claim** results in a final adjudication or authoritative decision in an administrative or regulatory proceeding against all such **Insureds** that no **Insured** is liable for or committed such alleged corporal punishment; and

2.  such **Insured** was indemnified for such **Claims Expenses** by the Named Insured.

The maximum limit of the **Insurer's** liability for all **Claims Expenses** in the aggregate arising from all **Claims** for any actual or alleged corporal punishment shall be $100,000.  This sub-limit of liability shall be part of and not in addition to the aggregate Limit of Liability otherwise stated in Item 3 of the Declarations, and will in no way serve to increase the **Insurer's** Limit of Liability as therein provided.  If different parts of a single **Claim** are subject to different applicable Limits, the applicable Limits will be applied separately to each part of such **Claim Expenses**.

All other terms and conditions of this **Policy** remain unchanged.

Authorized Representative

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

| Named Insured<br>**Pine Bluff School District** | | | Endorsement Number<br>**7** |
|---|---|---|---|
| Policy Symbol<br>**EON** | Policy Number<br>**G23670471 004** | Policy Period<br>**02/01/2016  to 02/01/2017** | Effective Date of Endorsement<br>**02/01/2016** |
| Issued By (Name of Insurance Company)<br>**ACE American Insurance Company** | | | |

### Sexual Molestation Endorsement (Claims Expenses Carveback – Final Adjudication; Authoritative Decision)

It is agreed that Section IV, Exclusions, subsection Q is amended by adding the following:

However, this exclusion shall not apply to **Claims Expenses** in a **Claim** for alleged **Sexual Abuse and Molestation** if:

1.  such **Claim** results in a final adjudication or authoritative decision in an administrative or regulatory proceeding against all such **Insureds** that no **Insured** is liable for or committed such **Sexual Abuse and Molestation;** and

2.  such **Insured** was indemnified for such **Claims Expenses** by the **Named Insured.**

The maximum limit of the **Insurer's** liability for all **Claims Expenses** in the aggregate arising from all **Claims** for **Sexual Abuse and Molestation** shall be $25,000 ("**Sexual Abuse and Molestation Claims Expenses Sub-Limit of Liability**").  This **Sexual Abuse and Molestation Claims Expenses Sub-Limit of Liability** shall be part of and not in addition to the aggregate Limit of Liability otherwise stated in Item 3 of the Declarations, and will in no way serve to increase the **Insurer's** Limit of Liability as therein provided.  If different parts of a single **Claim** are subject to different applicable Limits, the applicable Limits will be applied separately to each part of such **Claim Expenses.**

All other terms and conditions of this **Policy** remain unchanged.

_____<br>Authorized Representative

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

| Named Insured<br>**Pine Bluff School District** | | | Endorsement Number<br>**8** |
|---|---|---|---|
| Policy Symbol<br>**EON** | Policy Number<br>**G23670471 004** | Policy Period<br>**02/01/2016  to 02/01/2017** | Effective Date of Endorsement<br>**02/01/2016** |
| Issued By (Name of Insurance Company)<br>**ACE American Insurance Company** | | | |

<h3 align="center">Bullying Exclusion</h3>

It is agreed that:

1.  Section III, Definitions, is amended by adding the following additional exclusion:

    •   **Bullying** means repeated and inappropriate direct or indirect verbal, emotional or physical behavior conducted by one or more persons against another person or persons with the intent to disturb, cause distress or fear, or undermine such person's or persons' dignity.

2.  Section IV, Exclusions, is amended by adding the following additional exclusion:

    •   alleging, based upon, arising out of or attributable to any **Bullying** or any **Mental Distress, Bodily Injury** or **Property Damage** resulting from or related to **Bullying**, including, without limitation, any allegation that an **Insured** negligently employed, investigated, supervised or retained a person, or that an alleged practice, custom or policy gave rise to, caused, or resulted in such behavior or any violation of a civil right.  Solely with respect to this exclusion, **Mental Distress** need not arise from and be accompanied by objectively identifiable and demonstrable injury to the claimant's body, sickness, disease or death.

    However, this exclusion shall not apply to **Claims Expenses in a Claim** for alleged **Bullying** if:

    1.  such **Claim** results in a final adjudication or authoritative decision in an administrative or regulatory proceeding against all such **Insureds** that no **Insured** is liable for or committed such alleged **Bullying**; and

    2.  such **Insured** was indemnified for such **Claims Expenses** by the Named Insured.

    The **Insurer's** maximum liability for all **Claims Expenses** in the aggregate arising from all **Claims** for any actual or alleged **Bullying** shall be $50,000 ("Bullying Claims Expenses Sub-Limit of Liability").  This Bullying Claims Expenses Sub-Limit of Liability shall be part of and not in addition to the aggregate Limit of Liability otherwise stated in Item 3 of the Declarations, and will in no way serve to increase the **Insurer's** Limit of Liability as therein provided.  If different parts of a single **Claim** are subject to different applicable Limits, the applicable Limits will be applied separately to each part of such **Claim Expenses**.

All other terms and conditions of this **Policy** remain unchanged.

Authorized Representative

PF-45316 (04/15)
SL

© 2015

Page 1 of 1

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

| Named Insured<br>**Pine Bluff School District** | | | Endorsement Number<br>**9** |
|---|---|---|---|
| Policy Symbol<br>**EON** | Policy Number<br>**G23670471 004** | Policy Period<br>**02/01/2016  to 02/01/2017** | Effective Date of Endorsement<br>**02/01/2016** |
| Issued By (Name of Insurance Company)<br>**ACE American Insurance Company** | | | |

### Cap On Losses From Certified Acts Of Terrorism

#### This endorsement modifies insurance provided under the following:

**ACE Scholastic Advantage Educators Legal Liability Insurance Policy**
**ACE Municipal Advantage Public Entity Liability Policy**

A.  If aggregate insured losses attributable to terrorist acts certified under the federal Terrorism Risk Insurance Act exceed $100 billion in a calendar year and the **Insurer** has met its deductible under the Terrorism Risk Insurance Act, the **Insurer** shall not be liable for the payment of any portion of the amount of such losses that exceeds $100 billion, and in such case insured losses up to that amount are subject to pro rata allocation in accordance with procedures established by the Secretary of the Treasury.

