

**ACE American Insurance Company**

# ACE Scholastic Advantage<sup>SM</sup>
# Educators Legal Liability Policy
## Declarations

**This Policy is issued by the stock insurance company listed above.**

**THIS POLICY IS A CLAIMS MADE AND REPORTED POLICY.  EXCEPT AS OTHERWISE PROVIDED HEREIN, THIS POLICY COVERS ONLY CLAIMS FIRST MADE AGAINST THE INSUREDS AND REPORTED TO THE INSURER DURING THE POLICY PERIOD OR EXTENDED REPORTING PERIOD, IF APPLICABLE. AMOUNTS INCURRED FOR DAMAGES AND CLAIMS EXPENSES SHALL BE APPLIED AGAINST THE RETENTION AMOUNT.  PLEASE READ THIS POLICY CAREFULLY.**

**TERMS THAT APPEAR IN BOLD FACE TYPE HAVE SPECIAL MEANING.  PLEASE REFER TO SECTION II, DEFINITIONS.**

| |
|---|
| **Policy** No. EON G23670471 003 |

| |
|---|
| Item 1.  **Educational Institution:**     Pine Bluff School District<br>            Principal Address:          512 S. Pine St<br>                                                Pine Bluff, AR 71601 |

| |
|---|
| Item 2.   **Policy Period**:<br>              From 12:01 a.m.  04/02/2015               To 12:01 a.m.    02/01/2016<br>              (Local time at the address shown in Item 1) |

| |
|---|
| Item 3.     Limits of Liability Each **Claim** and in the Aggregate for all **Claims** including **Claims Expenses**:<br><br>             $1,000,000 |

| |
|---|
| Item 4.    Retention<br><br><br>         A.     For **Damages** and **Claims Expenses** under Insuring Agreement IA.1:<br>                 $ Zero           each **Claim**<br><br>         B.     For **Damages** and **Claims Expenses** under Insuring Agreement IA.2 and IB:<br>                 $5,000     each **Claim**<br><br>         C.     For **Damages** and **Claims Expenses** under Insuring Agreement IC:<br>                 $25,000    each **Claim** |

Item 5.   Notice to **Insurer**:

      A.     Notice of **Claim** or **Wrongful Act**:

           Director of Professional Liability Claims
           ACE Professional Risk
           P.O. Box 5105
           Scranton, PA 18505-0518
           Fax Number: 877-201-8787

      B.     All other notices:

           Chief Underwriting Officer
           ACE USA  - Professional Risk
           1133 Avenue of the Americas, 32nd Floor
           New York, New York 10036

Item 6.   **Policy** Premium:     $8,222

Item 7.   **Extended Reporting Period**:

      A.    Additional Premium:     100% of Annual Premium

      B.    Additional Period:       12 Months

Item 8.   **Crisis Management Fund**:

    $25,000

IN WITNESS WHEREOF, the **Insurer** has caused this **Policy** to be countersigned by a duly authorized representative of the **Insurer**.

JOHN J. LUPICA, President

DATE: 06/22/2015     _____

Authorized Representative



**ACE American Insurance Company**

# ACE Scholastic Advantage<sup>SM</sup> Educators Legal Liability Policy

In consideration of the payment of the premium, in reliance upon the **Application**, and subject to the Declarations and the terms and conditions, limit of liability and other provisions of this **Policy**, the **Insureds** and the **Insurer** agree as follows:

I.   INSURING AGREEMENTS

    A.   **Insured Educators'** Legal Liability

        1.   School Officials' Liability

            The **Insurer** will pay on behalf of the **Insured Educators** all **Damages** and **Claims Expenses** for which the **Insured Educators**:

            a.   are not indemnified by the **Educational Institution**, and

            b.   which the **Insured Educators** become legally obligated to pay

            by reason of a **Claim** first made against the **Insured Educators** and reported to the **Insurer** during the **Policy Period** or, if elected, the **Extended Reporting Period**, for any **Wrongful Act** taking place prior to the end of the **Policy Period**.

        2.   **Educational Institution** Reimbursement

            The **Insurer** will pay on behalf of the **Educational Institution** all **Damages** and **Claims Expenses** for which the **Educational Institution**:

            a.   has indemnified the **Insured Educators**,  and

            b.   which the **Insured Educators** become legally obligated to pay

            by reason of a **Claim** first made against the **Insured Educators** and reported to the **Insurer** during the **Policy Period** or, if elected, the **Extended Reporting Period**, for any **Wrongful Act** taking place prior to the end of the **Policy Period**.

    B.   **Educational Institution** Liability

        The **Insurer** will pay on behalf of the **Educational Institution** all **Damages** and **Claims Expenses** for which the **Educational Institution** becomes legally obligated to pay by reason of a **Claim** first made against the **Educational Institution** and reported to the **Insurer** during the **Policy Period** or, if elected, the **Extended Reporting Period**, for any **Wrongful Act** taking place prior to the end of the **Policy Period**.

    C.   Employment Practices Liability

        The **Insurer** will pay on behalf of the **Insureds** all **Damages** and **Claims Expenses** for which the **Insureds** becomes legally obligated to pay by reason of a **Claim** first made against an **Insured** and reported to the **Insurer** during the **Policy Period** or, if elected, the **Extended Reporting Period**, for any **Wrongful Act** taking place prior to the end of the **Policy Period**.

D.  **Educational Institution** Crisis Management Coverage

The **Insurer** will pay on behalf of the **Educational Institution** the **Crisis Management Expense** for which the **Educational Institution** becomes legally obligated to pay by reason of a **Crisis Event** first occurring during the **Policy Period**, but only up to the limit of liability for the **Crisis Management Fund**.

## II.  DEFENSE

A.  The **Insurer** shall have the right and duty to defend any covered **Claim** made against the **Insured** and reported to the **Insurer** during the **Policy Period** or, if elected, the **Extended Reporting Period**, for any **Wrongful Act** taking place prior to the end of the **Policy Period**, even if such **Claim** is groundless, false or fraudulent.

B.  The **Insured** shall not admit or assume liability or settle or negotiate to settle any **Claim** or incur any **Claims Expenses** without the prior written consent of the **Insurer**.

C.  The **Insurer** shall have the right to appoint counsel and to make such investigation and defense of a covered **Claim** as it deems necessary.

D.  The **Insurer** shall not settle any **Claim** without the written consent of the **Educational Institution**, which consent shall not be unreasonably withheld.

E.  The **Educational Institution** may settle any **Claim** to which this insurance applies provided that the **Educational Institution** does so:

1.  on behalf of all **Insureds** with prejudice; and

2.  without incurring any **Claims Expenses** and/or **Damages** in excess of the Retention.

F.  If the **Educational Institution** refuses to consent to a settlement or a compromise recommended by the **Insurer** and acceptable to the claimant, then the **Insurer's** Limit of Liability under this **Policy** with respect to such **Claim** shall be reduced to:

1.  the amount of **Damages** for which the **Claim** could have been settled plus all **Claims Expenses** incurred until the date of such refusal, and

2.  50% of all subsequent covered **Claims Expenses** in excess of such amount, which sum shall not exceed the unexhausted Limits of Liability specified in Item 3 of the Declarations.

The remaining 50% of **Claims Expenses** and all subsequent **Damages** shall be borne uninsured by the **Insureds** and at their own risk.

In such event, the **Insurer** shall tender a check to the **Insured** for the recommended settlement amount, and shall be relieved of any further duty or obligation, except as otherwise stated in this subsection F.2. above.

G.  The **Insurer** shall not be obligated to investigate, defend, pay or settle, or continue to investigate, defend, pay or settle, any **Claim** after any applicable Limit of Liability specified in Item 3 of the Declarations has been exhausted:

1.  by payment of **Damages** and **Claims Expenses**, or by any combination thereof, or

2.  after the **Insurer** has deposited the remainder of any unexhausted applicable Limit of Liability into a court of competent jurisdiction.

In such case, the **Insurer** shall withdraw from the investigation, defense, payment or settlement of such **Claim** and shall tender the investigation, defense and control of such **Claim** to the **Insured**.

H. The **Insureds** shall cooperate with the **Insurer**, and provide to the **Insurer** all information and assistance which the **Insurer** reasonably requests including but not limited to:

1. attending hearings,

2. depositions and trials and assistance in effecting settlements,

3. securing and giving evidence, or

4. obtaining the attendance of witnesses and conducting the defense of any **Claim** covered by this **Policy**.

I. The **Insureds** shall do nothing that may prejudice the **Insurer's** position.

J. The **Insureds** shall immediately forward to the **Insurer**, at the address indicated in Item 5A of the Declarations, every demand, notice, summons, or other process or pleadings received by the **Insured** or its representatives.

III. DEFINITIONS

When used in this **Policy**, the following bold-faced words have the following meaning:

A. **Adverse Publicity**:  The publication of unfavorable information regarding the **Educational Institution** which can reasonably be considered to materially reduce public confidence in the competence, integrity or viability of the **Educational Institution** to conduct operations.

Such publication must occur in a report about an **Insured** appearing in:

1. a daily newspaper of general circulation;

2. a magazine or other published periodical; or

3. a radio or television news program.

B. **Application**:

1. all applications, including any attachments thereto, and

2. all other information and materials submitted by or on behalf of the **Insureds** to the **Insurer** in connection with the **Insurer** underwriting this **Policy** or any **Policy** of which this **Policy** is a direct or indirect renewal or replacement or which it succeeds in time.

All such applications, attachments, information and materials are deemed attached to and incorporated in this **Policy**.

C. **Bodily Injury**:

1. physical injury to the body,

2. physical pain,

3. sickness,

4. disease,

5. death, and

6. **Mental Distress.**

D. **Claim**:

1. a written demand against any **Insured** for monetary **Damages** or non-monetary or injunctive relief;

2. a civil proceeding against any **Insured** seeking monetary **Damages** or non-monetary or injunctive relief, commenced by the service of a complaint or similar pleading;

3. a mediation or arbitration proceeding, but only if the **Insurer** has provided its prior written consent to such proceeding, against any **Insured** seeking monetary **Damages** or non-monetary or injunctive relief;

4. a civil, administrative or regulatory proceeding against any **Insured** commenced by:

   a. the issuance of a notice of charge or formal investigative order, including without limitation any such proceeding by or in association with:

      i. the Equal Employment Opportunity Commission, or

      ii. any other similar federal, state or local governmental authority located anywhere in the world;

   b. the service upon or other receipt by any **Insured** of a written notice or subpoena from the investigating authority identifying any **Insured** as an individual against whom a civil, administrative or regulatory investigation or proceeding is to be commenced;

5. a **Special Needs Hearing**; or

6. a written request of the **Insured** to toll or waive a statute of limitations applicable to a **Claim** described in paragraphs 1 through 4 above; provided however, this subparagraph only applies with respect to coverage provided under Insuring Agreement I.C,

including any appeal from any of the above.

In all cases, **Claim** shall not include a labor or grievance arbitration or proceeding which is subject or pursuant to a collective bargaining agreement.

E. **Claims Expenses**:

1. reasonable and necessary attorneys' fees, expert witness fees and other fees and costs incurred by the **Insurer**, or by the **Insured** with the **Insurer's** prior written consent, in the investigation and defense of covered **Claims**; and

2. reasonable and necessary premiums for any appeal bond, attachment bond or similar bond; provided however the **Insurer** shall have no obligation to apply for or furnish such bond;

**Claims Expenses** shall not include wages, salaries, fees or costs of **Educational Executives** or **Employees** of the **Insurer** or the **Insured** or **Crisis Management Expense.**

F. **Crisis Event**:  One of the following, except where coverage is otherwise excluded under Exclusions E and N of the **Policy**.

1. Management Event:  The incapacity, death or state or federal criminal indictment of an **Educational Executive**;

2. Funding Cancellation:  The cancellation, withdrawal or revocation of $500,000 or more in funding, donation(s), grant(s) or bequest(s) by a non-government entity or person to the **Educational Institution**;

3. Bankruptcy:  The disclosure by the **Educational Institution** of:

    a. its intention to file or its actual filing for protection under federal bankruptcy laws, or

    b. a third-party's intention to file or its actual filing of an involuntary bankruptcy petition under federal bankruptcy laws with respect to the **Educational Institution**;

4. Employment Event:  The disclosure by the **Educational Institution** of the threatened or actual commencement by a third party of an action, audit or investigation alleging a **Wrongful Employment Practice** by the **Educational Institution** which has caused or is reasonably likely to cause **Adverse Publicity**; and

5. Material Event:  Any other material event which, in the good faith opinion of the **Educational Institution**, has caused or is reasonably likely to result in **Adverse Publicity**, but only if such material event is scheduled for coverage by written endorsement to this **Policy**.

G. **Crisis Management Expense**:

1. expenses incurred by the **Educational Institution** during a period beginning ninety (90) days prior to and in reasonable anticipation of a **Crisis Event** and ending ninety (90) days after an actual or reasonably anticipated **Crisis Event.**

2. this is irrespective of whether a **Claim** is actually made with respect to the subject **Crisis Event.**

3. the **Insurer** must have been notified of the **Crisis Management Expense** within thirty (30) days of the date the **Educational Institution** first incurs the subject **Crisis Management Expense.**

4. such expenses are as follows:

    a. the reasonable and necessary expenses directly resulting from a **Crisis Event** which the **Educational Institution** incurs for **Crisis Management Services** provided to the **Educational Institution** by a **Crisis Management Firm**; and

    b. the reasonable and necessary expenses directly resulting from a **Crisis Event** which the **Educational Institution** incurs for:

        i. advertising, printing, or the mailing of matter relevant to the **Crisis Event**, and

        ii. out of pocket travel expenses incurred by or on behalf of the **Educational Institution** or the **Crisis Management Firm.**

5. **Crisis Management Expense** does not include those amounts which otherwise would constitute compensation, benefits, fees, overhead, charges or expenses of an **Insured** or any of the **Insured's Employees**.

H. **Crisis Management Firm**:  A marketing firm, public relations firm, law firm, or other professional services entity retained by the **Insurer**, or by the **Educational Institution** with the **Insurer's** prior written consent, to perform **Crisis Management Services** arising from a **Crisis Event**.

I. **Crisis Management Fund**:  The amount specified in Item 8 of the Declarations.

J. **Crisis Management Services**:  The professional services provided by a **Crisis Management Firm** in counseling or assisting the **Educational Institution** in reducing or minimizing the potential harm to the **Educational Institution** caused by the public disclosure of a **Crisis Event**.

K. **Damages**:

1. compensatory damages,

2. judgments,

3. any award of prejudgment and post-judgment interest, and

4. settlements

which the **Insured** becomes legally obligated to pay on account of any **Claim** first made against any **Insured** during the **Policy Period** or, if elected, the **Extended Reporting Period**, for **Wrongful Acts** to which this **Policy** applies.