"Certified act of terrorism" means an act that is certified by the Secretary of the Treasury, in accordance with the provisions of the federal Terrorism Risk Insurance Act, to be an act of terrorism pursuant to such Act.  The criteria contained in the Terrorism Risk Insurance Act for a "certified act of terrorism" include the following:

1.  The act resulted in insured losses in excess of $5 million in the aggregate, attributable to all types of insurance subject to the Terrorism Risk Insurance Act; and

2.  The act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

B.  The terms and limitations of any terrorism exclusion, or the inapplicability or omission of a terrorism exclusion, do not serve to create coverage for **Damages** or **Claims Expenses** that are otherwise excluded under this **Policy**.

All other terms and conditions of this **Policy** remain unchanged.

Authorized Representative

PF-17705b (01/15)                    © 2015                    Page 1 of 1
Includes copyrighted material of Insurance Services Office, Inc., with its permission.

## DISCLOSURE PURSUANT TO TERRORISM RISK INSURANCE ACT

| Named Insured<br>**Pine Bluff School District** | | | Endorsement Number<br>**10** |
|---|---|---|---|
| Policy Symbol<br>**EON** | Policy Number<br>**G23670471 004** | Policy Period<br>**02/01/2016  to 02/01/2017** | Effective Date of Endorsement<br>**02/01/2016** |
| Issued By (Name of Insurance Company)<br>**ACE American Insurance Company** | | | |

### THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

**Disclosure Of Premium**

In accordance with the federal Terrorism Risk Insurance Act, we are required to provide you with a notice disclosing the portion of your premium, if any, attributable to coverage for terrorist acts certified under the Terrorism Risk Insurance Act.  The portion of your premium attributable to such coverage is shown in this endorsement or in the policy Declarations.

**Disclosure Of Federal Participation In Payment Of Terrorism Losses**

The United States Government, Department of the Treasury, will pay a share of terrorism losses insured under the federal program. The federal share equals 85% for year 2015, 84% beginning on January 2016; 83% beginning on January 1 2017, 82% beginning on January 1, 2018; 81% beginning on January 1, 2019 and 80% beginning on January 1, 2020 of that portion of the amount of such insured losses that exceeds the applicable insurer retention.  However, if aggregate insured losses attributable to terrorist acts certified under the Terrorism Risk Insurance Act exceed $100 billion in a calendar year, the Treasury shall not make any payment for any portion of the amount of such losses that exceeds $100 billion.

**Cap On Insurer Participation In Payment Of Terrorism Losses**

If aggregate insured losses attributable to terrorist acts certified under the Terrorism Risk Insurance Act exceed $100 billion in a calendar year  and we have met our insurer deductible under the Terrorism Risk Insurance Act, we shall not be liable for the payment of any portion of the amount of such losses that exceeds $100 billion, and in such case insured losses up to that amount are subject to pro rata allocation in accordance with procedures established by the Secretary of the Treasury.

Terrorism Risk Insurance Act Premium: $0.

Authorized Representative



**ACE Producer Compensation
Practices & Policies**

ACE believes that policyholders should have access to information about ACE's practices and policies related to the payment of compensation to brokers and independent agents.  You can obtain that information by accessing our  website  at http://www.aceproducercompensation.com or by calling the  following toll-free  telephone number: 1-866-512-2862.

ALL-20887 (10/06)



# Arkansas
# Notice To Policyholders

## QUESTIONS ABOUT YOUR INSURANCE?

If you have questions about your insurance, need coverage information, or require assistance in resolving complaints, do not hesitate to contact either your insurance agent, or ACE USA, Customer Service Department, 436 Walnut Street, Philadelphia, PA  19106-3703, telephone 1-800-352-4462.

If we fail to provide you with reasonable and adequate service, you should feel free to contact:

**Arkansas Insurance Department**
**1200 West Third Street**
**Little Rock, AR  72201**
**(501) 371-2640 or 800-852-5494**

ALL-2Y31b (11/09)



**ace usa**

# U.S. Treasury Department's Office Of Foreign Assets Control ("OFAC") Advisory Notice to Policyholders

This Policyholder Notice shall not be construed as part of your policy and no coverage is provided by this Policyholder Notice nor can it be construed to replace any provisions of your policy. You should read your policy and review your Declarations page for complete information on the coverages you are provided.

This Notice provides information concerning possible impact on your insurance coverage due to directives issued by OFAC. **Please read this Notice carefully.**

The Office of Foreign Assets Control (OFAC) administers and enforces sanctions policy, based on Presidential declarations of "national emergency". OFAC has identified and listed numerous:

- Foreign agents;
- Front organizations;
- Terrorists;
- Terrorist organizations; and
- Narcotics traffickers;

as "Specially Designated Nationals and Blocked Persons". This list can be located on the United States Treasury's web site -- http//www.treas.gov/ofac.

In accordance with OFAC regulations, if it is determined that you or any other insured, or any person or entity claiming the benefits of this insurance has violated U.S. sanctions law or is a Specially Designated National and Blocked Person, as identified by OFAC, this insurance will be considered a blocked or frozen contract and all provisions of this insurance are immediately subject to OFAC. When an insurance policy is considered to be such a blocked or frozen contract, no payments nor premium refunds may be made without authorization from OFAC. Other limitations on the premiums and payments also apply.

**FILED**
U.S. DISTRICT COURT
EASTERN DISTRICT ARKANSAS

SEP 2 2 2016

JAMES W. McCORMACK, CLERK
By: _____
DEP CLERK

IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
PINE BLUFF DIVISION

| | | |
|---|---|---|
| CELESTE ALEXANDER, | ) | Civil Action No. 5:16cv300-BSM |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | JURY TRIAL DEMANDED |
| PINE BLUFF SCHOOL DISTRICT | ) | |
| NO. 3, JEFFERSON COUNTY, | ) | |
| PINE BLUFF, ARKANSAS | ) | |
| | )This case assigned to District Judge Miller | |
| and | )and to Magistrate Judge Ray | |
| | ) | |
| MICHAEL NELLUMS, individually. | ) | |
| | ) | |
| Defendants. | ) | |

## COMPLAINT FOR DAMAGES

COMES NOW, Plaintiff Celeste Alexander, by and through undersigned counsel, and files this her Complaint for Damages, and shows the Court as follows:

## JURISDICTION AND VENUE

1.

Plaintiff invokes the jurisdiction of this court pursuant to 28 U.S.C. § 1331 and 42 U.S.C. § 2000e-5(f) and the Arkansas Civil Rights Act, Ark. Code Ann § 16-123-101 *et seq.*

1

EXHIBIT B

2.

The unlawful employment practices alleged in this Complaint were committed within this district. In accordance with 28 U.S.C. § 1391 and 42 U.S.C. §2000(e)-5(f), venue is appropriate in this Court.

**PARTIES**

3.