**Damages** also include punitive and exemplary damages and the multiple portion of any multiplied damage award, if and to the extent such damages are insurable under the law of the applicable jurisdiction most favorable to the insurability of such damages.

With respect to any **Claim** arising out of a **Wrongful Employment Practice**, **Damages** shall also mean:

1. front pay and back pay, except as otherwise stated below; and

2. liquidated damages awarded pursuant to the Age Discrimination in Employment Act of 1967 or the Equal Pay Act of 1963.

**Damages** shall not include:

1. any amount for which the **Insured** is not financially liable or legally obligated to pay;

2. taxes, fines or penalties; provided, however. this limitation does not include the ten percent [10%] penalty excise tax imposed upon any **Insured Educator** pursuant to 26 U.S.C. §4558(a)(2) for participation in an excess benefit transaction;

3. matters uninsurable under the laws pursuant to which this **Policy** is construed;

4. employment-related benefits, retirement benefits, perquisites, vacation and sick days, medical and insurance benefits, deferred cash incentive compensation or any other type of compensation; provided, however, this limitation does not include salary, wages, bonuses, commissions and non-deferred cash incentive compensation in a settlement or judgment for a **Wrongful Employment Practice**;

5. the cost to comply with any injunctive or other non-monetary or declaratory relief, including specific performance, or any agreement to provide such relief;

6. any liability or costs incurred to modify any building or property to make it more accessible or accommodating to any person;

7. any liability or costs in connection with any educational, sensitivity or other corporate program, policy or seminar;

8. **Crisis Management Expense**;

9. the value of tuition of scholarship;

10. the reimbursement of tuition, books, transportation expenses and other fees associated with educational activities;

11. any amount that an **Insured** shall be required to pay pursuant to an **Special Needs Hearing** award, other than prevailing party fees;

12. liquidated damages, except to the extent specifically included as **Damages** above; or

13. the return of funds which were received:

    a. from any federal, state or local governmental agency and any interest, fines or penalties arising out of the return of such funds; or

    b. as donations from a third party.

L. **Discrimination**: Any actual or alleged violation of employment discrimination laws anywhere in the world, including violations based on race, color, religion, creed, age, sex, disability, marital status, national origin, pregnancy, HIV status, sexual orientation or preference, military status.

M. **Educational Executive**: An **Executive** of the **Educational Institution** or a **Subsidiary**.

N. **Educational Institution**: The institution of learning named in Item 1 of the Declarations. **Educational Institution** also shall include any such institution in its capacity as debtor-in-possession as defined in United States bankruptcy law or its equivalency where the laws of another country apply.

O. **Employee**: Any natural person whose services or labor is engaged and directed by, and who is acting solely within the scope of his or her employment with, the **Educational Institution**, including any:

1. principal, assistant principal, chancellor, provost, dean, personnel director, risk manager, university counsel, administrator, chaplain, guidance counselor, faculty member, student teacher, teaching assistant, faculty aid, or any other full-time, part-time, seasonal, leased or temporary employee or volunteer;

2. association member, representative to an education association of which the **Educational Institution** is a member, or any alumni council member of the **Educational Institution**;

3. student of the **Educational Institution** while serving in a supervised internship program in satisfaction of course requirements; or

4. independent contractors who are natural persons, but only with respect to:

    a. services performed by the independent contractor on behalf of the **Educational Institution** or **Subsidiary** thereof, and

    b. those independent contractors whom the **Educational Institution** is required to indemnify based upon written contract or indemnity agreement which was executed by both the **Educational Institution** or **Subsidiary** and the independent contractor prior to the commission of the **Wrongful Act** for which indemnity is being sought.

P. **Executive**: Any natural person who was, now is or shall become a duly elected or appointed director, officer, trustee, manager, in-house general counsel, governor, duly constituted committee member (or the functional equivalent of such positions).

Q. **Excluded Personal Conduct**:

1. dishonest, fraudulent, criminal or malicious act, error or omission by an **Insured**;

2. any intentional or knowing violation of the law by an **Insured**; or

3. any gaining in fact of any profit, remuneration or advantage to which any Insured was not legally entitled.

R.  **Extended Reporting Period**: The period for the extension of coverage, if elected, described in Section VII, **Extended Reporting Periods**.

S.  **Incidental Medical Malpractice**:  Injury arising out of emergency medical services rendered or which reasonably should have been rendered to any person or persons by any duly certified emergency medical technician, paramedic or nurse who is:

    1.  an **Employee** of the **Educational Institution,** or

    2.  acting on its behalf to provide such services, but is not employed, either full-time or part-time, at a hospital, clinic or nursing home facility.

**Incidental Medical Malpractice** also includes injury arising out of the dispensation of prescribed medicine.

T.  **Insured**: The **Educational Institution**, **Subsidiaries** and any **Insured Educators**.

U.  **Insured Educators**:

    1.  all persons who were, now are or shall be an **Educational Executive**;

    2.  all persons who were, now are or shall be lawfully elected or appointed members of the board of education or board of regents of the **Educational Institution**;

    3.  **Employees** of the **Educational Institution**;

    4.  student teachers and volunteers while acting solely for or on behalf of, and at the written request and under the direction of, the **Educational Institution**;

    5.  commissions, boards, or other units, and members and **Employees** thereof, operated by and under the jurisdiction of such **Educational Institution** and within an apportionment of the total operating budget indicated in the application for this **Policy**;

    6.  elected or duly appointed **Educational Executives** and **Employees** of the **Educational Institution** while acting at the written request of the **Educational Institution** in their capacity as a duly appointed official of a governmentally-recognized outside tax exempt entity; or

    7.  elected or duly appointed **Educational Executives** and **Employees** of the **Educational Institution** while acting at the written request of the **Educational Institution** and in their capacity as a director or officer of a **Not-for-Profit Entity** for any **Wrongful Acts** they have committed in their respective capacities as a director or officer of such **Not-for-Profit Entity**, provided that:

        a.  the appointment of the elected or duly appointed official or **Employee** to such **Not-for-Profit Entity** is based solely upon the person's being an elected or duly appointed **Educational Executive** or **Employee** of the **Educational Institution**; and

        b.  such elected or duly appointed **Educational Executive** or **Employee** is directed in writing by the **Educational Institution** to serve as a director or officer of such **Not-for-Profit Entity** prior to beginning such service;

Coverage afforded under this **Policy** to the above **Insured Educators** applies only to the extent such persons are acting solely in their capacities as legally authorized representatives, and solely within the scope, of their employment with or representation of the **Educational Institution**

V.  **Insured Educator's Legal Representatives**:  The estate, heirs, legal representatives, assigns, spouses and legally recognized domestic partners of any **Insured Educator**.

W. **Insurer**:  The insurance company providing this insurance.

X. **Interrelated Wrongful Acts**:  All **Wrongful Acts** that have as a common nexus any fact, circumstance, situation, event, transaction, cause or series of related facts, circumstances, situations, events, transactions or causes.

Y. **Mental Distress**:  Mental distress, mental injury, mental anguish, mental tension, pain and suffering, shock and humiliation; provided, however, such **Mental Distress** must arise from and be accompanied by objectively identifiable and demonstrable injury to the claimant's body, sickness, disease or death.

Z. **Network Security or Privacy Breach:**

   1. The actual failure or inability of the security of the **Educational Institution's** computer system's to prevent a computer attack or mitigate loss arising in whole or in part from a computer attack;

   2. physical theft, loss or mysterious disappearance of:

      a.  firmware,

      b.  hardware (including components thereof), or

      c.  hard copy files,

      owned and/or controlled by the **Educational Institution** on which electronic data or **Personal Information** is stored, by a person other than an **Insured**, from a premises occupied and/or controlled by the **Educational Institution**, or

   3. the wrongful disclosure of any **Personal Information** by any means whatsoever.

AA. **Not-for-Profit Entity**:  A non-profit corporation, community chest, fund, foundation or other entity that is not included in the Definition of **Educational Institution** and that is exempt from federal income tax as an organization described in Section 501(c)(3) of the Internal Revenue Code of 1986, as amended.

BB. **Outside Entity**:  Any

   1. for-profit corporation or other for profit entity, or

   2. **Not-for-Profit Entity**.

CC. **Personal Information**:  An individual's

   1. name,

   2. social security number,

   3. medical or healthcare data,

   4. other protected health information,

   5. drivers license number,

   6. state identification number,

   7. credit card number,

   8. debit card number,

9.  address,

10.  telephone number,

11.  account number,

12.  account histories,

13.  passwords, or

14.  other nonpublic personal information as defined in **Privacy Regulations**.

**Personal Information** shall not include information that is lawfully made available to the general public for any reason, including but not limited to information from federal, state or local government records.

DD.  **Personal Injury**:  Injury arising out of one or more of the following offenses:

1.  false arrest, detention or imprisonment;

2.  malicious  prosecution;

3.  libel, slander or other defamatory or disparaging material;

4.  publication or an utterance in  violation of an individual's right to  privacy; and

5.  wrongful entry or eviction, or other invasion of the right to private occupancy.

EE.  **Policy**:  Collectively, the Declarations, the **Application**, this **Policy,** including any endorsements.

FF.  **Policy Period**:  The period of time specified in Item 2 of the Declarations, subject to prior termination pursuant to Section XIV, Termination of the **Policy**.

GG.  **Pollutants**:

1.  Any substance exhibiting any hazardous characteristics as defined by, or identified on, a list of hazardous substances issued by the United States Environmental Protection Agency or any federal, state, county, municipal or local counterpart thereof or any foreign equivalent.

2.  Such substances shall include, without limitation:

a.  solids,

b.  liquids,

c.  gaseous or thermal irritants,

d.  contaminants or smoke,

e.  vapor,

f.  soot,

g.  fumes,

h.  acids,

i.  alkalis,

    j.   chemicals or waste materials, including materials to be recycled, reconditioned, or reclaimed.

   3.  **Pollutants** shall also mean any other air emission, odor, waste water, oil or oil products, infectious or medical waste, asbestos or asbestos products, noise, lead, dust, fibers, germs, fungus (including mold or mildew and any mycotoxins, spores, scents or byproducts produced or released by fungi) and electric or magnetic or electromagnetic field.

HH.  **Privacy Regulations**: The following statutes and regulations associated with the care, custody, control or use of personally identifiable financial, medical or other sensitive information:

   1.  Health Insurance Portability and Accountability Act of 1996 (Public Law 104-191);

   2.  Gramm-Leach-Bliley Act of 1999;

   3.  California Security Breach Notification Act (CA SB 1386);

   4.  Section 5(a) of the Federal Trade Commission Act, 15 U.S.C. § 45(a), but solely for alleged violations of unfair or deceptive acts or practices in or affecting commerce;

   5.  The Family Educational Rights and Privacy Act (also known as the Buckley Amendment); and

   6.  other similar local, state, federal, or foreign identity theft and privacy protection legislation that requires commercial entities that collect **Personal Information** to post privacy policies, adopt specific privacy or security controls, or notify individuals in the event that **Personal Information** has potentially been compromised.

II.  **Professional Service**:

   1.  services that may be legally performed only by an individual holding a professional license, regardless of whether the person is licensed or not, or

   2.  any service provided for a fee or remuneration by an **Insured Educator** to any party other than an **Educational Institution.**

JJ.  **Property Damage**:

   1.  physical injury to, or loss or destruction of, tangible or intangible property, including the loss of use thereof; and

   2.  loss of use of tangible or intangible property which has not been physically injured, lost, damaged or destroyed.

KK.  **Retaliation**:  Retaliatory treatment on account of:

   1.  the actual or attempted exercise by an **Employee** of any rights of such an **Employee** under law, including workers' compensation laws, the Family and Medical Leave Act, and the Americans with Disabilities Act;

   2.  the filing of any claim under any statute, rule or regulation to protect an **Employee** from **Discrimination** by his or her employer if:

     a.  such **Employee** discloses or threatens to disclose to a superior or a governmental agency, or

     b.  such **Employee** gives testimony relating to, any activity within such employer's operations which may be in violation of a statute, rule or regulation or any professional codes of ethics, including the Federal False Claims Act;

    3.    the disclosure or threat of disclosure by an **Employee** of the **Educational Institution** to a superior or to any governmental agency of any act by an **Insured** which act is alleged to be a violation of any federal, state, local or foreign law, common or statutory, or any rule or regulation promulgated thereunder;

    4.    an **Employee** assisting, cooperating or testifying in any proceeding or investigation into whether an **Insured** violated any federal, state, local or foreign law, common or statutory, or any rule or regulation promulgated thereunder; or

    5.    any strike of any **Employee** of the **Educational Institution**

LL.    **Sexual Abuse and Molestation**:  Any actual, attempted or alleged criminal sexual conduct of a person by another person, or persons acting in concert, which causes physical and/or mental injuries.  **Sexual Abuse and Molestation** includes:

    1.    sexual molestation,

    2.    sexual assault,

    3.    sexual exploitation, or

    4.    sexual injury.

    **Sexual Abuse and Molestation** does not include **Sexual Harassment**.

MM.    **Sexual Harassment**:  Any actual or alleged unwelcome sexual advances, requests for sexual favors or other conduct of a sexual nature, of a person by another person, or persons acting in concert, which causes physical and/or mental injuries.  **Sexual Harassment** includes the above conduct:

    1.    when submission to or rejection of such conduct is made either explicitly or implicitly a condition of a person's employment, or a basis for employment decisions affecting a person; or

    2.    when such conduct has the purpose or effect of unreasonably interfering with a person's work performance or creating an intimidating, hostile, or offensive work environment.

    **Sexual Harassment** does not include **Sexual Abuse and Molestation.**

NN.    **Special Needs Hearing**:  A due process hearing:

    1.    conducted at the written request of a student's parent(s) or legal guardian;

    2.    which is presided over by an impartial arbiter; and

    3.    of which the subject is an individual education plan which addresses the special educational needs of a student with disabilities that is jointly developed by the **Educational Institution** and the student's parent(s) or legal guardian.