Plaintiff Celeste Alexander ("Plaintiff" or "Alexander"), is a female citizen of Jefferson County, Arkansas and of the United States of America, and is subject to the jurisdiction of this Court.

4.

Defendant Pine Bluff School District of Jefferson County ("Defendant" or "PBSD") is a public body corporate, pursuant to Ark. Code Ann. 6-13-102, in the State of Arkansas capable of suing and being sued. Its offices are in Pine Bluff, Jefferson County, Arkansas.

5.

Defendant PBSD may be served with process by delivering a copy of the summons and complaint to its superintendent Dr. T.C. Wallace Jr. at 512 South Pine Street, Pine Bluff, Arkansas 71601.

6.

Defendant Michael Nellums ("Defendant" or "Nellums")(collectively "Defendants") is an individual who served as the Principal of Pine Bluff High School, and at all times material hereto was the principal during Plaintiff's employment.

7.

Defendant Nellums may be served with process by delivering a copy of the summons and complaint to Pine Bluff High School, 711 W. 11th Street, Pine Bluff, Arkansas 71601.

8.

This Court has subject matter jurisdiction over the matters at issue.

9.

This Court has personal jurisdiction over Defendants.

10.

Venue for this action is proper in this Court.

11.

At all times mentioned herein, before and after, the persons responsible for perpetrating Plaintiff's discriminatory actions were agents, servants and employees of Defendant PBSD and were at all such times acting within the scope and course

3

of their agency and employment, and/or the actions were expressly authorized by Defendant PBSD and/or their actions were ratified by Defendant PBSD, thus making Defendant PBSD liable for said actions.

## ADMINISTRATIVE PROCEDURES

12.

Plaintiff timely filed a charge of discrimination against Defendant with the Equal Employment Opportunity Commission (EEOC).

13.

The EEOC issued a "Notice of Right to Sue" on June 24, 2016, entitling an action to be commenced within ninety (90) days of receipt of that notice.

14.

This action has been commenced within ninety (90) days of receipt of the "Notice of Right to Sue".

## FACTUAL ALLEGATIONS

15.

Defendant PBSD is now, and at all times relevant hereto, has been an employer engaged in an industry affecting commerce within the meaning of §701(b), (g) and (h) of Title VII and has employed more than the requisite number of persons for the requisite duration under Title VII.

4

16.

Defendants PBSD and Nellums are now, and at all times relevant hereto, have been an employer as defined by the Arkansas Civil Rights Act, Ark. Code Ann. § 16-123-101 *et seq.* ("ACRA").

17.

Plaintiff Alexander worked for Defendant PBSD from 2003 until 2015 as a full time math teacher or for summer sessions.

18.

Plaintiff Alexander has four college degrees, including a doctoral degree, and a valid Arkansas Teacher's License in the area of mathematics for grades 7-12.

19.

Defendant Nellums served as the principal of Pine Bluff High School where Plaintiff was employed and was her supervisor.

20.

In or around November 2014, Defendant Nellums began to sexually harass Plaintiff with unwelcomed sexual advances, comments, and touching.

21.

Defendant Nellums' sexual harassment and unwelcome advances consisted of, but are not limited to, inviting Plaintiff to his home; inviting her on dinner

5

dates; telling her "I need you in my life"; escorting her to her vehicle while touching her back; suggestively caressing her hand; and telling her to "make time in your schedule for me".

### 22.

Plaintiff Alexander rejected Defendant Nellum's advances and told him that he was being unprofessional, to "stop", and that he was being "inappropriate".

### 23.

As a result of Plaintiff's rejection, Defendant Nellums then retaliated against her by calling her to meetings where no one was present; ignoring her emails regarding legitimate education needs; increasingly scrutinizing her work performance; falsely accusing her of failing to follow directives; demanding that she resign; demoting her to a teacher's aide; taking students away from her guidance; terminating her employment under the guise of a reduction in force; and refusing to rehire her.

### 24.

In April 2015, Plaintiff was notified that she was being included in a Reduction of Force ("ROF").

25.

In April 2015, Plaintiff met with a representative of the Arkansas Education Association and complained of sexual harassment and retaliation regarding her inclusion in the Reduction of Force.

26.

On June 3, 2015, Plaintiff reported sexual harassment to her superiors through a grievance process complaining that she had been sexually harassed by Defendant Nellums, including unwelcome sexual advances, requests for sexual favors, verbal and physical harassment of a sexual nature, invitations to lunch, invitation to dinner, invitations to his home, and unwanted touching.

27.

In retaliation, Defendant Nellums filed a grievance against Plaintiff Alexander and affirmatively stated that Plaintiff Alexander "should never be eligible for re-employment in the Pine Bluff School district."

28.

Even though Plaintiff Alexander should have been rehired or called back to work from the Reduction of Force, she was told to look for another teaching job outside of the school district.

29.

Plaintiff Alexander was not called back from the ROF or rehired, because of her complaints of sexual harassment.

30.

Defendant PBSD did not conduct an investigation into Plaintiff's complaints of sexual harassment and retaliation.

31.

Others outside the Plaintiff's protected class were treated differently.

32.

Other teachers were hired by Defendant PBSD despite being lesser qualified than Plaintiff Alexander in violation of Defendant PBSD's Reduction of Force Policies.

33.

Other teachers from outside the school district were hired by Defendant PBSD.

34.

At all relevant times, Plaintiff Alexander performed her duties well and to the satisfaction of her superiors.

8

35.

Although Defendants purport to provide a legitimate non-discriminatory reason for the adverse action, this reason is a pre-text.

36.

Defendant PBSD was in the position to exercise reasonable and ordinary care and diligence to prevent Plaintiff from being subjected to unfair treatment, relations, and sexual harassment in the work place.

37.

During Plaintiff's employment with Defendant PBSD, Defendant PBSD failed to take appropriate measures to prevent retaliation and sexual harassment in the workplace.

38.

Defendants have voluntarily assumed a duty to investigate and remedy complaints of sexual harassment.

39.

Defendant PBSD delegates authority to supervisors over employees, including principal Nellum.

40.

Sexual harassment and retaliation should not be a risk of employment.

9

41.

Sexual harassment is socially harmful behavior.

42.

Plaintiff suffered harm due to her reliance on Defendant PBSD to prevent
sexual harassment, including retaliation.

43.

Plaintiff relied to her detriment in the fact that Defendant PBSD undertook
the duty to prevent sexual harassment and retaliation.

44.

Defendant PBSD's failure to exercise reasonable care increased the risk of
harm to Plaintiff and other employees.

45.

Defendant PBSD's failure to exercise reasonable care caused the Plaintiff to
suffer harm from the sexual harassment and retaliation for reporting sexual
harassment.