OO.    **Subsidiary(ies)**:  Any entity, other than a joint venture, in which the **Educational Institution**:

    1.    on or before the inception date of the **Policy Period**, owns, directly or through one or more **Subsidiaries**, more than fifty percent (50%) of the voting, appointment or designation power, either directly or indirectly through one or more **Subsidiaries**, for the selection of a majority of such organization's voting directors or trustees;

    2.    has the right, pursuant to written contract or the by-laws, charter, operating agreement or similar documents of the **Educational Institution** or any **Subsidiary**, to elect, appoint or designate a majority of the organization's voting directors or trustees, whether directly or indirectly through on or more **Subsidiaries**;

3. acquires a greater than fifty percent (50%) interest during the **Policy Period** and of which the book value of such entity's assets determined in accordance with Generally Accepted Accounting Practices ("GAAP"):

    a. total less than 25% of the similarly calculated assets of the **Educational Institution** as of the inception date of the **Policy Period**.  Provided that the **Educational Institution** shall provide the **Insurer** with full particulars of the **Subsidiary** before the end of the **Policy Period**, or

    b. exceeds 25% of the similarly calculated assets of the **Educational Institution** as of the inception date of the **Policy Period**.  Such coverage is extended to such **Subsidiary** only upon the condition that within ninety (90) days after the date of its becoming a **Subsidiary** the **Educational Institution** shall :

        i. have provided the **Insurer** with full particulars of the new **Subsidiary**;

        ii. agreed to any additional premium or amendment of the provisions of this **Policy** required by the **Insurer** relating to such new **Subsidiary**, and

        iii. pay when due any additional premium required by the **Insurer** relating to the new **Subsidiary**.

Coverage afforded under this **Policy** with respect to **Claims** made against any **Subsidiary** or any **Insured Educator** thereof shall only apply for **Wrongful Acts** occurring after the effective time such **Subsidiary** became a **Subsidiary** and prior to the time such **Subsidiary** ceased to be a **Subsidiary**.

PP. **Wrongful Act**:  With regard to:

1. Insuring Agreements I.A.1 and 1.A.2:

    Any actual or alleged error, omission, act, misstatement, misleading statement, breach of duty by an **Insured Educator** while acting solely in their capacity as such and solely within the scope of their employment with or representation of the **Educational Institution**;

2. Insuring Agreement I.B:

    Any actual or alleged error, omission, act, misstatement, misleading statement, breach of duty by the **Educational Institution** or by any independent contractor or leased employee that is not an **Insured Educator**; or

3. Insuring Agreement I.C:

    a. Solely with respect to **Claims** brought and maintained by or on behalf of any **Employee** or applicant for employment with the **Educational Institution**, a **Wrongful Employment Practice** committed or attempted by the **Educational Institution** or by any **Insured Educator** acting solely in their capacity as such and on behalf of the **Educational Institution** and only to the extent the **Insured Educator** or other alleged wrongful actor was acting solely within the scope of their employment with or representation of the **Educational Institution**; or

    b. with respect to all other **Claims**, **Discrimination** or **Sexual Harassment**, or a violation of a natural person's civil rights relating to such **Discrimination** or **Sexual Harassment**, whether direct, indirect, intentional or unintentional, by the **Insured Educator** acting solely within the scope of their employment with or representation of the **Educational Institution.**

4. **Wrongful Act**, in all cases, does not mean and shall not include any actual or alleged error, omission, act, misstatement, misleading statement, or breach of duty alleging, based on, arising out of or attributable to, in whole or in part, a **Network Security or Privacy Breach**.

QQ.  **Wrongful Employment Practice**:  Any actual or alleged:

1.  wrongful dismissal, discharge or termination, whether actual or constructive;

2.  employment-related misrepresentation;

3.  **Discrimination**;

4.  **Sexual Harassment** or unlawful workplace harassment;

5.  wrongful deprivation of a career opportunity;

6.  wrongful demotion;

7.  failure to employ or promote;

8.  wrongful discipline;

9.  **Retaliation**;

10.  negligent evaluation;

11.  employment-related libel, slander, defamation, humiliation, invasion of privacy;

12.  the giving of negative or defamatory statements in connection with an **Employee** reference;

13.  failure to grant tenure; and

14.  with respect to paragraphs QQ.1 through QQ.13 above, inclusive, negligent hiring, retention, training or supervision; infliction of emotional distress or mental anguish; failure to provide or enforce adequate or consistent corporate policies and procedures; or violation of an individual's civil rights;

of any past, present or prospective full-time, part-time, seasonal and temporary **Employee** or volunteer or leased **Employee** or applicant for employment of the **Educational Institution**.  Coverage afforded by this **Policy** applies only to the extent that the **Employee**, volunteer or leased **Employee** or applicant for employment was acting:

a.  solely in their capacity as such,

b.  on behalf of the **Educational Institution**, and

c.  only to the extent the person was acting solely within the scope of their actual or proposed employment with the **Educational Institution**.

The foregoing definitions shall apply equally to the singular and plural forms of the respective words.

IV.  EXCLUSIONS

Except as limited under Insuring Agreement I.D, **Educational Institution** Crisis Management Coverage, the **Insurer** shall not be liable for **Damages** or **Claims Expenses** on account of any **Claim**:

A. alleging, based upon, arising out of or attributable to any **Excluded Personal Conduct**.  However, this exclusion shall not apply:

    1. unless and until there is an adverse admission by, finding of fact, or final adjudication against any **Insured** as to such **Excluded Personal Conduct**, at which time the **Insured** shall reimburse the **Insurer** for all **Damages** and **Claims Expenses** paid or incurred on account of such **Claim**; or

    2. that part of any **Claim** for **Wrongful Employment Practice**.

The **Wrongful Act** of any **Insured Educator** shall not be imputed to any other **Insured Educator** for the purpose of determining the applicability of the above exclusion.  Further, only facts pertaining to and knowledge possessed by any past, present or future **Educational Executives** of the **Educational Institution** shall be imputed to the **Educational Institution**.

B. seeking relief or redress in any form other than monetary damages, or **Claims Expenses** for a **Claim** seeking injunctive or other non-monetary relief.  However, the **Insurer** shall defend such a **Claim** in accordance with Section II, Defense, subject to a **Policy Period** aggregate limit of liability of $100,000.  This limit shall be part of the Limit of Liability stated in Item 3 of the Declarations.

C. alleging, based upon, arising out of or attributable to any:

    1. **Bodily Injury**, other than **Mental Distress** arising out of a **Wrongful Employment Practice**.  This also includes, but is not limited to, corporal punishment;

    2. **Property Damage**;

    3. **Personal Injury,** other than libel, slander or defamation in any form arising out of a **Wrongful Employment Practice**; or

    4. any allegation relating to the foregoing C.1, C.2 or C.3:

        a. that an **Insured** negligently employed, investigated, supervised or retained a person, or

        b. based on an alleged practice, custom or policy and including, without limitation, any allegation that the violation of a civil right caused or resulted from such **Damages**, **Claims Expenses** or **Claim**.

D. alleging, based upon, arising out of or attributable to the failure to effect or maintain any insurance or bond, including any insurance provided by self-insurance arrangements, self-insurance trusts, pools, captive insurance companies, retention groups, reciprocal exchanges or any other plan or agreement of assumption or risk transfer.  However, this exclusion shall not apply to **Claims Expenses**.

E. alleging, based upon, arising out of or attributable to:

    1. the actual, alleged or threatened discharge, dispersal, release, escape, seepage, migration or disposal of **Pollutants**; or

    2. any direction or request that any **Insured** test for, monitor, clean up, remove, contain, treat, detoxify or neutralize **Pollutants**, or any voluntary decision to do so.

F. alleging, based upon, arising out of or attributable to:

    1. the planning, construction, maintenance, operation or use of any nuclear reactor, nuclear waste storage or disposal site or any other nuclear facility;

    2. the transportation of nuclear material; or

    3. any nuclear reaction or radiation, or radioactive contamination, regardless of its cause.

G.   brought by or on behalf of any **Insured**.  However, with respect to any **Claim** alleging any **Wrongful Employment Practice,** this exclusion shall only apply to cross-claims or counter-claims brought by one **Insured** against another **Insured**.

H.   alleging, based upon, arising out of or attributable to:

1.   a breach of any express, implied, actual or constructive contract, agreement, warranty, guarantee or promise, including a contract with a student for educational services.

   However:

   a.   the **Insurer** shall indemnify the **Insured** for **Claims Expenses** with respect to a **Claim** that alleges a breach of contract subject to a **Policy Period** aggregate limit of liability of $100,000. This limit shall be part of the Limit of Liability stated in Item 3 of the Declarations; and

   b.   this subsection of this exclusion shall not apply to any **Claim** alleging any **Wrongful Employment Practice**.

I.   alleging, based upon, arising out of or attributable to:

1.   any construction, architectural or engineering contracts and/or agreements, or

2.   the actual or alleged liability assumed by the **Insured** under any express, implied, actual or constructive contract, agreement, warranty, guarantee, promise, collective bargaining agreement or negotiated labor agreement, unless such liability would have attached to the **Insured** even in the absence of such contract, agreement, warranty, guarantee, promise, collective bargaining agreement or negotiated labor agreement.

J.   alleging, based upon, arising out of or attributable to any misappropriation of any trade secret or infringement of patent, collective mark, certification mark, registered mark, service mark, trademark, trade dress, trade name, domain, title, slogan, copyright or service name.

K.   alleging, based upon, arising out of or attributable to the rendering or failure to render:

1.   medical services, including **Incidental Medical Malpractice**; or

2.   **Professional Services** provided by any psychologist, counselor, career counselor, advisor, or other professional or quasi-professional except as stated in K.3. immediately below; or

3.   **Professional Services** provided by any **Insured Educator** other than purely educational services. However this exclusion shall not apply to the extent the **Professional Services** are being provided by an attorney directly to and for the sole benefit of the **Educational Institution**.

L.   alleging, based upon, arising out of or attributable to any **Insured's** activities as a trustee or fiduciary as respects to:

1.   any type of employee benefit plan, including any pension, savings, or profit sharing plan,

2.   any amounts or benefits due under any fringe benefit program, retirement program, incentive program, perquisite program, entitlement program or

3.   any other benefits owed to any **Employee.**

   This includes, but is not limited to, any actual or alleged violation of the responsibilities, obligations or duties imposed by the Employee Retirement Income Security Act of 1974, any similar state or local laws, and any rules and regulations promulgated thereunder and amendments thereto.

However, the **Insurer** shall indemnify the **Insured** for **Claims Expenses** but only with respect to a **Claim** that alleges a breach of fiduciary duty, responsibility or obligation in connection with any employee benefit or pension plan, or to any amount due under any fringe benefit or retirement program and subject to a **Policy Period** aggregate limit of liability of $25,000.  This limit shall be part of the Limit of Liability stated in Item 3 of the Declarations.

M.  alleging, based upon, arising out of or attributable to:

1.  any prior or pending litigation or administrative or regulatory proceeding, or any U.S. Equal Employment Opportunity Commission or similar state, local or foreign agency proceeding or investigation, filed on or before the effective date of the first policy issued and continuously renewed by the **Insurer**, or the same or substantially the same **Wrongful Act**, fact, circumstance or situation underlying or alleged therein; or

2.  any other **Wrongful Act** whenever occurring which, together with a **Wrongful Act** underlying or alleged in such prior or pending proceeding, would constitute **Interrelated Wrongful Acts**.

N.  alleging, based upon, arising out of, or attributable to:

1.  any **Wrongful Act**, fact, circumstance or situation which has been the subject of any written notice given under any other policy of which this **Policy** is a renewal or replacement or which it succeeds in time; or

2.  any other **Wrongful Act** whenever occurring which, together with a **Wrongful Act** which has been the subject of such notice, would constitute **Interrelated Wrongful Acts**.

O.  alleging, based upon, arising out of or attributable to any **Wrongful Act** prior to the inception date of the first policy issued by the **Insurer** or any affiliate thereof, and continuously renewed and maintained, if, on or before such date, any **Insured** knew or could have reasonably foreseen that such **Wrongful Act** could lead to a **Claim**.

P.  alleging, based upon, arising out of or attributable to any:

1.  purchase, sale, offer of or solicitation of an offer to purchase or sell securities, or violation of any securities law, including provisions of the Securities Act of 1933, or the Securities Exchange Act of 1934, as amended;

2.  violation of the Organized Crime Control Act of 1970 (commonly known as "Racketeer Influenced And Corrupt Organizations Act" or "RICO"), as amended;

3.  regulation promulgated under the foregoing laws; or

4.  any federal, state, local or foreign laws:

    a.  similar to the foregoing laws (including "Blue Sky" laws), or

    b.  regulating the same or similar conduct or services, whether such law is statutory, regulatory or common law.

Q.  alleging, based upon, arising out of or attributable to:

1.  **Sexual Abuse and Molestation**, including any allegation that an **Insured** negligently, recklessly or intentionally employed, investigated, supervised or retained any person who allegedly or actually committed such acts, or

2.  any alleged practice, policy or custom, including any violation of a civil right, that gave rise to, caused, or resulted in such **Sexual Abuse and Molestation**.

R.  alleging, based upon, arising out of or attributable to any **Wrongful Act** arising out of an **Insured Educator** serving as an **Executive** or employee of an **Outside Entity,** if such **Claim** is brought by the **Outside Entity** or by any **Executive** or employee.

S.  alleging, based upon, arising out of or attributable to strikes, riots or civil commotions.

T.  alleging, based upon, arising out of or attributable to the failure to pay any bond, interest on any bond, any debt, financial guarantee or debenture.

U.  solely with respect to any **Claim** arising out of a **Wrongful Employment Practice**:

1.  alleging, based upon, arising out of or attributable to any violation of the responsibilities, obligations or duties imposed by any worker's compensation, disability benefits, unemployment compensation, unemployment insurance, retirement benefits, social security benefits or similar law.  However, this exclusion shall not apply to that part of any **Claim** for **Retaliation**;

2.  for an actual or alleged violation of:

    a.  the Employee Retirement Income Security Act of 1974 (except section 510 thereof);

    b.  the Fair Labor Standards Act (except the Equal Pay Act),

    c.  the National Labor Relations Act,

    d.  the Worker Adjustment and Retraining Notification Act,

    e.  the Consolidated Omnibus Budget Reconciliation Act,

    f.  the Occupational Safety and Health Act; or any similar federal, state or local laws, and any rules and regulations promulgated thereunder and amendments thereto anywhere in the world.

    However, this exclusion shall not apply to that part of any **Claim** for **Retaliation**;

3.  alleging, based upon, arising out of or attributable to:

    a.  any costs or liability incurred by any **Insured** to provide any reasonable accommodations required by, made as a result of, or to conform with the requirements of, the Americans With Disabilities Act of 1992, as amended, or any similar federal, state or local law, regulation or ordinance, including the modification of any building, property or facility to make it more accessible or accommodating to any disabled person; or

    b.  improper payroll deductions or any **Claims** for unpaid wages or overtime pay for hours actually worked or labor actually performed by any **Employee** of a **Educational Institution**, or any violation of any federal state, local or foreign statutory law or common law that governs the same topic or subject, and any rules, regulations and amendments thereto.