46.

While employed by Defendant PBSD, Defendant Nellums sexually harassed
individuals, including Plaintiff.

10

47.

Defendant PBSD was aware of Defendant Nellum's propensity to sexually harass its employees.

48.

The sexual harassment was severe or pervasive, altering the terms and conditions of Plaintiff Alexander's employment.

49.

Other similarly situated employees and co-workers of Defendant PBSD were sexually harassed by Defendant Nellums.

50.

Defendant PBSD ratified or acquiesced in Defendant Nellums' harassing and retalitory conduct, and therefore assumed liability for unauthorized conduct.

51.

Despite Plaintiff's complaints and Defendant PBSD's knowledge of the harassment, PBSD did nothing to prevent Defendant Nellums from harassing Plaintiff Alexander.

52.

Defendant Nellums used his position of authority to intimidate and persuade employees from complaining of his harassment and sexual advances to female employees.

53.

Defendants PBSD and Defendant Nellums created a hostile work environment that Plaintiff Alexander was required to endure as a condition of employment.

54.

Defendant PBSD chose not to take reasonable steps to prevent sexual harassment by Defendant Nellums from occurring, despite its knowledge of its employee's propensity for sexual harassment.

55.

Defendant PBSD ratified Defendant Nellum's harrsing and retalittory conduct, and therefore assumed liability for unauthorized conduct.

56.

Defendant PBSD employs Defendant Nellums as Principal and head of its Senior High School where Plaintiff was employed.

12

57.

Defendants PBSD and Defendant Nellums were Plaintiff's employer.

58.

Defendant Nellums took tangible actions against Plaintiff which included demoting her, terminating her, placing her in a Reduction of Force, refusing to rehire her, reducing her duties to Plaintiff's detriment, increasing scrutiny of her work performance, and filing an ethical grievance against her.

59.

On a consistent basis during Plaintiff's employment, Defendant Nellums subjected her to sexual harassment.

60.

Plaintiff was obligated to work in an atmosphere that was hostile by virtue of unsolicited and unwelcome sexual advances, comments, sex based comments, sexual innuendo and other sexually charged conduct. This sexual harassment was sufficiently severe or pervasive to alter the terms and conditions of employment and create a working environment that was intimidating, insulting and abusive to employees.

61.

13

Because Defendant Nellums is the alter ego of PBSD, Defendant PBSD is strictly liable for his conduct, and cannot avail itself of the Faragher/Ellerth affirmative defenses.

62.

The effect of the conduct complained of herein has been to deprive Plaintiff of equal employment opportunity, and has otherwise adversely affected her status as an employee because of sex.

**CLAIMS FOR RELIEF**
**COUNT I**
**VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964:**
**RETALIATION**
**(Defendant PBSD)**

63.

Plaintiff re-alleges the preceding paragraphs as if set forth fully herein.

64.

Defendant PBSD's actions in subjecting Plaintiff to termination and not being rehired following her complaints of sexual harassment constitute unlawful discrimination and retaliation on the basis of Plaintiff's gender in violation of Title VII.

65.

14

Defendant PBSD willfully and wantonly disregarded Plaintiff's rights, and its discrimination/retaliation against Plaintiff was undertaken in bad faith.

66.

The effect of the conduct complained of herein has been to deprive Plaintiff of equal employment opportunity, and to otherwise adversely affect her status as an employee because of her gender.

67.

As a direct and proximate result of Defendant PBSD's violation of Title VII, Plaintiff has been made the victim of acts that have adversely affected her psychological and physical well-being.

68.

Accordingly, Defendant PBSD is liable for the damages Plaintiff has sustained as a result of Defendant's unlawful discrimination and retaliation.

69.

Defendant PBSD permitted its employee to act in a hostile manner towards Plaintiff and other employees, and in failing and refusing to take any appropriate remedial action to remedy the unlawful employment practices has not only deprived Plaintiff of equal employment opportunities, but exhibits malice or reckless indifference to the federally protected rights of Plaintiff.

70.

As a direct and proximate result of Defendant PBSD's unlawful employment practices, Plaintiff has been embarrassed, humiliated and has suffered damage to her emotional health.

71.

Plaintiff thus seeks compensatory and punitive damages pursuant to §102(a)(1) of the Civil Rights Act of 1991.

**COUNT II**
**ARKANSAS CIVIL RIGHTS ACT: SEXUAL HARASSMENT**
**(All Defendants)**

72.

Plaintiff re-alleges the preceding paragraphs as if set forth fully herein.

73.

Defendants have violated the Arkansas Civil Rights Act by breaching Plaintiff's rights against equal protection by discriminating against Plaintiff Alexander based on her gender and sex, namely by allowing sexual harrasment in the workplace to occur against Plaintiff.

74.

As a direct and proximate cause of Defendants' acts or ommissions as alleged herein, Planitiff Alexander has suffered lost wages, compensatory damages, lost fringe benefits, lost earning capacity, negative references, and has incurrred attorneys fees and expenses that would not otherwise have been incurred.

75.

Defendants' conduct has been in willful, intenional, and knowing violation of law, meriting puntive damages.

## COUNT III
## ARKANSAS CIVIL RIGHTS ACT:
## RETALIATION
## (All Defendants)

76.

Plaintiff re-alleges the preceding paragraphs as if set forth fully herein.

77.

Defendants have violated the Arkansas Civil Rights Act by breaching Plaintiff's rights against equal protection by retaliating against Plaintiff for participating in the protected activity of opposing and reporting sexual harassment in the workplace and violations of Defendants' internal policies of sexual harassment, retaliation, and discrimination.

17

78.

As a direct and proximate cause of Defendants' retaliation, as alleged herein, Planitiff has suffered lost wages, compensatory damages, lost fringe benefits, lost earning capacity, negative references, and has incurred attorneys fees and expenses that would not otherwise have been incurred.

79.

Defendants' conduct has been in willful, intentional, and a knowing violation of the law, meriting punitive damages.

## COUNT IV
## OUTRAGE
## (All Defendants)

80.

Plaintiff re-alleges the preceding paragraphs as if set forth fully herein.

81.

Defendants willfully and wantonly caused severe emotional distress by directing extreme and outrageous conduct towards Plaintiff.

82.

The conduct of the Defendants with regard to the sexual harassment of Plaintiff Alexander and with regard to Plaintiff Alexander's complaints of sexual

harassment in the workplace goes beyond all possible bounds of decency, is atrocious, and is utterly intolerable in civilized society.

83.