    However, this exclusion shall not apply to that part of any **Claim** for **Retaliation**.

V.  **CRISIS MANAGEMENT** COVERAGE PROVISIONS

A.  No Retention shall apply to **Crisis Management Expense.**

B.  The **Insurer** shall pay such **Crisis Management Expense** from the first dollar subject to all other terms and conditions of this policy, including the **Policy** limit.

C.  An actual or anticipated **Crisis Event** shall be reported to the **Insurer** as soon as practicable, but in no event later than thirty (30) days after the **Educational Institution** first incurs **Crisis Management Expenses** for which coverage will be requested under this **Policy**.

VI.  ESTATES, LEGAL REPRESENTATIVES AND SPOUSES

    A.  The **Insured Educator's Legal Representatives** shall be considered **Insureds** under this **Policy**. However, coverage is afforded to such **Insured Educator's Legal Representatives** only for a **Claim** arising solely out of their status as such.

    B.  In the case of a spouse or legally recognized domestic partner, where the **Claim** seeks damages from marital community property, jointly held property or property transferred from a natural person **Insured** to the spouse or legally recognized domestic partner.

    C.  No coverage is provided for any **Wrongful Act** of an **Insured Educator's Legal Representatives**.

    D.  All of the terms and conditions of this **Policy** including, without limitation, the Retention applicable to **Damages** and **Claims Expenses** incurred by **Insureds** shown in Item 4 of the Declarations, shall also apply to **Damages** and **Claims Expenses** incurred by such **Insured Educator's Legal Representatives**.

VII.  **EXTENDED REPORTING PERIODS**

If the **Insurer** terminates or does not renew this **Policy** (other than for failure to pay a premium when due), or if the **Educational Institution** terminates or does not renew this **Policy** and does not obtain replacement coverage as of the effective date of such cancellation or non-renewal, the **Educational Institution** shall have the right, upon payment of the additional premium described below, to a continuation of the coverage granted by this **Policy** for at least one **Extended Reporting Period** as follows:

    A.  Automatic **Extended Reporting Period**

        1.  The **Educational Institution** shall have continued coverage granted by this **Policy** for a period of 60 days following the effective date of such termination or nonrenewal.  Such coverage is only for **Claims** first made during such 60 days and arising from **Wrongful Acts** taking place prior to the effective date of such termination or nonrenewal.

        2.  This Automatic **Extended Reporting Period** shall immediately expire upon the purchase of replacement coverage by the **Educational Institution**.

    B.  Optional **Extended Reporting Period**

        1.  The **Educational Institution** shall have the right, upon payment of the additional premium set forth in Item 7A of the Declarations, to an Optional **Extended Reporting Period**, for the period set forth in Item 7B of the Declarations following the effective date of such cancellation or nonrenewal.  Such coverage is only for **Claims** first made during such Optional **Extended Reporting Period** and arising from **Wrongful Acts** taking place prior to the effective date of such termination or nonrenewal.

        2.  This right to continue coverage shall lapse unless written notice of such election is given by the **Educational Institution** to the **Insurer**, and the **Insurer** receives payment of the additional premium, within 30 days following the effective date of termination or nonrenewal.

        3.  The first 60 days of the Optional **Extended Reporting Period**, if it becomes effective, shall run concurrently with the Automatic **Extended Reporting Period**.

        4.  The **Insurer** shall give the **Educational Institution** notice of the premium due for the **Extended Reporting Period** as soon as practicable following the date the **Educational Institution** gives such notice of such election.  Such premium shall be paid by the **Educational Institution** to the **Insurer** within 10 days following the date of such notice by the **Insurer** of the premium due.

    C.  The **Extended Reporting Period** is not cancelable and the entire premium for the **Extended Reporting Period** shall be deemed fully earned and non-refundable upon payment.

D. The **Extended Reporting Period**, if elected, shall be part of and not in addition to the Limit of Liability for the immediately preceding **Policy Period**.  The purchase of the **Extended Reporting Period** shall not increase or reinstate the Limit of Liability, which shall be the maximum liability of the **Insurer** for the **Policy Period** and **Extended Reporting Period**, combined.

E. A change in **Policy** terms, conditions, exclusions and/or premiums shall not be considered a nonrenewal for purposes of triggering the rights to the Automatic or Optional **Extended Reporting Period**.

## VIII. LIMITS OF LIABILITY

A. Payment of **Claims Expenses** without reduction of the Limit of Liability

1. The **Insurer** shall pay **Claims Expenses** in excess of the applicable Retention and up to an aggregate amount equal to the Limit of Liability stated in Item 3 of the Declarations without reduction of the applicable Limit of Liability.  The total amount of such **Claims Expense** payments by the **Insurer** shall be capped at the amount of the Limit of Liability, and is not on a per **Claim** basis.

2. Once the **Insurer** has paid the amount set forth in Item 3 of the Declarations in aggregate **Claims Expenses** arising from or relating to any and all matters, all further payments by the **Insurer** of **Claims Expenses** shall reduce the applicable Limit of Liability.

B. Limit of Liability

1. Except as otherwise stated in Section VIII.A,

    A. the **Insurer's** maximum liability for the sum of all **Damages** and all **Claims Expenses** because of all **Claims** (including all **Claims** alleging any **Interrelated Wrongful Acts**) first made and reported during the **Policy Period** shall never exceed the amount stated in Item 3 of the Declarations.

    B. any payment of **Damages** and/or **Claims Expenses** by the **Insurer** will reduce the Limit of Liability stated in Item 3 of the Declarations.

2. All **Claims** arising out of the same **Wrongful Act** and all **Interrelated Wrongful Acts** of the **Insureds** shall be deemed to be one **Claim**.  Such **Claim** shall be deemed to be first made on the date the earliest of such **Claim** is first made, regardless of whether such date is before or during the **Policy Period**.

3. All **Damages** and all **Claims Expenses** resulting from a single **Claim** shall be deemed a single **Damage** and **Claims Expense** and shall be allocable to the policy in effect on the date the **Claim** is first made, regardless of whether such date is before or during the **Policy Period**.

4. The **Insurer** is entitled to pay **Damages** and **Claims Expenses** as they become due and payable by the **Insureds**, without consideration of other future payment obligations.

5. Once the Limit of Liability has been exhausted by payments of any **Damages,** the obligations of the **Insurer** under this **Policy** shall be completely fulfilled and extinguished.  This is without regard to whether the payment by the **Insurer** of **Claims Expenses** under section VIII.A. has exhausted, reached or exceeded the amount set forth in Item 3 of the Declarations.

6. The **Crisis Management Fund** is the **Insurer's** maximum liability for all **Crisis Management Expense** arising from any and all **Crisis Events** occurring during the **Policy Period**.  This limit shall be the **Insurer's** maximum liability under this policy regardless of the number of **Crisis Events** reported during the **Policy Period**.

7. The **Insurer's** obligation to pay **Crisis Management Expense** terminates and ends upon the exhaustion of the **Crisis Management Fund**.  The **Crisis Management Fund** shall be in addition to the aggregate Limit of Liability set forth in Item 3 of the Declarations.

## IX.   RETENTION

A.   The liability of the **Insurer** shall apply only to that part of **Damages** and **Claims Expenses** which are in excess of the applicable Retention amount shown in Item 4 of the Declarations. Such Retention shall be borne uninsured by the **Educational Institution** and at the risk of all **Insureds**.

B.   A single Retention amount shall apply to **Damages** and **Claims Expenses** arising from all **Claims** alleging **Interrelated Wrongful Acts**.

C.   If different parts of a single **Claim** are subject to different Retentions, the applicable Retention shall be applied separately to each part of the **Damages** and **Claims Expenses**.   However, the sum of such Retentions shall not exceed the largest applicable Retention.

## X.   NOTICE

For coverage under this **Policy** (other than coverage for a **Crisis Event**):

A.   The **Insured** shall, as a condition precedent to their rights under this **Policy**, give to the **Insurer** written notice of any **Claim** as soon as practicable, but in no event later than 30 days after:

   1.   the end of the **Policy Period**, or

   2.   with respect to **Claims** first made during any applicable Automatic or Optional **Extended Reporting Period**, the end of such Automatic or Optional **Extended Reporting Period**.

B.   If, during the **Policy Period**, any **Insured** becomes aware of any specific **Wrongful Act** which may reasonably give rise to a future **Claim** covered under this **Policy**, and if the **Insureds** give written notice to the **Insurer** during the **Policy Period**, the Automatic **Extended Reporting Period**, or, if elected, the Optional **Extended Reporting Period** of:

   1.   the identity of the potential claimants;

   2.   a description of the anticipated **Wrongful Act** allegations;

   3.   the identity of the **Insureds** allegedly involved;

   4.   the circumstances by which the **Insureds** first became aware of the **Wrongful Act**;

   5.   the consequences which have resulted or may result; and

   6.   the nature of the potential monetary damages;

   then any **Claim** which arises out of such **Wrongful Act** shall be deemed to have been first made at the time such written notice was received by the **Insurer**.  No coverage is provided for fees, expenses and other costs incurred prior to the time such **Wrongful Act** results in a **Claim**.

C.   All notices under any provision of this **Policy** shall be in writing and given by prepaid express courier, certified mail or facsimile transmission properly addressed to the appropriate party.

D.   Notice to the **Insureds** may be given to the **Educational Institution** at the address shown in Item 1 of the Declarations.

E.   Notice to the **Insurer** of any **Claim** or **Wrongful Act** shall be given to the **Insurer** at the address set forth in Item 5A of the Declarations.

F.   All other notices to the **Insurer** under this **Policy** shall be given to the **Insurer** at the address set forth in Item 5B of the Declarations.

G.   Notice given as described above shall be deemed to be received and effective upon actual receipt thereof by the addressee, or one day following the date such notice is sent, whichever is earlier.

## XI.  PRESUMPTIVE INDEMNIFICATION

A.   The **Educational Institution** agrees to indemnify the **Insured Educators** to the fullest extent permitted by law, taking all steps necessary or advisable in furtherance thereof.  This includes the making in good faith of any application for court approval.

B.   The **Educational Institution** further agrees to advance **Defense Costs** actually and reasonably incurred by any **Insured Educator** in defending any threatened, pending or contemplated action, suit or proceeding prior to a final disposition of any such action, suit or proceeding.

C.   The **Educational Institution** shall not require any determination or adjudication, interim or final, of the entitlement of the **Insured Educator** to indemnification, where permitted by law to do so.

D.   The financial ability of any **Insured Educator** to make repayment shall not be a prerequisite to the making of such an advance, and the right to receive advancement of **Claims Expenses** herein is a contractual right.  The agreements contained in this paragraph are binding upon the **Educational Institution** and enforceable by the **Insurer** or the **Insured Educators**.

E.   Notwithstanding anything in this section to the contrary, the **Educational Institution's** indemnification obligations under this section shall not apply in the event the **Educational Institution** is neither permitted nor required to grant such indemnification either because of the appointment by any state or federal official, agency or court of any receiver, conservator, liquidator, trustee, rehabilitator or similar official to take control of, supervise, manage or liquidate the **Educational Institution**, or because of the **Educational Institution** becoming a debtor-in-possession.

## XII.  OTHER INSURANCE

If any **Damages** or **Claims Expenses** covered under this **Policy** are covered under any other valid and collectible insurance, then this **Policy** shall cover such **Damages** or **Claims Expenses**, subject to its terms and conditions, only to the extent that the amount of such **Damages** or **Claims Expenses** are in excess of the amount of such other insurance, whether such other insurance is stated to be primary, contributory, excess, contingent or otherwise, unless such other insurance is written only as specific excess insurance over the Limits of Liability provided by this **Policy**.

## XIII.  REPRESENTATIONS

A.   The **Insureds** represent and acknowledge that the statements and information contained in the **Application** are true and accurate and:

1.   are the basis of this **Policy** and are to be considered as incorporated into and constituting a part of this **Policy**; and

2.   shall be deemed material to the acceptance of this risk or the hazard assumed by the **Insurer** under this **Policy**.

B.   It is understood and agreed that this **Policy** is issued in reliance upon the truth and accuracy of such representations.

C.   In the event the **Application**, including materials submitted or required to be submitted therewith, contains any misrepresentation or omission made with the intent to deceive or which materially affects either the acceptance of the risk or the hazard assumed by the **Insurer** under this **Policy**, this **Policy** shall be void ab initio as to:

1. any **Insured Educator** who knew the facts misrepresented or omitted, whether or not such **Insured Educator** knew of the **Application** or this **Policy**; and

2. the **Educational Institution**.  For purposes of this subsection C, the knowledge of any **Insured Educator** shall not be imputed to any other **Insured Educator**.

XIV.  TERMINATION OF THE **POLICY**

A.  This **Policy** shall terminate at the earliest of the following times:

1. the effective date of termination specified in a prior written notice by the **Educational Institution** to the **Insurer**;

2. 60 days after receipt by the **Educational Institution** of a written notice of termination from the **Insurer**;

3. 10 days after receipt by the **Educational Institution** of a written notice of termination from the **Insurer** for failure to pay a premium when due, unless the premium is paid within such 10 day period;

4. upon expiration of the **Policy Period** as set forth in Item 2 of the Declarations; or

5. at such other time as may be agreed upon by the **Insurer** and the **Educational Institution**.

B.  If the **Policy** is terminated by the **Educational Institution**, the **Insurer** shall refund the unearned premium computed at the customary short rate.

C.  If the **Policy** is terminated by the **Insurer**, the **Insurer** shall refund the unearned premium computed *pro rata*.

D.  Payment or tender of any unearned premium by the **Insurer** shall not be a condition precedent to the effectiveness of such termination, but such payment shall be made as soon as practicable.

XV.  TERRITORY AND VALUATION

A.  All premiums, limits, retentions, **Damages**, **Claims Expenses** and other amounts under this **Policy** are expressed and payable in the currency of the United States of America.

B.  If judgment is rendered, settlement is denominated or another element of **Damages** and **Claims Expenses** under this **Policy** is stated in a currency other than United States of America dollars, payment under this **Policy** shall be made in United States dollars at the applicable rate of exchange as published in *The Wall Street Journal* as of the date the final judgment is reached, the amount of the settlement is agreed upon or the other element of **Damages** or **Claims Expenses** is due, respectively or if not published on such date, the next date of publication of *The Wall Street Journal*.

C.  Coverage under this **Policy** shall extend to **Wrongful Acts** taking place or **Claims** made or **Damages** or **Claims Expenses** sustained anywhere in the world, provided the **Claim** is made within the jurisdiction of and subject to the laws of the United States of America, Canada or their respective territories or possessions.