Defendants' conduct was extreme and outrageous.

84.

Defendant PBSD allowed Plaintiff Alexander to be subjected to sexual harassment by a supervisor (Defendant Nellum), ignored complaints of harassment, and failed to take any corrective action.

85.

Defendants intended to inflict severe emotional distress or knew that it was a high probability that the conduct would do so.

86.

Defendant Nellum made willful and wanton decisions to daily subject Plaintiff Alexander to unwelcome sexual advances and retaliation.

87.

Defendants' conduct actually caused severe emotional distress.

88.

As a direct and proximate cause of Defendants' acts and omissions, as alleged herein, Plaintiff Alexander has lost wages, compensatory damages, lost

fringe benefits, lost earning capacity, and other damages in an amount to be proven at trial.

89.

Defendants' actions have been willful, such that Plaintiff Alexander is entitled to an award of liquidated and punitive damages.

90.

Defendants are liable for all general and special damages proximately resulting from the outrage (intentional infliction of emotional distress).

**COUNT V**
**PROMISSORY ESTOPPEL**
**(All Defendants)**

91.

Plaintiff re-alleges the preceding paragraphs as if set forth fully herein.

92.

Defendants have voluntarily assumed and undertaken the duty to prevent and eliminate sexual harassment and retaliation in the workplace.

93.

Therefore, Defendants have a legal duty to prevent and eliminate sexual harassment and retaliation in the workplace.

20

94.

The employer is in the best position to end sexual harassment and retaliation in its workplace.

95.

By implementing a sexual harassment and retaliation policy and disciplining employees for violations of the policy, sexual harassment retaliation is preventable.

96.

Employees depend on a harassment and retaliation free working environment.

97.

Defendant provided Plaintiff Alexander with a Handbook that included internal processes by which employees could seek remedy for violation of Defendant PBSD's policies regarding sexual harassment and retaliation.

98.

Plaintiff Alexander sought to invoke these processes by reporting violations of the sexual harassment and retaliation.

99.

Plaintiff Alexander regarded the procedures as outlined in Defendant PBSD's handbook as a promise to abide by federal law, state law, and Defendant's

own internal procedures regarding the reporting of sexual harassment and retaliation.

100.

Defendants intended for Plaintiff Alexander to regard Defendant PBSD's handbook as a promise that Defendants would abide by procedures for the reporting of sexual harassment and retaliation as delineated above and as discussed in Defendant PBSD's handbook.

101.

Plaintiff reasonably relied upon Defendants' promise to abide by its own procedures as outlined in Defendant PBSD's handbook.

102.

Defendants failed to abide by Defendant PBSD's own procedures as outlined in Defendant PBSD's handbook regarding the reporting of sexual harassment and retaliation.

103.

Due to Plaintiff Alexander's reliance on Defendants' promise to abide by the procedures as outlined in Defendant PBSD's handbook, Plaintiff Alexander has experienced an injustice in the form of retaliation, demotion, termination, failure to rehire, and has been damaged.

22

104.

As a direct and proximate cause of Defendants' acts and omissions, as alleged herein, Plaintiff Alexander has suffered lost wages, lost fringe benefits, lost earning capacity, and incurred other damages in an amount to be proven at trial.

105.

Defendants' actions have been willful, such that Plaintiff if entitled to liquidated and punitive damages.

### PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff judgment as follows:

   (a)      General damages for mental and emotional suffering caused by Defendants' misconduct;

   (b)      Punitive damages based on Defendants' willful, malicious, intentional, and deliberate acts, including ratification, condonation and approval of said acts;

   (c)      Special damages and/or liquidated damages for lost wages and benefits and prejudgment interest thereon;

   (d)      Reasonable attorney's fees and expenses of litigation;

   (e)      Trial by jury as to all issues;

   (f)      Prejudgment interest at the rate allowed by law;

(g)        Declaratory relief to the effect that Defendants have violated

Plaintiff's statutory rights;

(h)        Injunctive relief of reinstatement, or front pay in lieu thereof,

and prohibiting Defendants from further unlawful conduct of

the type described herein; and

(i)         All other relief to which he may be entitled.


Respectfully submitted the 22nd day of September, 2016.

                                        **BARRETT & FARAHANY**

                                        /s/TK Smith
                                        Tequiero M. "TK" Smith
                                        AR Bar No. 2015259
                                        *Attorney for Plaintiff Celeste Alexander*

1100 Peachtree Street, NE, Ste. 500
Atlanta, GA 30309
(404) 214-0120
tksmith@justiceatwork.com

Case 5:16-cv-00300-BSM   Document 1-1   Filed 09/22/16   Page 1 of 1

JS 44 (Rev. 08/16)

# CIVIL COVER SHEET

5:16cv300

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

| I. (a) PLAINTIFFS | DEFENDANTS |
|---|---|
| CELESTE ALEXANDER | PINE BLUFF SCHOOL DISTRICT NO. 3, JEFFERSON COUNTY, PINE BLUFF, ARKANSAS AND MICHAEL NELLUMS |

**(b)** County of Residence of First Listed Plaintiff **JEFFERSON COUNTY**
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant **JEFFERSON COUNTY**
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
TEQUIERO M. "TK" SMITH: BARRETT & FARAHANY
1100 PEACHTREE STREET, N.E., SUITE 500
ATLANTA, GA 30309   404-214-0120

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

☐ 1  U.S. Government Plaintiff

☒ 3  Federal Question
(U.S. Government Not a Party)