XVI.  SUBROGATION

A.  In the event of any payment under this **Policy**, the **Insurer** shall be subrogated to the extent of such payment to all the rights of recovery of the **Insureds**.

B.  The **Insureds** shall execute all papers required and shall do everything necessary to secure and preserve such rights.  This includes the execution of such documents necessary to enable the **Insurer** effectively to bring suit or otherwise pursue subrogation rights in the name of the **Insureds**.

XVII.  ACTION AGAINST THE **INSURER** AND BANKRUPTCY

    A.  No action shall lie against the **Insurer**, except as set forth below in Section XX, Alternative Dispute Resolution.

    B.  No person or organization shall have any right under this **Policy** to join the **Insurer** as a party to any action against any **Insured** to determine the liability of the **Insured** nor shall the **Insurer** be impleaded by any **Insured** or its legal representatives.

    C.  Bankruptcy or insolvency of any **Insured** or of the estate of any **Insured** shall not relieve the **Insurer** of its obligations nor deprive the **Insurer** of its rights or defenses under this **Policy**.

XVIII.  AUTHORIZATION CLAUSE

By the acceptance of this **Policy**, the **Educational Institution** agrees to act on behalf of all **Insureds** with respect to:

    A.  the giving and receiving of notice of **Claim**,

    B.  the giving or receiving of notice of termination or non renewal,

    C.  the payment of premiums and the receiving of any premiums that may become due under this **Policy**,

    D.  the agreement to and acceptance of endorsements,

    E.  consenting to any settlement,

    F.  exercising the right to the **Extended Reporting Period**, and

    G.  the giving or receiving of any other notice provided for in this **Policy**.

All **Insureds** agree that the **Educational Institution** shall so act on their behalf.

XIX.  ALTERATION, ASSIGNMENT AND HEADINGS

    A.  Notice to any agent or knowledge possessed by any agent or by any other person:

        1.  Shall not affect a waiver or a change in any part of this **Policy**.

        2.  Shall not prevent the **Insurer** from asserting any right under the terms of this **Policy**.

    B.  No change in, modification of, or assignment of interest under this **Policy** shall be effective except when made by a written endorsement to this **Policy.**   Such written endorsement must be signed by an authorized representative of the **Insurer**.

    C.  The titles and headings to the various parts, sections, subsections and endorsements of the **Policy** are included solely for ease of reference.  They do not in any way limit, expand or otherwise affect the provisions of such parts, sections, subsections or endorsements.

XX.  ALTERNATIVE DISPUTE RESOLUTION

    A.  The **Insureds** and the **Insurer** shall submit any dispute or controversy arising out of or relating to this **Policy** or the breach, termination or invalidity thereof to the alternative dispute resolution ("ADR") process set forth in this section.

    B.  Either an **Insured** or the **Insurer** may elect the type of ADR process discussed below.  The **Insured** shall have the right to reject the choice by the **Insurer** of the type of ADR process at any time prior to its

commencement.  In this circumstance, the **Insured** shall have the right to select the type of ADR process to be used.

C.  There shall be two choices of ADR process:

1.  non-binding mediation administered by any mediation facility to which the **Insurer** and the **Insured** mutually agree.  The **Insured** and the **Insurer** shall try in good faith to settle the dispute by mediation in accordance with the then-prevailing commercial mediation rules of the mediation facility; or

2.  arbitration submitted to any arbitration facility to which the **Insured** and the **Insurer** mutually agree. Such arbitration panel shall consist of three disinterested individuals.

D.  In either mediation or arbitration the mediator or arbitrators shall have knowledge of the legal, corporate management, or insurance issues relevant to the matters in dispute; and

E.  In the event of mediation, either party shall have the right to commence a judicial proceeding.  No such judicial proceeding shall be commenced until at least 60 days after the date the mediation has been concluded or terminated.

F.  In the event of arbitration, the decision of the arbitrators shall be final and binding and provided to both parties, and the award of the arbitrators shall not include attorneys' fees or other costs.

G.  In all events, each party shall share equally the expenses of the ADR process.

H.  Either ADR process may be commenced in:

1.  New York, New York or

2.  in the state indicated in Item 1 of the Declarations as the principal address of the **Educational Institution**.

I.  The **Educational Institution** shall act on behalf of each and every **Insured** in connection with any ADR process under this section.

XXI.  INTERPRETATION

The terms and conditions of this **Policy** shall be interpreted and construed in an evenhanded fashion as between the parties.  If the language of this **Policy** is deemed to be ambiguous or otherwise unclear, the issue shall be resolved in the manner most consistent with the relevant terms and conditions:

A.  without regard to authorship of the language,

B.  without any presumption or arbitrary interpretation or construction in favor of either the **Insureds** or the **Insurer**, and

C.  without reference to the reasonable expectations of either the **Insureds** or the **Insurer**.

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

| Named Insured | | | Endorsement Number |
|---|---|---|---|
| **Pine Bluff School District** | | | **1** |
| Policy Symbol | Policy Number | Policy Period | Effective Date of Endorsement |
| **EON** | **G23670471 003** | **04/02/2015 to 02/01/2016** | **04/02/2015** |
| Issued By (Name of Insurance Company) | | | |
| **ACE American Insurance Company** | | | |

THE ONLY SIGNATURES APPLICABLE TO THIS POLICY ARE THOSE REPRESENTING THE COMPANY NAMED ON THE FIRST PAGE OF THE DECLARATIONS.

By signing and delivering the policy to you, we state that it is a valid contract.

**INDEMNITY INSURANCE COMPANY OF NORTH AMERICA** (A stock company)
**BANKERS STANDARD FIRE AND MARINE COMPANY** (A stock company)
**BANKERS STANDARD INSURANCE COMPANY** (A stock company)
**ACE AMERICAN INSURANCE COMPANY** (A stock company)
**ACE PROPERTY AND CASUALTY INSURANCE COMPANY** (A stock company)
**INSURANCE COMPANY OF NORTH AMERICA** (A stock company)
**PACIFIC EMPLOYERS INSURANCE COMPANY** (A stock company)
**ACE FIRE UNDERWRITERS INSURANCE COMPANY** (A stock company)
**WESTCHESTER FIRE INSURANCE COMPANY** (A stock company)

436 Walnut Street, P.O. Box 1000, Philadelphia, Pennsylvania 19106-3703

REBECCA L. COLLINS, Secretary

JOHN J. LUPICA, President

_____
Authorized Representative

CC-1K11h (03/14)

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

| Named Insured<br>**Pine Bluff School District** | | | Endorsement Number<br>**2** |
|---|---|---|---|
| Policy Symbol<br>**EON** | Policy Number<br>**G23670471 003** | Policy Period<br>**04/02/2015 to 02/01/2016** | Effective Date of Endorsement<br>**04/02/2015** |
| Issued By (Name of Insurance Company)<br>**ACE American Insurance Company** | | | |

## Trade Or Economic Sanctions Endorsement

This insurance does not apply to the extent that trade or economic sanctions or other laws or regulations prohibit us from providing insurance, including, but not limited to, the payment of claims.


All other terms and conditions of the **Policy** remain unchanged.


_____
Authorized Agent

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

| Named Insured | | | Endorsement Number |
|---|---|---|---|
| **Pine Bluff School District** | | | **3** |
| Policy Symbol | Policy Number | Policy Period | Effective Date of Endorsement |
| **EON** | **G23670471 003** | **04/02/2015 to 02/01/2016** | **04/02/2015** |
| Issued By (Name of Insurance Company) | | | |
| **ACE American Insurance Company** | | | |

# Notice Amended

It is agreed that the Notice section of the **Policy** is amended by adding the following:

Notwithstanding anything in this section to the contrary, written **Claim** notices may also be transmitted via email to the following address:

ACEClaimsFirstNotice@acegroup.com

All other terms and conditions of this **Policy** remain unchanged.

_____
Authorized Representative

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

| Named Insured | | | Endorsement Number |
|---|---|---|---|
| **Pine Bluff School District** | | | **4** |
| Policy Symbol | Policy Number | Policy Period | Effective Date of Endorsement |
| **EON** | **G23670471 003** | **04/02/2015 to 02/01/2016** | **04/02/2015** |
| Issued By (Name of Insurance Company) | | | |
| **ACE American Insurance Company** | | | |

## Amendatory Endorsement – Arkansas

IF THERE IS ANY CONFLICT BETWEEN THE **POLICY**, OTHER ENDORSEMENTS TO THE **POLICY** AND THIS ENDORSEMENT, THE TERMS PROVIDING THE BROADEST COVERAGE INSURABLE UNDER APPLICABLE LAW SHALL PREVAIL.

It is agreed that:

1.  Section V, **Crisis Management** Coverage Provisions, subsection C is amended by deleting the phrase "thirty (30) days" and inserting the phrase "sixty (60) days".

2.  Section VII, **Extended Reporting Periods**, is deleted in its entirety and the following is inserted:

    VII. **EXTENDED REPORTING PERIODS**

    If the **Insurer** or the **Educational Institution** terminates or does not renew this **Policy**, the **Educational Institution** shall have the right to a continuation of the coverage granted by this **Policy** for the Optional **Extended Reporting Period**, if elected, and the Automatic **Extended Reporting Period** as follows:

    A.  Automatic **Extended Reporting Period**

        The **Educational Institution** shall have continued coverage granted by this **Policy** for a period of 60 days following the effective date of such termination or nonrenewal, but only for **Claims** first made during such 60 days and arising from **Wrongful Acts** taking place prior to the effective date of such termination or nonrenewal.

    B.  Optional **Extended Reporting Period**

        1.  The **Educational Institution** shall have the right, upon payment of the additional premium set forth in Item 7A of the Declarations, to an Optional **Extended Reporting Period**, for the period set forth in Item 7B of the Declarations following the expiration date of the Automatic **Extended Reporting Period**.  Such coverage is only for **Claims** first made during such Optional **Extended Reporting Period** and arising from **Wrongful Acts** taking place prior to the effective date of termination or nonrenewal.

        2.  This right to continue coverage shall lapse unless written notice of such election is given by the **Educational Institution** to the **Insurer**, and the **Insurer** receives payment of the additional premium within 60 days following the effective date of termination or nonrenewal.

        3.  The Optional **Extended Reporting Period** is not cancelable and the entire premium for the Optional **Extended Reporting Period** shall be deemed fully earned and non-refundable upon payment.

    C.  The Limit of Liability applicable to the Automatic **Extended Reporting Period** shall be part of and not in addition to the Limit of Liability shown in Item 3 of the Declarations for the immediately preceding **Policy Period**.  The Automatic **Extended Reporting Period** shall not increase or reinstate the Limit of Liability, which shall be the maximum liability of the **Insurer** for the **Policy Period** and the Automatic **Extended Reporting Period**, combined.

    D.  The Limit of Liability applicable to the Optional **Extended Reporting Period**, if elected, shall be the greater of the unexhausted Limit of Liability of the immediately preceding **Policy Period** or 50% of the full amount of the Limit of Liability set forth in Item 3 of the Declarations at the inception of the immediately preceding **Policy Period** (hereinafter referred to as "**Optional Extended Reporting Period Limit of Liability**").  The **Optional Extended Reporting Period Limit of Liability** shall only

be available to pay **Damages** for **Claims** first made and reported during the Optional **Extended Reporting Period** and arising from **Wrongful Acts** taking place prior to the effective date of termination or nonrenewal (hereinafter referred to as "**Optional Extended Reporting Period Damages**").   The maximum liability for all **Optional Extended Reporting Period Damages** is the **Optional Extended Reporting Period Limit of Liability**.

E.   If any **Claim** is covered, in whole or in part, under both the Automatic **Extended Reporting Period** and the Optional **Extended Reporting Period**, if elected, only the **Optional Extended Reporting Period Limit of Liability** shall apply.

F.   A change in **Policy** terms, conditions, exclusions and/or premiums shall not be considered a nonrenewal for purposes of triggering the rights to the Automatic or Optional **Extended Reporting Period**.

3.   Section X, Notice, subsection A is amended by deleting the phrase "30 days" and inserting the phrase "60 days".

4.   Section XIV, Termination of the **Policy**, is amended by adding the following:

- If this **Policy** has been in effect for more than 60 days, or is a renewal of a **Policy** the **Insurer** issued, the **Insurer** may terminate this **Policy** only for one or more of the following reasons:

    1.   failure to pay a premium when due;

    2.   fraud or material misrepresentation made by or with the knowledge of the **Educational Institution** in obtaining the **Policy**, continuing the **Policy**, or in presenting a **Claim** under the **Policy**;

    3.   a material change in the risk that substantially increases any hazard insured against after **Policy** issuance;

    4.   violation of any local fire, health, safety, building, or construction regulation or ordinances with respect to any insured property or the occupancy of the property that substantially increases any hazard insured against under the **Policy**;

    5.   nonpayment of membership dues in those cases in which the **Insurer** issuing the **Policy** require payment as a condition of the issuance and maintenance of the **Policy**; or

    6.   a material violation of a material provision of the **Policy**.

- Notice of termination from the **Insurer** will state the effective date of termination and the reason(s) for termination, and will be mailed by certified mail to the **Educational Institution**, and by first-class mail to the agent or broker of record, and to any lienholder or loss payee listed in the **Policy**, at the last mailing addresses known to the **Insurer**.  Proof of mailing will be sufficient proof of notice.

5.   Section XVI, Subrogation, is amended by adding the following:

The **Insurer** will be entitled to recovery only after the **Insured** has been fully compensated for **Damages**, **Claims Expenses** or **Crisis Management Expenses** sustained under this **Policy**, including expenses incurred in obtaining full compensation for such **Damages**, **Claims Expenses** or **Crisis Management Expenses**.

6.   Section XX, Alternative Dispute Resolution, is amended as follows:

a.   Subsection A is deleted in its entirety and the following is inserted:

A.   The **Insureds** and the **Insurer** may, upon mutual agreement, submit any dispute or controversy arising out of or relating to this **Policy** or the breach, termination or invalidity thereof to the alternative dispute resolution ("ADR") process set forth in this section.

b.   Subsection F is amended by deleting the phrase "the decision of the arbitrators shall be final and binding" and inserting the phrase "the decision of the arbitrators shall be non-binding".

7.    The following section is added to the **Policy**:

- NONRENEWAL

  If the **Insurer** elects not to renew this **Policy**, it will mail written notice of nonrenewal by certified mail to the **Educational Institution**, and by first-class mail to the agent or broker of record, at the last mailing addresses known to the **Insurer**.  Notice of nonrenewal will be mailed at least 60 days before the end of the **Policy Period**.  Proof of mailing will be sufficient proof of notice.

All other terms and conditions of this **Policy** remain unchanged.