☐ 2  U.S. Government Defendant

☐ 4  Diversity
(Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☒ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** / **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane / ☐ 365 Personal Injury - Product Liability | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 376 Qui Tam (31 USC 3729(a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability / ☐ 367 Health Care/ | | | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander / Pharmaceutical Personal Injury | | **PROPERTY RIGHTS** | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability / Product Liability | | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 340 Marine / ☐ 368 Asbestos Personal Injury Product Liability | | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ☐ 345 Marine Product Liability | | ☐ 840 Trademark | ☐ 460 Deportation |
| | | | | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle / **PERSONAL PROPERTY** ☐ 370 Other Fraud | **LABOR** ☐ 710 Fair Labor Standards Act | **SOCIAL SECURITY** ☐ 861 HIA (1395ff) | ☐ 480 Consumer Credit |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability / ☐ 371 Truth in Lending | ☐ 720 Labor/Management Relations | ☐ 862 Black Lung (923) | ☐ 490 Cable/Sat TV |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury / ☐ 380 Other Personal Property Damage | ☐ 740 Railway Labor Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 195 Contract Product Liability | ☐ 362 Personal Injury - Medical Malpractice / ☐ 385 Property Damage Product Liability | ☐ 751 Family and Medical Leave Act | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | | ☐ 790 Other Labor Litigation | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| | | ☐ 791 Employee Retirement Income Security Act | | ☐ 893 Environmental Matters |
| **REAL PROPERTY** | **CIVIL RIGHTS** / **PRISONER PETITIONS** | | **FEDERAL TAX SUITS** | ☐ 895 Freedom of Information Act |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights / **Habeas Corpus:** | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 896 Arbitration |
| ☐ 220 Foreclosure | ☐ 441 Voting / ☐ 463 Alien Detainee | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 230 Rent Lease & Ejectment | ☒ 442 Employment / ☐ 510 Motions to Vacate Sentence | | | ☐ 950 Constitutionality of State Statutes |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations / ☐ 530 General | | | |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment / ☐ 535 Death Penalty | **IMMIGRATION** | | |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other / ☐ 540 Mandamus & Other | ☐ 462 Naturalization Application | | |
| | ☐ 448 Education / ☐ 550 Civil Rights | ☐ 465 Other Immigration Actions | | |
| | / ☐ 555 Prison Condition | | | |
| | / ☐ 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

☒ 1 Original Proceeding

☐ 2 Removed from State Court

☐ 3 Remanded from Appellate Court

☐ 4 Reinstated or Reopened

☐ 5 Transferred from Another District *(specify)*

☐ 6 Multidistrict Litigation - Transfer

☐ 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
TITLE VII OF THE CIVIL RIGHTS ACT OF 1964: Sexual Harassment & Retaliation; Arkansas Civil Rights Act

Brief description of cause:
Plaintiff was sexually harassed and retaliated against by her employer.

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND:  ☒ Yes  ☐ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions)*

JUDGE _____

DOCKET NUMBER _____

DATE 09/22/2016

SIGNATURE OF ATTORNEY OF RECORD
Tequiero M. "TK" Smith

**FOR OFFICE USE ONLY**

RECEIPT #_____  AMOUNT_____  APPLYING IFP_____  JUDGE_____  MAG JUDGE_____

·F

Chubb
11575 Great Oaks Way
Suite 200
Alpharetta, GA 30022

O  +1 (678) 795.4292
E   whit.kelly@chubb.com

October 25, 2016

Dr. Michael Robinson
Pine Bluff School District
512 S. Pine St.
Pine Bluff, AR 71601

**CHUBB**

| | |
|---|---|
| Insured: | Pine Bluff School District |
| Policy #: | G23670471 004 |
| Claimant: | Celeste Alexander |
| Claim #: | JY16J0554015 |

Dear Mr. Robinson:

We are in receipt of your broker's October 3, 2016 letter regarding the lawsuit filed by Celeste Alexander ("Alexander"). We are directing this letter to you as the authorized representative of Pine Bluff School District (the "Insured"). Although our investigation of this matter is ongoing, based on the information received to date, ACE American Insurance Company ("Chubb") is pleased to advise you that it will accept this matter as a Claim. Chubb sets forth below comments with respect to this matter.

### Summary of the Matter

On September 22, 2016, Alexander filed a lawsuit against the Insured and Michael Nellums ("Nellums"; collectively referred to as the "Defendants") in the U.S. District Court-Eastern District of Arkansas. Alexander's causes of action are: (1) violation of Title VII of the Civil . Rights Act-retaliation (against the Insured), (2) violation of the Arkansas Civil Rights Act-sexual harassment (against the Defendants), (3) violation of the Arkansas Civil Rights Act-retaliation (against the Defendants), (4) outrage (against the Defendants), and (5) promissory estoppel (against the Defendants).

Alexander alleges that starting in November 2014, Nellums began to sexually harass her. Alexander states that she rejected all of Nellums's advances. As a result of her rejection, Alexander alleges that Nellums retaliated against her and eventually terminated her under the guide of a reduction in force. In April 2015, Alexander states that she was notified she would be included in a Reduction of Force. Alexander alleges that she then met with a representative of the Arkansas Education Association and complained of sexual harassment and retaliation against her. In June 2015, Alexander states that she reported the sexual harassment to her superiors through a grievance process. Alexander alleges that Nellums then retaliated against her by filing a grievance against her and stating that she should not be eligible for re-employment with the Insured. Alexander alleges that the Insured ratified or acquiesced Nellums harassment and retaliatory conduct and did not prevent such treatment. Alexander demands general damages for mental and emotional suffering, punitive damages, special damages and/or liquidated damages for lost wages and benefits, reasonable attorney's fees and expenses, prejudgment interest, declaratory relief and injunctive relief or reinstatement or front pay.

### The Policy

Chubb issued an ACE Scholastic Advantage Educators Legal Liability Policy, Policy No. G23670471 004 ("the Policy") to the Insured for the Policy Period February 1, 2016 to February 1, 2017. The Policy has a Limit of Liability of $1,000,000 Aggregate for all Damages and Claims Expenses and a $25,000 per Claim Retention for Damages and Claims Expenses under Insuring Agreement IC.

As Nellums was an Insured Educator of the Educational Institution, Nellums is also an Insured under the Policy.

### Request for Additional Information

Upon receipt of this correspondence, please provide the following information: (i) a copy of the charge filed by Alexander with the U.S. Equal Employment Opportunity

Pine Bluff School District
JY16J0554015

**Exhibit C**

Commission ("EEOC") and (ii) a copy of any written demands, complaints, grievances, etc. from Alexander received by the Insured prior to the EEOC charge and lawsuit. Chubb reserves the right to amend and/or deny coverage based upon review of this information.

### Coverage Analysis

We currently know very little about this claim aside from what is alleged in the lawsuit filed by Alexander. As this matter progresses, however, additional facts and/or defenses may be developed which may have an impact on existing coverage issues. Should this occur, please notify Chubb immediately and we will forward a supplemental letter advising of any change in our position, if necessary. In the meantime, please note that coverage is potentially afforded for this matter, subject to our continuing analysis and the reservations contained herein.