`

Authorized Representative

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

| Named Insured **Pine Bluff School District** | | | Endorsement Number **5** |
|---|---|---|---|
| Policy Symbol **EON** | Policy Number **G23670471 003** | Policy Period **04/02/2015 to 02/01/2016** | Effective Date of Endorsement **04/02/2015** |
| Issued By (Name of Insurance Company) **ACE American Insurance Company** | | | |

## Insured Choice of Defense Counsel Endorsement

It is agreed that Section II, Defense, subsection C, is deleted in its entirety and replaced with the following:

C.   The **Insured** shall have the right to appoint counsel subject to the prior written approval of the **Insurer** (which written approval shall not be unreasonably withheld); however, the **Insurer** shall make such investigation and defense of a **Claim** as it deems necessary."

All other terms and conditions of this **Policy** remain unchanged.

_____
Authorized Representative

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

| Named Insured<br>**Pine Bluff School District** | | | Endorsement Number<br>**6** |
|---|---|---|---|
| Policy Symbol<br>**EON** | Policy Number<br>**G23670471 003** | Policy Period<br>**04/02/2015 to 02/01/2016** | Effective Date of Endorsement<br>**04/02/2015** |
| Issued By (Name of Insurance Company)<br>**ACE American Insurance Company** | | | |

### Limited Corporal Punishment Extension (Claims Expense Carveback – Final Adjudication; Authoritative Decision)

It is agreed that Section IV, Exclusions, subsection C, is amended at numbered paragraph 1 by adding the following:

However, this exclusion shall not apply to **Claims Expenses** in a **Claim** for alleged corporal punishment if:

1. such **Claim** results in a final adjudication or authoritative decision in an administrative or regulatory proceeding against all such **Insureds** that no **Insured** is liable for or committed such alleged corporal punishment; and

2. such **Insured** was indemnified for such **Claims Expenses** by the **Named Insured**.

The maximum limit of the **Insurer's** liability for all **Claims Expenses** in the aggregate arising from all **Claims** for any actual or alleged corporal punishment shall be $100,000.  This sub-limit of liability shall be part of and not in addition to the aggregate Limit of Liability otherwise stated in Item 3 of the Declarations, and will in no way serve to increase the **Insurer's** Limit of Liability as therein provided.  If different parts of a single **Claim** are subject to different applicable Limits, the applicable Limits will be applied separately to each part of such **Claim Expenses**.

All other terms and conditions of this **Policy** remain unchanged.

_____
Authorized Representative

© 2015

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

| Named Insured | | | Endorsement Number |
|---|---|---|---|
| **Pine Bluff School District** | | | **7** |
| Policy Symbol | Policy Number | Policy Period | Effective Date of Endorsement |
| **EON** | **G23670471 003** | **04/02/2015 to 02/01/2016** | **04/02/2015** |
| Issued By (Name of Insurance Company) | | | |
| **ACE American Insurance Company** | | | |

### Sexual Molestation Endorsement
### (Claims Expenses Carveback – Final Adjudication; Authoritative Decision)

It is agreed that Section IV, Exclusions, subsection Q is amended by adding the following:

However, this exclusion shall not apply to **Claims Expenses** in a **Claim** for alleged **Sexual Abuse and Molestation** if:

3.  such **Claim** results in a final adjudication or authoritative decision in an administrative or regulatory proceeding against all such **Insureds** that no **Insured** is liable for or committed such **Sexual Abuse and Molestation**; and

4.  such **Insured** was indemnified for such **Claims Expenses** by the **Named Insured**.

The maximum limit of the **Insurer's** liability for all **Claims Expenses** in the aggregate arising from all **Claims** for **Sexual Abuse and Molestation** shall be $25,000 ("**Sexual Abuse and Molestation Claims Expenses** Sub-Limit of Liability").  This **Sexual Abuse and Molestation Claims Expenses** Sub-Limit of Liability shall be part of and not in addition to the aggregate Limit of Liability otherwise stated in Item 3 of the Declarations, and will in no way serve to increase the **Insurer's** Limit of Liability as therein provided.  If different parts of a single **Claim** are subject to different applicable Limits, the applicable Limits will be applied separately to each part of such **Claim Expenses**.

All other terms and conditions of this **Policy** remain unchanged.

_____
Authorized Representative

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

| Named Insured | | | Endorsement Number |
|---|---|---|---|
| **Pine Bluff School District** | | | **8** |
| Policy Symbol | Policy Number | Policy Period | Effective Date of Endorsement |
| **EON** | **G23670471 003** | **04/02/2015 to 02/01/2016** | **04/02/2015** |
| Issued By (Name of Insurance Company) | | | |
| **ACE American Insurance Company** | | | |

### Bullying Exclusion

It is agreed that:

1.  Section III, Definitions, is amended by adding the following additional exclusion:

    - **Bullying** means repeated and inappropriate direct or indirect verbal, emotional or physical behavior conducted by one or more persons against another person or persons with the intent to disturb, cause distress or fear, or undermine such person's or persons' dignity.

2.  Section IV, Exclusions, is amended by adding the following additional exclusion:

    - alleging, based upon, arising out of or attributable to any **Bullying** or any **Mental Distress**, **Bodily Injury** or **Property Damage** resulting from or related to **Bullying**, including, without limitation, any allegation that an **Insured** negligently employed, investigated, supervised or retained a person, or that an alleged practice, custom or policy gave rise to, caused, or resulted in such behavior or any violation of a civil right.  Solely with respect to this exclusion, **Mental Distress** need not arise from and be accompanied by objectively identifiable and demonstrable injury to the claimant's body, sickness, disease or death.

    However, this exclusion shall not apply to **Claims Expenses** in a **Claim** for alleged **Bullying** if:

    5.  such **Claim** results in a final adjudication or authoritative decision in an administrative or regulatory proceeding against all such **Insureds** that no **Insured** is liable for or committed such alleged **Bullying**; and

    6.  such **Insured** was indemnified for such **Claims Expenses** by the **Named Insured**.

    The **Insurer's** maximum liability for all **Claims Expenses** in the aggregate arising from all **Claims** for any actual or alleged **Bullying** shall be $50,000 ("**Bullying Claims Expenses** Sub-Limit of Liability").  This **Bullying Claims Expenses** Sub-Limit of Liability shall be part of and not in addition to the aggregate Limit of Liability otherwise stated in Item 3 of the Declarations, and will in no way serve to increase the **Insurer's** Limit of Liability as therein provided.  If different parts of a single **Claim** are subject to different applicable Limits, the applicable Limits will be applied separately to each part of such **Claim Expenses**.

All other terms and conditions of this **Policy** remain unchanged.

_____
Authorized Representative

# Limited General Liability Coverage Endorsement

| Named Insured | | | Endorsement Number |
|---|---|---|---|
| **Pine Bluff School District** | | | **9** |
| Policy Symbol | Policy Number | Policy Period | Effective Date of Endorsement |
| **EON** | **G23670471 003** | **04/02/2015 to 02/01/2016** | **04/02/2015** |
| Issued By (Name of Insurance Company) | | | |
| **ACE American Insurance Company** | | | |

**THE LIMITS OF INSURANCE AVAILABLE TO PAY INSURED DAMAGES SHALL BE REDUCED BY AMOUNTS INCURRED FOR CLAIMS EXPENSES.  AMOUNTS INCURRED FOR DAMAGES AND CLAIMS EXPENSES SHALL ALSO BE APPLIED AGAINST THE RETAINED LIMIT AMOUNTS.**

It is agreed that the **Policy** is amended as follows:

1. Solely with respect to the coverage added pursuant to this Endorsement, Section IV, Exclusions, is amended as follows:
    A. Subsection C, paragraphs 1 and 2, are deleted in their entirety to the extent limited General Liability Coverageis provided by virtue of this Endorsement;
    B. Subsection K, paragraph 1, is deleted in its entirety to the extent limited General Liability Coverageis provided by virtue of this Endorsement.

2. In consideration of the payment of the premium, in reliance upon the **Application**, and subject to the Declarations and the terms and conditions of this **Policy**, the **Insureds** and the **Insurer** agree that the following limited General Liability Coverage is provided:

**General Liability Coverage**

**SCHEDULE**

**Limits of Insurance**

| | |
|---|---|
| General Liability Each Occurrence Limit: | $1,000,000 |
| General Liability Aggregate Limit: | $1,000,000 |
| General Liability Retention | $2,500 |

A. Insuring Agreement

The **Insurer** will pay on behalf of the **Insured** those **Damages** and **Claim Expenses** in excess of the **Retention** for which the **Insured** becomes legally obligated to pay because of a **Claim** first arising out of an **Occurrence** happening during the **Policy Period** and taking place or sustained outside the borders of the State of Arkansas for **Bodily Injury**, **Personal Injury**, **Advertising Injury**, or **Property Damage**.

No other obligation to pay any additional sums, perform acts or provide services is covered.

B. Retention

The **Insurer's** liability under this **Policy** applies only to **Damages** and **Claim Expenses** which are in excess of the **Retention** applicable to this Endorsement and specified in schedule above.  The **Retention** must be borne by the **Insured** as an uninsured amount and at its own risk.  This will be true regardless of:

1. The number of persons and organizations who are **Insureds** under this **Policy**;
2. The number of **Claims** made against any or all **Insureds**; or
3. The number of persons or organizations making **Claims**.

C. Limits of Insurance

© 2015

1.  Subject to subsection 2 below, the **Insurer's** maximum liability for all **Damages** and **Claim Expenses** resulting from each **Claim** under this Endorsement will not exceed the General Liability Each Occurrence Limit of Insurance specified in schedule above. This will be true regardless of:

    a.  The number of persons and organizations who are **Insureds** under this **Policy**;
    b.  The number of **Claims** made against any or all **Insureds**; or
    c.  The number of persons or organizations making **Claims**.

2.  The **Insurer's** maximum liability for all **Damages** and **Claim Expenses** resulting from all **Claims** under this Endorsement will not exceed the General Liability Aggregate Limit of Insurance specified in the schedule above, which is the most the **Insurer** will pay for **Damages** and **Claim Expenses** under this General Liability Coverage Endorsement during the **Policy Period**.

3.  **Claim Expenses** will be part of and not in addition to the Aggregate Limit of Insurance stated in schedule above, and shall reduce such Aggregate Limit of Insurance. If the Aggregate Limit of Insurance is exhausted by payment of **Damages** and **Claim Expenses**, the obligations of the **Insurer** under this **Policy** shall be completely fulfilled and extinguished.   The **Insurer** will pay for **Damages** and **Claim Expenses** only as they become due and payable by the **Insureds**, without consideration of other future payment obligations.

4.  All **Claims** arising out of the same **Occurrence** and all interrelated **Occurrences** shall be deemed to be one **Claim**, and such **Claim** shall be deemed to first occur on the date the earliest of such **Claims** first occurs, regardless of whether such date is before or during the **Policy Period**.  All **Damages** and all **Claims Expenses** resulting from a single **Claim** shall be deemed a single **Damage** and **Claims Expense.**

5.  Notwithstanding anything in this **Policy** or the foregoing Endorsement to the contrary, in the event any **Claim** is covered, in whole or in part, by the ACE Scholastic Advantage[SM] Educators Legal Liability Insuring Agreements and this limited General Liability Coverage Endorsement, the maximum Limit of Liability of the **Insurer** with respect to coverage for such **Claim** under both policies combined shall be the lesser of $1,000,000, or the total remaining aggregate limit of liability of both policies combined as reduced by payments of other **Claims**.

D.  Exclusions

The following exclusions apply to this General Liability Coverage Endorsement in addition to the exclusions in section of this **Policy**.

The insurance under this General Liability Coverage Endorsement does not apply to:

1.  Any **Bodily Injury**, **Property Damage**, **Personal Injury**, or **Advertising Injury** for which coverage is provided under any other section of this **Policy**.

2.  **Bodily Injury** or **Property Damage** either expected or intended from the standpoint of an **Insured**.  This exclusion does not apply to **Bodily Injury** resulting from the use of reasonable force to protect persons or property.

3.  **Advertising Injury** or **Personal Injury** caused by or at the direction of an **Insured** if the **Insured** knew or reasonably should have known that the act would violate the rights of another and would inflict **Advertising Injury** or **Personal Injury**.

4.  An **Insured**'s obligation to pay by reason of the assumption of liability in a contract or agreement.  However, this exclusion does not apply to liability for **Damages**:

    a.  That an **Insured** would have in the absence of the contract or agreement; or
    b.  Assumed in a contract or agreement that is an **Insured Contract** provided the **Bodily Injury** or **Property Damage** occurs subsequent to the effective date of the **Insured Contract** and such **Insured Contract** was in effect at the inception of the **Policy Period** or becomes effective during the **Policy Period**.

5. **Bodily Injury** to:

   a.  An **Employee** of an **Insured** arising out of and in the course of:

      i.  Employment by an **Insured**; or

      ii.  Performing duties related to the conduct of an **Insured**'s business; or

   b.  The spouse, child, parent, brother or sister of that **Employee** as a consequence of a. above.

This exclusion applies:

   a.  Whether an **Insured** may be liable as an employer or in any other capacity; and

   b.  To any obligation to share damages with or repay someone else who must pay damages because of the injury.

However, this exclusion does not apply to liability assumed by an **Insured** under an **Insured Contract**.

6. Any liability arising out of:

   a.  Any **Employment Practices Violation**;

   b.  The **Administration** of **Your Employee Benefit Program**;

   c.  Any form of discrimination; or

   d.  Any violation of civil rights.

7. Any **Property Damage** to:

   a.  Property owned, occupied or leased by an **Insured** or purchased by an **Insured** under an installment sales contract or property on consignment to an **Insured**;

   b.  Property loaned to an **Insured**;

   c.  **Personal Property** in the care, custody, or control of an **Insured**;

   d.  Premises **You** sell, give away or abandon, if the **Property Damage** arises out of any part of those premises;

   e.  That particular part of real property on which **You** or any of **Your** contractors or subcontractors working directly or indirectly on **Your** behalf are performing operations, if the **Property Damage** arises out of those operations; or

   f.  That particular part of any property that must be restored, repaired or replaced because **Your Work** was incorrectly performed on it.

8. Any **Property Damage** to:

   a.  **Your Work** arising out of the work or out of materials, parts or equipment that is furnished with such work;

   b.  **Your Product** or arising out of **Your Product** or any part of it; or

   c.  **Impaired Property** or property not physically injured, arising out of a defect, deficiency, inadequacy or dangerous condition in **Your Product** or **Your Work**, or a delay or failure by **You** or anyone acting on **Your** behalf to perform a contract or agreement in accordance with its terms.