**CHUBB®**

"Damages" found in Clause III-(K) are defined, in relevant part, as:

1. compensatory damages, 2. judgments, 3. any award of prejudgment and post-judgment interest, and 4. settlements which the Insured becomes legally obligated to pay on account of any Claim first made against any Insured during the Policy Period or, if elected, the Extended Reporting Period, for Wrongful Acts to which this Policy applies. Damages also include punitive and exemplary damages and the multiple portion of any multiplied damage award, if and to the extent such damages are insurable under the law of the applicable jurisdiction most favorable to the insurability of such damages. With respect to any Claim arising out of a Wrongful Employment Practice, Damages shall also mean: 1. front pay and back pay, except as otherwise stated below; and 2. liquidated damages awarded pursuant to the Age Discrimination in Employment Act of 1967 or the Equal Pay Act of 1963. Damages shall not include: 1. any amount for which the Insured is not financially liable or legally obligated to pay; 2. taxes, fines or penalties; 3. matters uninsurable under the laws pursuant to which this Policy is construed; 4. employment-related benefits, retirement benefits, perquisites, vacation and sick days, medical and insurance benefits, deferred cash incentive compensation or any other type of compensation; provided, however, this limitation does not include salary, wages, bonuses, commissions and nondeferred cash incentive compensation in a settlement or judgment for a Wrongful Employment Practice; 5. the cost to comply with any injunctive or other non-monetary or declaratory relief, including specific performance, or any agreement to provide such relief; 12. liquidated damages, except to the extent specifically included as Damages above; To the extent that any damages in this matter do not satisfy the definition of Loss, coverage for this matter may be limited.

To the extent that any damages in this matter do not satisfy the definition of Damages, coverage for this matter may be limited.

There may be additional Policy provisions that apply to this matter. This letter addresses only those provisions that appear pertinent at this time in light of the facts currently known and available to us, without accepting or implying that the allegations have any factual or legal merit. If there is any additional information that may affect Chubb's position or analysis, please forward such information to my attention.

### Defense and Mutual Obligations

Pursuant to Endorsement #5, the Insured shall have the right to appoint counsel subject to the prior written approval of the Insurer; however, the Insurer shall make such investigation and defense of a Claim as it deems necessary. It is our understanding that the Insured has retained Cody Kees, Esq. of Bequette & Billingsley to represent them in this matter. Chubb consents to this arrangement subject to previously agreed upon rates and compliance with the Chubb Legal Services Agreement. **Please contact me to discuss the assignment of counsel to represent Nellums.**

In addition, the Policy requires the Insureds cooperate with Chubb in the defense of this matter. We therefore ask that you or defense counsel provide periodic updates on the status of this case, as well as copies of significant correspondence, documents and filings on an ongoing basis. Additionally, under the Policy, the Insureds agree not to settle or offer to settle any Claim, incur any Costs, Charges and Expenses or otherwise assume any contractual obligation or admit any liability with respect to any Claim without our prior written. Therefore, all settlement demands, offers or proposals made by Alexander or contemplated by the Insured should be conveyed to us before any action is taken.

Finally, pursuant to Clause XII, the Policy states that coverage under this Policy shall apply

primary to any other applicable insurance. We therefore recommend that the Insureds notify all other Insurers that may provide coverage for this matter and request copies of all other insurance policies and communications exchanged with any other insurers regarding this matter.

### Conclusion

As noted above, Chubb's investigation of this matter is continuing.   Chubb therefore reserves all rights with regard to the above referenced provisions, as well as all other rights, remedies and defenses under the Policy, at law, and in equity. These reservations include, but are not limited to, the right to withdraw the defense provided in this matter and the right to amend this letter to address additional coverage issues as they may arise, based upon the Policy and/or any additional facts that may come to Chubb's attention. Nothing contained in this letter, and no action on our part in investigating these matters, should be construed as an admission of coverage or as a waiver of any right, remedy, or defense that may be available to Chubb.

**CHUBB**

We hope this letter was helpful in identifying for you the potential coverage issues for this claim. If you have any questions concerning this correspondence, please do not hesitate to contact me at (678) 795-4292.

Sincerely,

Whit Kelly
Claims Specialist-Chubb North American Financial Lines-EPL

cc:   Bill Birch          (bill.birch@bxsi.com)
      Sara Collier        (sara.collier@bxsi.com)
      Laurie Mandell      (laurie.mandell@chubb.com)

Chubb Insurance
11575 Great Oaks Ways
Suite 200
Alpharetta, GA 30022

O  +1 (678) 795-4292
E  whit.kelly@Chubb.com

February 14, 2018

*Via E-mail and Certified Mail:* michael.robinson@pinebluffschools.org
Dr. Michael Robinson
Pine Bluff School District
512 S. Pine St.
Pine Bluff, AR 71601

**CHUBB**

| | |
|---|---|
| **Insured:** | Pine Bluff School District |
| **Policy #:** | G23670471 004 |
| **Claimant:** | Celeste Alexander |
| **Claim#:** | JY16J0554015 |

Mr. Robinson:

We are in receipt of your broker's letter dated October 3, 2016 regarding the lawsuit filed by Celeste Alexander ("Alexander"). We are directing this letter to you as the authorized representative of Pine Bluff School District (the "Insured"). Please note that this letter supplements our previous coverage letter issued on October 25, 2016, which is incorporated by reference herein. Based upon a review of the Policy and additional facts received, ACE American Insurance Company ("Chubb") will not be providing coverage for this matter. In issuing this analysis, Chubb does not wish to imply that the allegations have any merit whatsoever. If you have any additional information that you believe may affect coverage for this matter, please forward it to my attention. Further, to the extent you have not yet done so, we suggest that you provide notice of this matter to any other insurers that may potentially afford coverage.

**Summary of the Matter**

On June 3, 2015, Alexander filed a grievance form with the Insured. In the grievance, Alexander alleged that Michael Nellums sexually harassed her. She alleged that her rejection of Nellums's advances resulted in a demotion and in her ultimate inclusion in a Reduction in Force ("RIF"). In her grievance, Alexander does not make any demands.

On December 1, 2015, Alexander filed a charge of retaliation against the Insured with the U.S. Equal Employment Opportunity Commission ("EEOC"), making the same factual allegations as in her prior grievance. On January 21, 2016, the Insured filed a Mediation Statement with the EEOC stating that the Insured was not interested in mediation. The Insured then filed a position statement with the EEOC in response to Alexander's charge on January 28, 2016. Also, on January 29, 2016, the Insured submitted a First Amended/Substituted Response to the EEOC. The EEOC issued a Dismissal and Notice of Rights to Alexander on June 24, 2016.