However, this exclusion does not apply to the loss of use or use of property of another arising out of unexpected and unintended physical injury to **Your Product** or **Your Work** after it has been put to its intended use.

9. **Advertising Injury** resulting from:

   a.  Failure of performance of contract, but this exclusion does not apply to **Claims** for misappropriation of ideas based upon alleged breach of an implied contract;

   b.  Incorrect description of any article or commodity;

   c.  Any mistake in advertised price; or

   d.  Failure of goods, products or services to conform with advertised quality or performance.

10. **Personal Injury** arising out of:

    a.  Oral or written publication of material, if done by or at the direction of an **Insured** with knowledge of its falsity;

    b.  Oral or written publication of material whose first publication took place before the beginning of the **Policy Period**.

11. **Bodily Injury** or **Property Damage** arising out of:

    a.  The ownership, entrustment, maintenance, operation, use, loading or unloading of **Automobiles**; or while **Automobiles** are being transported; or

    b.  The transportation of **Mobile Equipment** by an **Automobile** owned or operated by or rented or loaned to any **Insured**.

This exclusion applies even if the **Claims** against any **Insured** allege negligence or other wrongdoing in the supervision, hiring, employment, training, or monitoring of others by that **Insured**.

This exclusion does not apply to liability for **Bodily Injury** or **Property Damage** arising from **Automobiles** not owned, leased, rented, or operated by an **Insured**.

12. **Bodily Injury** or **Property Damage** arising out of any **Corporal Punishment** administered by or at the direction of any **Insured**.

13. Any liability arising out of the operation of the principles of eminent domain, condemnation, inverse condemnation, adverse possession, temporary or permanent taking.

14. Any **Claim** alleging, based upon, arising out of, or attributable to the violation of any price fixing, restraint of trade, monopolization, unfair trade practices or other violation of the Federal Trade Commission Act, the Sherman Anti-Trust Act, the Clayton Act or any other statutory provision regulating antitrust, monopoly, price fixing, price discrimination, predatory pricing or restraint of trade activities, and any amendments thereto, or any rules or regulations promulgated thereunder, or any similar provision of any federal, state, or local statutory law or common law anywhere in the world.

15. Any **Insured's** activities in an investing or fiduciary capacity including but not limited to, any **Employee Benefit Programs**, including any pension, savings or profit sharing plan or to any amounts or benefits due under any fringe benefit program, retirement program, incentive program, perquisite program, entitlement program or other benefits owed to any **Employee**, the **Administration** of any self-insurance fund or any obligations under the Employees' Retirement Income Security Act (ERISA) of 1974 or any amendments thereto or similar subsequent federal acts or any similar provisions of statutory or common law.

16. Any **Damages** for any costs, civil fines, penalties or expenses levied or imposed against an **Insured** arising from any complaint or enforcement action from any federal, state, or local government regulatory agency.

    a.  the rendering or failure to render:

        Medical, surgical, dental, x-ray, or nursing service or treatment or the furnishing of food or beverages in connection therewith; or

        Any service or treatment related or conducive to health or of a professional nature;

    b.  the furnishing or dispensing of drugs, medical, dental, or surgical supplies or appliances;

    c.  any service by a person as a member of a formal accreditation or similar professional board or committee, or as a person charged with the duty of executing directives of any such board or committee; or

    d.  any blood product handled or distributed by an **Insured** or any service related thereto, including any allegation of reliance upon any representation or warranty made at any time with respect to blood products.

However, with respect to this General Liability Coverage Endorsement, this exclusion does not apply to **Incidental Medical Malpractice**.

17. The rendering or failure to render any **Professional Services**.

18. Any liability directly or indirectly arising out of law enforcement activities.  For the purpose of this exclusion, law enforcement activities means any of the official activities or operations of **Your** police force or any other public safety organization, including their agents or employees, which enforces the law and protects persons or property.

19. Any premium, assessment, penalty, fine, benefit or other obligation imposed by any Workers' Compensation Law, unemployment compensation or disability benefits law, the Jones Act, General Maritime Law, the Federal Employers' Liability Act, Federal Employee Compensation Act, the Defense Base Act, U.S. Longshoremen's and Harbor Workers' Compensation Act, Federal Coal Mine Health and Safety Act, any federal occupational disease law; any amendments to such laws or under any similar law for which **You**, or any insurance company as **Your** insurer, may be held liable; or for which an **Insured** is a qualified self-insurer.

20. Any liability, whether direct or indirect, arising out of **Sexual Abuse** by an **Insured**.

21. Any liability for which any **Insured** may be held liable by reason of:

    a. Causing or contributing to the intoxication of any person;

    b. The furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or

    c. Any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages.

22. Any:

    a. Liability arising from the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of **Pollutants**; or

    b. Loss, cost or expense arising out of any:

        i. Request, demand or order that an **Insured** or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to or assess the effects of **Pollutants**; or

        ii. Any **Claim** by or on behalf of governmental authority or others for **Damages** because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of **Pollutants**.

With respect to this General Liability Coverage Endorsement, this exclusion does not apply to:

    1. **Bodily Injury** or **Property Damage** caused by heat, smoke or fumes from a Hostile Fire.  As used herein, Hostile Fire means a fire which becomes uncontrollable or breaks out from where it was intended to be;

    2. **Bodily Injury** if sustained within a building owned or occupied by, or rented or loaned to, any **Insured** and caused by smoke, fumes, vapor, or soot from equipment used to heat that building.

23. Any liability arising out of:

    a. Inhaling, ingesting or physical exposure to asbestos or goods or products containing asbestos;

    b. The use of asbestos in constructing or manufacturing of, or presence of asbestos in any good, product, or structure;

c. The manufacture, transportation, storage or disposal of asbestos or goods or products containing asbestos; or

d. Payment for investigation or defense of any loss, fine or penalty; or for any expense or **Claim**; related to a., b. or c. above.

24. Any loss, cost or expense arising out of, resulting from, caused by or contributed to by:

a. The toxic or pathological properties of lead, lead compounds or lead contained in any materials;

b. The abatement, mitigation, removal, or disposal of lead, lead compounds or lead contained in any materials;

c. Any supervision, instructions, recommendations, warnings or advice given or which should have been given in connection with a. and b. above; or

d. Any obligation to share **Damages**, remediation or other relief or compensation of any kind with, or to repay someone else who must pay such **Damages** in connection with a., b. or c. above.

25. Any liability arising out of the ownership, maintenance, loading or unloading, control, use or operations of any aircraft, airfields, runways, hangers, buildings, or other properties in connection with aviation activities.

This exclusion applies even if the **Claims** against any **Insured** allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that **Insured**.

However, with respect to this General Liability Coverage Endorsement this exclusion does not apply to liability for the premises of buildings or other properties to which the general public is admitted.

26. Any liability arising out of the ownership, maintenance, operation, use loading or unloading or entrustment to others of any watercraft owned or operated by an **Insured** or rented, loaded, or chartered by or on behalf of an **Insured**.

This exclusion applies even if the **Claims** against any **Insured** allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that **Insured**.

However, with respect to this General Liability Coverage Endorsement, this exclusion does not apply to:

a. Watercraft while ashore on premises an **Insured** owns or rents;

b. Watercraft not owned by an **Insured** that is less than 51 feet long and not being used to carry persons or property for a charge.

27. Any:
a. **Claim** by an **Insured** against any other **Insured**; and

b. Injury or **Damage** to the spouse, child, parent, brother and sister of the **Insured** as a consequence of a. above.

28. Any liability arising from the use of trampolines or other rebounding equipment.

29. Any liability, cost or expense arising out of, resulting from, or in any way related to, in whole or in part, the respiration, inspiration, inhalation or breathing in of dust or particulate matter.  Dust or particulate matter may include, but is not limited to: dust, particulate matter, inspirable dust, respirable dust, smoke, mist, dirt, fibers, grit, soot, salt, acids, bases, metals, aerosols, crystals, minerals, sand, silicates, or silica.

30. Any liability an **Insured** may have, directly or indirectly, occasioned by, happening through, or in consequence of:

    a.    War, including undeclared or civil war;

    b.    Warlike action by a military force including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents;

    c.    Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these; or

    d.    Confiscation or nationalization or requisition or destruction of or damage to property by or under the order of any government or public or local authority.

31. Any liability arising out of or allegedly arising out of exposure to or contact with electromagnetic field radiation.

32. Any:

    a.    Injury, **Damage**, expense, cost, loss, liability or legal obligation which would not have occurred, in whole or in part, but for the actual, alleged or threatened inhalation of, ingestion of, contact with, exposure to, existence of, or presence of, any **fungi** or bacteria on or within a building or structure, including its contents, regardless of whether any other cause, event, material or product contributed concurrently or in any sequence to such injury or **Damage**; or

    b.    Loss, cost or expenses arising out of abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to, or assessing the effect of **fungi** or bacteria, by any **Insured** or by any other person or entity.

This exclusion does not apply to any **fungi** or bacteria that are, are on, or are contained in, a good or product intended for bodily consumption.

33. Any liability for **Personal Injury** or **Advertising Injury** arising out of **Your** advertising activities in electronic chat rooms or bulletin boards.

34. Any liability:

With respect to which an **Insured** under this **Policy** is also an **Insured** under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters, Nuclear Insurance Association of Canada, or any of their successors, or would be an **Insured** under any such policy but for its termination upon exhaustion of its limit of liability; or

Resulting from the **Hazardous Properties** of **Nuclear Material** and with respect to which:

    i.    Any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof; or

    ii.    An **Insured** is, or had this **policy** not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization;

For any expenses incurred with respect to **Bodily Injury** resulting from the **Hazardous Properties** of **Nuclear Material** and arising out of the operation of a **Nuclear Facility** by any person or organization.

Resulting from the **Hazardous Properties** of **Nuclear Material**, if:

    i.   The **Nuclear Material**:

        1.  Is at any **Nuclear Facility** owned by, or operated by or on behalf of, an **Insured**; or

        2.  Has been discharged or dispersed therefrom;

    ii.  The **Nuclear Material** is contained in **Spent Fuel** or **Waste** at any time possessed, handled, used, processed, stored, transported or disposed of by or on behalf of an **Insured**; or

    iii.  Arising out of the furnishing by an **Insured** of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any **Nuclear Facility**, but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion (iii.) applies only to **Property Damage** to such **Nuclear Facility** and any property at such **Nuclear Facility**.

As used in this exclusion:

    i.  **Hazardous Properties** means radioactive, toxic or explosive properties.

    ii.  **Nuclear Material** means **Source Material**, **Special Nuclear Material** or **By-product Material**.

      **Source Material**, **Special Nuclear Material**, and **By-product Material** have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof.

    iii.  **Spent Fuel** means any fuel component, solid or liquid, which has been used or exposed to radiation in a **Nuclear Reactor**.

    iv.  **Waste** means any **Waste** material:

      Containing **By-product Material** other than the tailings or **Wastes** produced by the extraction or concentration of uranium or thorium from any ore processed primarily for its **Source Material** content; and

      Resulting from the operation by any person or organization of any **Nuclear Facility**.

    v.  **Nuclear Facility** means:

      Any **Nuclear Reactor**;

      Any equipment or device designed or used for:
          a.  Separating the isotopes of uranium or plutonium,
          b.  Processing or utilizing **Spent Fuel**, or
          c.  Handling processing or packaging **Waste**;

      Any equipment or device used for the processing, fabricating or alloying of **Special Nuclear Material** if at any time the total amount of such material in the custody of an **Insured** at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235;

      Any structure, basin, excavation, premises or place prepared or used for the storage or disposal of **Waste**;

      and includes the site on which any of the foregoing is located, all operations conducted on such site and all premiums used for such operations.

    vi.  **Nuclear Reactor** means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material.

      vii. **Property Damage** as defined in this exclusion only means physical injury to tangible property, including all resulting loss of use of such property; and includes all forms of radioactive contamination of property.

E.   Definitions

The following definitions are added to the **Policy**:

1. **Administration** means:
   a. Giving counsel to employees with respect to an **Employee Benefits Program**;

   b. Interpreting an **Employee Benefits Program**;

   c. Handling of records in connection with an **Employee Benefits Program**; or

   d. Effecting enrollment, termination, or cancellation of employees under an **Employee Benefits Program**;

   provided such acts are authorized by **You**.

2. **Advertising Injury** means one or more of the following offenses:

   a. Libel, slander or defamation;

   b. Any infringement of copyright, title or slogan;

   c. Misappropriation of advertising ideas or style of doing business;

   d. Oral or written publication of material that violates a person's right of privacy;

   committed or alleged to have been committed in any advertisement, publicity article, broadcast, or telecast and arising out of **Your** advertising activities except if arising out of electronic chat rooms or bulletin boards.

3. **Automobile** means a land motor vehicle, trailer, or semi-trailer designed for travel on public roads, including any attached machinery or equipment; but, does not include **Mobile Equipment**.

4. **Corporal Punishment** means the deliberate infliction of **Bodily Injury** to someone as a method of correction or punishment.

5. **Employee Benefit Program** means:

   a. Group life insurance, group accident or health insurance, investment plans or savings plans, profit sharing plans, pension plans and stock subscription plans; or

   b. Unemployment insurance, social security benefits, workers' compensation and disability benefits; provided for **Your Employees**.

6. **Employment Practices Violation** means any actual or alleged:

   a. Wrongful dismissal or discharge or termination of employment, whether actual or constructive;

   b. Employment related misrepresentation;

   c. Violation of any federal, state, or local laws (whether common or statutory) concerning employment or discrimination in employment;

   d. **Sexual Harassment** or other unlawful workplace harassment;

   e. Wrongful deprivation of a career opportunity or failure to employ, promote or grant tenure;

     f.   Wrongful discipline of **Employees**;

     g.   Negligent evaluation of **Employees**;

     h.   Failure to adopt adequate workplace or employment policies and procedures;

     i.   Employment related libel, slander, defamation or invasion of privacy; or

     j.   **Retaliation**.

7.  **Fungi** means any type or form of fungus, including mold or mildew and any mycotoxins, spores, scents or byproducts produced or released by **fungi**.

8.  **Impaired Property** means tangible property, other than **Your Product** or **Your Work** that cannot be used or is less useful because:

     a.   It incorporates **Your Product** or **Your Work** that is known or thought to be defective, deficient, inadequate or dangerous; or

     b.   **You** have failed to fulfill terms of a contract or agreement;

if such property can be restored to use by:

     a.   The repair, replacement, adjustment or removal of **Your Product** or **Your Work**; or

     b.   **Your** fulfilling the terms of the contract or agreement.