Subsequently, on September 22, 2016, Alexander filed a lawsuit against the Insured and Michael Nellums ("Nellums"; collectively referred to as the "Defendants") in the U.S. District Court-Eastern District of Arkansas. Alexander's causes of action are: (1) violation of Title VII of the Civil Rights Act-retaliation (Insured), (2) violation of the Arkansas Civil Rights Act-sexual harassment (the Defendants), (3) violation of the Arkansas Civil Rights Act-retaliation (the Defendants), (4) outrage (the Defendants) and (5) promissory estoppel (the Defendants). Alexander alleges that starting in November 2014, Nellums began to sexually harass her. In April 2015, Alexander states that she was notified she would be included in a RIF. Alexander alleges that she then met with a representative of the Arkansas Education Association and complained of sexual harassment and retaliation against her. In June 2015, Alexander states that she reported the sexual harassment to her superiors through a grievance process. Alexander alleges that Nellums then retaliated against her by filing a grievance against her and stating that she should not be eligible for re-employment with the Insured. Alexander demands general damages for mental and emotional suffering, punitive damages, special damages and/or liquidated damages for lost wages and benefits, reasonable attorney's fees and expenses, prejudgment interest, declaratory relief and injunctive relief or reinstatement or front pay.

**The Policy**

Chubb issued an ACE Scholastic Advantage Educators Legal Liability Policy, Policy # G23670471 004 ("the Policy"), to the Insured for the Policy Period of February 1, 2016 to February 1, 2017. The Policy has a Limit of Liability of $1,000,000 aggregate for all Damages and Claims Expenses, and a $25,000 Retention for Damages and Claims Expenses under Insuring Agreement IC ("Employment Practices Liability").

Pine Bluff School District
JY16J0554015

Exhibit D

As Nellums was an Insured Educator of the Educational Institution, Nellums is also an Insured under the Policy.

## Coverage Analysis

We currently know little about this claim, aside from what is alleged in the materials provided. As this matter progresses, however, additional facts and/or defenses may be developed which may have an impact on existing coverage issues. Should this occur, please notify Chubb immediately and we will forward a supplemental letter advising of any change in our position, if necessary. In the meantime, we would like to bring your attention to certain coverage issues which preclude coverage under the Policy.

Clause VIII (B)(2) states:

> All Claims arising out of the same Wrongful Act and all Interrelated Wrongful Acts of the Insureds shall be deemed to be one Claim. Such Claim shall be deemed to be first made on the date the earliest of such Claim is first made, regardless of whether such date is before or during the Policy Period.

Clause III (X) defines Interrelated Wrongful Acts as:

> All Wrongful Acts that have as a common nexus any fact, circumstance, situation, event, transaction, cause or series of related facts, circumstances, situations, events, transactions or causes.

Alexander filed an EEOC charge against the Insured alleging retaliation. In the EEOC charge, Alexander states that she was retaliated against for filing sexual harassment allegations against Nellums. Alexander then filed a lawsuit against the Insured and Nellums, making duplicative factual allegations and alleging retaliation and sexual harassment. As Alexander's EEOC charge and lawsuit allege the same series of facts and Wrongful Acts, they are considered to be one Claim, first made no later than January 21, 2016, when the Insured filed a mediation statement with the EEOC.

The Insuring Agreement, found in Clause I (C), provides that:

> The Insurer will pay on behalf of the Insureds all Damages and Claims Expenses for which the Insureds becomes legally obligated to pay by reason of a Claim first made against them and reported to the Insurer during the Policy Period or, if elected, the Extended Reporting Period, for any Wrongful Act taking place prior to the end of the Policy Period.

Claim, found in Clause III (D), is defined, in relevant part, as:

> (4) a civil, administrative or regulatory proceeding against any Insured commenced by the issuance of a notice of charge or formal investigative order, including without limitation any such proceeding by or in association with the Equal Employment Opportunity Commission or any other similar federal, state or local governmental authority located anywhere in the world;

As the definition of a Claim includes EEOC charges and as stated above, the Claim in this matter is considered made no later than January 21, 2016, when the Insured filed a Mediation Statement with the EEOC, and prior to the policy period of February 1, 2016 to February 1, 2017.

Clause X (A), as amended by Endorsement #4, provides that:

> The Insured shall, as a condition precedent to their rights under this Policy, give to the Insurer written notice of any Claim as soon as practicable, but in no event later than 60 days after: (1) the end of the Policy Period, or (2) with respect to Claims first made during any applicable Automatic or Optional Extended Reporting Period, the end of such Automatic or Optional Extended Reporting Period.

This matter was first reported to Chubb on October 3, 2016. As this Claim was not both made and reported pursuant to the terms of the Policy, coverage for this matter is precluded in its entirety.

This Claim was also reviewed under Policy #G23670471 003 ("003 Policy") with a Policy Period of April 2, 2015 through February 1, 2016. Pursuant to Clause X (A), as amended by Endorsement #4, of that policy, the Insureds shall, as a condition precedent to their rights under the Policy, give to the Insurer written notice of any Claim as soon as practicable, but in no event later than 60 days after: (1) the end of the Policy Period, or (2) with respect to Claims first made

CHUBB⋅

Pine Bluff School District

during any applicable Automatic or Optional Extended Reporting Period, the end of such Automatic or Optional Extended Reporting Period. As stated above, Chubb was first provided with notice of this matter on October 3, 2016, more than 60 days after the end of the 003 Policy. Accordingly, there is also no coverage under the 003 Policy.

There may be additional Policy provisions that apply to this matter. This letter addresses only those provisions that appear pertinent at this time in light of the facts currently known and available to us, without accepting or implying that the allegations have any factual or legal merit. If there is any additional information that may affect Chubb's position or analysis, please forward such information to my attention.

<u>Conclusion</u>

In light of the foregoing, and based on the information provided to date, Chubb respectfully denies coverage under the Policy. If you have any additional information that you believe may affect coverage for this matter, please forward it to my attention. Chubb recommends that the Insureds notify all other insurers that may provide coverage for this matter.



Chubb reserves the right to deny coverage based upon grounds other than those expressly set forth in this letter and to supplement and/or amend this letter to address additional coverage issues as they may arise, based upon all of the provisions, terms, conditions, exclusions, endorsements and definitions found in the Policy and additional facts that may come to Chubb's attention. Nothing stated herein and no further action taken by Chubb or on its behalf should be construed as a waiver of any of its rights under the Policy. On the contrary, by providing this or any prior correspondence to the Insured, engaging in any prior or future discussions with the Insured, or paying or agreeing to pay any amount to or on behalf of the Insured, Chubb does not waive any rights that it has under the Policy.

If you have any questions concerning this correspondence, please do not hesitate to contact me at (678)-795-4292.

Sincerely,

Whit Kelly
Claims Specialist

cc:      Bill Birch – <u>bill.birch@bxsi.com</u>
           Sara Collier – <u>sara.collier@bxsi.com</u>
           Ala Barreto – <u>ala.barreto@chubb.com</u>