9.  **Insured Contract** means:
     a.   A contract for a lease of premises.  However, that portion of the contract for a lease of premises that indemnifies any person or organization for damage by fire to premises rented to **You** or temporarily occupied by **You** with permission of the owner is not an **Insured Contract**.;
     b.   A sidetrack agreement;
     c.   Any easement or license agreement except in connection with vehicle or pedestrian private railroad crossings at grade;
     d.   Any other easement agreement, except in connection with construction or demolition operations on or within 50 feet of a railroad;
     e.   A mutual aid assistance agreement or contract between political subdivisions;
     f.   An elevator maintenance agreement;
     g.   An obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;
     h.   That part of any other written contract or written agreement pertaining to **Your** business (including an indemnification of a municipality in connection with work performed for a municipality) under which **You** assume the tort liability of another party to pay for **Bodily Injury** or **Property Damage** to a third person or organization.  Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

     An **Insured Contract** does not include that part of any contract or agreement:

          a.   That indemnifies a railroad for **Bodily Injury** or **Property Damage** arising out of construction or demolition operations, within 50 feet of any railroad property and affecting any railroad bridge or trestle, tracks, roadbeds, tunnel, underpass or crossing;
          b.   That indemnifies an architect, engineer or surveyor for injury or damage arising out of:

               i).   Preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; or
               ii).   Giving directions or instructions, or failing to give them, if that is the primary cause of the injury or damage; or

    c.   Under which the **Insured**, if an architect, engineer, or surveyor, assumes liability for an injury or damage arising out of the **Insured's** rendering or failure to render professional services, including those listed in ii. above and supervisory, inspection, architectural or engineering activities.

10. **Occurrence** means:

    a.   With respect to **Bodily Injury** and **Property Damage**, an accidental happening including continuous or repeated exposure to substantially the same general harmful conditions which results in **Bodily Injury** or **Property Damage**.  All such exposure to substantially the same general conditions will be considered as arising out of one **Occurrence**;

    b.   With respect to **Personal Injury**, only those offenses specified in the **Personal Injury** Definition.  All damages arising out of substantially the same **Personal Injury** regardless of frequency, repetition, the number or kind of offenses, or number of claimants, will be considered as arising out of one **Occurrence**;

    c.   With respect to **Advertising Injury**, only the offenses listed in the **Advertising Injury** Definition.  All damages arising out of substantially the same **Advertising Injury** regardless of frequency, repetition, the number or kind of media used, the number or kind of offenses, or the number of claimants, will be considered as arising out of one **Occurrence**.

11. **Personal Property** means any property other than real property or fixtures.

12. **Your Product** means:

    a.   Any goods or products (other than real property) manufactured, sold, handled, distributed or disposed of by:

        i.    **You**;

        ii.   Others trading under **Your** name; or

        iii.  A person or organization whose business or assets **You** have acquired;

    b.   Containers (other than vehicles), materials, parts, or equipment furnished in connection with such goods or products.

13. **Your Work** means:

    a.   Work or operations performed by **You** or on **Your** behalf;

    b.   Materials, parts or equipment furnished in connection with such work or operations.

    **Your Work** includes warranties or representations made at any time with respect to the fitness, quality, durability or performance of a. and b. above.  **Your Work** also includes the providing of or failure to provide warnings or instructions.

The foregoing definitions shall apply equally to the singular and plural forms of the respective words.

F.  For the purposes of this General Liability Coverage Endorsement, definitions C., D., E., K., O., S., DD., GG., II., and JJ. of the ACE Scholastic Advantage[SM] Educators Legal Liability Policy are deleted and replaced by the following:

    C.   **Bodily Injury** means physical injury to the body, sickness or disease, including death resulting from any of these at any time, and if arising out of the foregoing, mental anguish, mental injury, mental tension, emotional distress, disability, pain and suffering, shock or fright.

    D.   **Claim** means:

1. A written demand against any **Insured** for monetary damages or non-monetary or injunctive relief;

2. A civil proceeding against any **Insured** seeking monetary damages or non-monetary or injunctive relief, commenced by the service of a complaint or similar pleading;

3. A criminal proceeding against any **Insured** commenced by a return of an indictment, information, or similar document, or receipt or filing of a notice of charges;

4. An arbitration proceeding against any **Insured** seeking monetary damages or non-monetary or injunctive relief;

5. A civil, administrative or regulatory proceeding against any **Insured** commenced by the filing of a notice of charges, investigative order or similar document; or

6. A civil, administrative or regulatory investigation against any **Insured**, commenced by the service upon or other receipt by any **Insured** of a written notice or subpoena from the investigating authority identifying any **Insured** as an individual against whom a civil, administrative or regulatory investigation or proceeding may be commenced;

including any appeal therefrom.

E. **Claim Expenses** means:

1. Reasonable and necessary attorneys' fees, expert witness fees and other fees and costs incurred by **Us**, or by an **Insured** with **Our** prior written consent, in the investigation and defense of covered **Claims**;

2. Reasonable and necessary premiums for any appeal bond, attachment bond or similar bond, provided that **We** shall have no obligation to apply for or furnish such bond; and

3. Pre-judgment and post-judgment interest awarded in any **Claim**.

**Claim Expenses** shall not include wages, salaries, fees or costs of directors, officers or **Employees** of the **Insurer** or the **Insured**. **Claim Expenses** shall be reduced by any recoveries or salvages which have been paid or will be collected.

K. **Damages** means compensatory damages, judgments and settlements which the **Insured** becomes legally obligated to pay on account of any **Claim**. **Damages** shall be reduced by any recoveries or salvages which have been paid or will be collected. **Damages** does not include:

1. Any amount for which the **Insured** is not financially liable or legally obligated to pay;

2. Taxes, fines, penalties, or assessments;

3. Punitive or exemplary damages, or the multiple portion of any multiplied damage award;

4. Matters uninsurable under the laws pursuant to which this **Policy** is construed;

5. The cost to comply with any injunctive or other non-monetary or declaratory relief, including specific performance, or any agreement to provide such relief.

O. **Employee** means any past or present full-time, part-time, temporary, or leased **Employee**(s) of the **Named Insured**.

S.   **Incidental Medical Malpractice** means injury arising out of emergency medical services rendered or which should have been rendered to any person or persons during the **Policy Period** by any duly certified emergency medical technician, paramedic or nurse who is employed by or acting on behalf of an **Insured** to provide such services, but is not employed at a hospital, clinic or nursing home facility.  **Incidental Medical Malpractice** also includes injury arising out of the dispensation of prescribed medicine to children by **Your** duly certified school nurse.

DD.  **Personal Injury** means one or more of the following offenses:

1.   False arrest, false imprisonment, wrongful detention or malicious prosecution;

2.   Libel, slander, defamation of character, or oral or written publication of material that violates a person's right of privacy, unless arising out of advertising activities in electronic chat rooms or bulletin boards;

3.   Wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies by or on behalf of the owner, landlord or lessor, or by a person claiming to be acting on behalf of the owner, landlord or lessor.

GG.  **Pollutant(s)** means (a) any substance exhibiting any hazardous characteristics as defined by or identified on a list of hazardous substances issued by the United States Environmental Protection Agency or any federal, state, county, municipal or local counterpart thereof or any foreign equivalent; (b) any solid, liquid, gaseous or thermal irritant, contaminant or smoke, vapor, soot, fumes, acids, alkalis, chemicals or waste materials, including materials to be recycled, reconditioned, or reclaimed; and also (c) any other air emission, odor, waste water, oil or oil products, infectious or medical waste, asbestos or asbestos products, noise, **fungi** or bacteria (not including to any **fungi** or bacteria that are, are on, or are contained in, a good or product intended for bodily consumption), lead or lead compounds or lead contained in any materials, and electric or magnetic or electromagnetic field radiation.

II.   **Professional Services** means services that may be legally performed only by a person holding a professional license to render such services.  **Professional Services** do not include services by teachers, educators, school guidance counselors, school nurses and those services described under **Incidental Medical Malpractice**.

JJ.  **Property Damage** means physical injury to tangible property, including all resulting loss of use of such property.  All such loss of use shall be deemed to occur at the time of the physical injury that caused it.

The foregoing definitions shall apply equally to the singular and plural forms of the respective words.

G.   For the purposes of this General Liability Coverage Endorsement, Section XV, Territory and Valuation, subsection C, is deleted in its entirety and replaced with the following:

C.   Territory.  Coverage under this General Liability Coverage Endorsement shall extend only to **Occurrences** taking place or sustained outside the borders of the State of Arkansas, provided the **Claim** is made within the jurisdiction of and subject to the laws of the United States of America, Canada or their respective territories or possessions.

All other terms and conditions remain unchanged.

_____

Authorized Representative

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

| Named Insured **Pine Bluff School District** | | | Endorsement Number **10** |
|---|---|---|---|
| Policy Symbol **EON** | Policy Number **G23670471 003** | Policy Period **04/02/2015 to 02/01/2016** | Effective Date of Endorsement **04/02/2015** |
| Issued By (Name of Insurance Company) **ACE American Insurance Company** | | | |

## Cap On Losses From Certified Acts Of Terrorism

### This endorsement modifies insurance provided under the following:

**ACE Scholastic Advantage Educators Legal Liability Insurance Policy**
**ACE Municipal Advantage Public Entity Liability Policy**

A.  If aggregate insured losses attributable to terrorist acts certified under the federal Terrorism Risk Insurance Act exceed $100 billion in a calendar year and the **Insurer** has met its deductible under the Terrorism Risk Insurance Act, the **Insurer** shall not be liable for the payment of any portion of the amount of such losses that exceeds $100 billion, and in such case insured losses up to that amount are subject to pro rata allocation in accordance with procedures established by the Secretary of the Treasury.

"Certified act of terrorism" means an act that is certified by the Secretary of the Treasury, in accordance with the provisions of the federal Terrorism Risk Insurance Act, to be an act of terrorism pursuant to such Act.  The criteria contained in the Terrorism Risk Insurance Act for a "certified act of terrorism" include the following:

1.  The act resulted in insured losses in excess of $5 million in the aggregate, attributable to all types of insurance subject to the Terrorism Risk Insurance Act; and

2.  The act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

B.  The terms and limitations of any terrorism exclusion, or the inapplicability or omission of a terrorism exclusion, do not serve to create coverage for **Damages** or **Claims Expenses** that are otherwise excluded under this **Policy**.

All other terms and conditions of this **Policy** remain unchanged.

_____
Authorized Representative

© 2015   Includes copyrighted material of Insurance Services Office, Inc., with its permission.

# DISCLOSURE PURSUANT TO TERRORISM RISK INSURANCE ACT

| Named Insured | | | Endorsement Number |
|---|---|---|---|
| **Pine Bluff School District** | | | **11** |
| Policy Symbol | Policy Number | Policy Period | Effective Date of Endorsement |
| **EON** | **G23670471 003** | **04/02/2015 to 02/01/2016** | **04/02/2015** |
| Issued By (Name of Insurance Company) | | | |
| **ACE American Insurance Company** | | | |

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

**Disclosure Of Premium**

In accordance with the federal Terrorism Risk Insurance Act, we are required to provide you with a notice disclosing the portion of your premium, if any, attributable to coverage for terrorist acts certified under the Terrorism Risk Insurance Act. The portion of your premium attributable to such coverage is shown in this endorsement or in the policy Declarations.

**Disclosure Of Federal Participation In Payment Of Terrorism Losses**

The United States Government, Department of the Treasury, will pay a share of terrorism losses insured under the federal program.  The federal share equals 85% for year 2015; 84% beginning on January 2016; 83% beginning on January 1 2017; 82% beginning on January 1, 2018; 81% beginning on January 1, 2019 and 80% beginning on January 1, 2020 of that portion of the amount of such insured losses that exceeds the applicable insurer retention.  However, if aggregate insured losses attributable to terrorist acts certified under the Terrorism Risk Insurance Act exceed $100 billion in a calendar year, the Treasury shall not make any payment for any portion of the amount of such losses that exceeds $100 billion.

**Cap On Insurer Participation In Payment Of Terrorism Losses**

If aggregate insured losses attributable to terrorist acts certified under the Terrorism Risk Insurance Act exceed $100 billion in a calendar year and we have met our insurer deductible under the Terrorism Risk Insurance Act, we shall not be liable for the payment of any portion of the amount of such losses that exceeds $100 billion, and in such case insured losses up to that amount are subject to pro rata allocation in accordance with procedures established by the Secretary of the Treasury.

Terrorism Risk Insurance Act premium: $0.

_____
Authorized Representative

TRIA11c (01/15)          Includes copyrighted material of Insurance Services office, Inc., with its permission.



# Arkansas
# Notice to Policyholders

## Questions About Your Insurance?

If you have questions about your insurance, need coverage information, or require assistance in resolving complaints, do not hesitate to contact either your insurance agent, or ACE USA, Customer Service Department, 436 Walnut Street, Philadelphia, PA  19106-3703, telephone 1-800-352-4462.

If we fail to provide you with reasonable and adequate service, you should feel free to contact:

Arkansas Insurance Department
1200 West Third Street
Little Rock, AR  72201
(501) 371-2640 or 800-852-5494



## ACE Producer Compensation
## Practices & Policies

ACE believes that policyholders should have access to information about ACE's practices and policies related to the payment of compensation to brokers and independent agents.  You can obtain that information by accessing our  website  at http://www.aceproducercompensation.com or by calling the  following toll-free  telephone number: 1-866-512-2862.



**ace usa**

# U.S. Treasury Department's Office Of Foreign Assets Control ("OFAC") Advisory Notice to Policyholders

This Policyholder Notice shall not be construed as part of your policy and no coverage is provided by this Policyholder Notice nor can it be construed to replace any provisions of your policy. You should read your policy and review your Declarations page for complete information on the coverages you are provided.

This Notice provides information concerning possible impact on your insurance coverage due to directives issued by OFAC. **Please read this Notice carefully.**

The Office of Foreign Assets Control (OFAC) administers and enforces sanctions policy, based on Presidential declarations of "national emergency". OFAC has identified and listed numerous:

- Foreign agents;
- Front organizations;
- Terrorists;
- Terrorist organizations; and
- Narcotics traffickers;

as "Specially Designated Nationals and Blocked Persons". This list can be located on the United States Treasury's web site – http//www.treas.gov/ofac.

In accordance with OFAC regulations, if it is determined that you or any other insured, or any person or entity claiming the benefits of this insurance has violated U.S. sanctions law or is a Specially Designated National and Blocked Person, as identified by OFAC, this insurance will be considered a blocked or frozen contract and all provisions of this insurance are immediately subject to OFAC. When an insurance policy is considered to be such a blocked or frozen contract, no payments nor premium refunds may be made without authorization from OFAC. Other limitations on the premiums and payments also apply.