UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
PINE BLUFF DIVISION

| | |
|---|---|
| **PINE BLUFF SCHOOL DISTRICT,** )<br>)<br>    **Plaintiff,** )<br>)<br>**v.** )<br>)<br>**ACE AMERICAN INSURANCE** )<br>**COMPANY,** )<br>)<br>    **Defendant.** )<br>) | Civil Action No.: 5:18-cv-185-KGB |

## STATEMENT OF UNDISPUTED FACTS

Defendant ACE American Insurance Company, pursuant to Local Rule 56.1, submits the following Statement of Undisputed Facts to accompany its Motion for Summary Judgment.

**A.    The 2015 Policy**

1.    ACE issued ACE Scholastic Advantage Educators Legal Liability Policy No. EON G23670471 003 to Plaintiff Pine Bluff School District's ("P.B.S.D.") for the period April 2, 2015 to February 1, 2016 (the "2015 Policy").[1] The Declarations for the 2015 Policy contain a statement in bold and capital letters stating that "**THIS POLICY IS A CLAIMS MADE AND REPORTED POLICY. EXCEPT AS OTHERWISE PROVIDED HEREIN, THIS POLICY COVERS ONLY CLAIMS FIRST MADE AGAINST THE INSUREDS AND REPORTED TO THE INSURER DURING THE POLICY PERIOD….**"[2]

2.    The Insuring Agreement for the Employment Practices Liability coverage section in the 2015 Policy provides that "[t]he Insurer will pay on behalf of the Insureds all Damages

---

[1] Exhibit A, 2015 Policy.
[2] Exhibit A, 2015 Policy, Declarations.

1

and Claims Expenses for which the Insured becomes [sic] legally obligated to pay by reason of a Claim first made against an Insured and reported to the Insurer during the Policy Period…."[3]

3.  The 2015 Policy defines "Claim" to include "a civil, administrative or regulatory proceeding against any Insured commenced by…the issuance of a notice of charge or formal investigative order, including without limitation any such proceeding by or in association with…the Equal Employment Opportunity Commission."[4] The 2015 Policy also defines "Claim" to include "a civil proceeding against any Insured seeking monetary Damages or non-monetary or injunctive relief, commenced by the service of a complaint or similar pleading.[5]

4.  The Limit of Liability Section for the 2015 Policy provides, in part, "[a]ll Claims arising out of the same Wrongful Act and all Interrelated Wrongful Acts of the Insureds shall be deemed to be one Claim. Such Claim shall be deemed to be first made on the date the earliest of such Claim is first made, regardless of whether such date is before or during the Policy Period."[6]

5.  "Wrongful Acts" are defined in the 2015 Policy to include "Wrongful Employment Practices committed or attempted by the Educational Institution or by any Insured Educator acting solely in their capacity as such and on behalf of the Educational Institution…."[7] "Wrongful Employment Practices" include "1. wrongful dismissal, discharge or termination, whether actual or constructive; . . . 3. Discrimination; . . . 4. Sexual Harassment or unlawful workplace harassment; . . . 8. wrongful discipline; 9. Retaliation…of any past, present or prospective full-time, part-time, seasonal and temporary Employee…of the Educational Institution."[8]

---

[3] Exhibit A, 2015 Policy, Insuring Agreement I.C.
[4] Exhibit A, 2015 Policy, Definitions, II.D.4.
[5] Exhibit A, 2015 Policy, Definitions, II.D.2.
[6] Exhibit A, 2015 Policy, Limits of Liability, VIII.B.3.
[7] Exhibit A, 2015 Policy, Definitions, II.PP.
[8] Exhibit A, 2015 Policy, Definitions, II.QQ.

6. "Interrelated Wrongful Acts" are defined in the 2015 Policy as "[a]ll Wrongful Acts that have as a common nexus any fact, circumstance, situation, event, transaction, cause of series of related facts, circumstances situations, events, transactions or causes."[9]

7. The Notice Section for the 2015 Policy states that "[t]he Insured shall, as a condition precedent to their rights under this Policy, give to the Insurer written notice of any Claim as soon as practicable, but in no event later than 30 days after: 1. the end of the Policy Period...."[10]

8. Endorsement 4 to the 2015 Policy amends the Notice provision "by deleting the phrase '30 days' and inserting the phrase '60 days'."[11]

9. The 2015 Policy includes the following definition for "Policy Period": "The period of time specified in Item 2 of the Declarations, subject to prior termination pursuant to Section VIX, Termination of the Policy."[12]

10. Item 2 of the Declarations identifies the Policy Period for the 2015 Policy as spanning "From 12:01 a.m. 04/02/2015 To 12:01 a.m. 02/01/2016."[13]

B. **The 2016 Policy**

11. ACE issued ACE Scholastic Advantage Educators Legal Liability Policy No. EON G23670471 004 to P.B.S.D. for the period February 1, 2016 to February 1, 2017 (the "2016 Policy").[14] The Declarations for the 2016 Policy contain a statement in bold and capital letters stating that "**THIS POLICY IS A CLAIMS MADE AND REPORTED POLICY. EXCEPT AS OTHERWISE PROVIDED HEREIN, THIS POLICY COVERS ONLY CLAIMS**

---

[9] Exhibit A, 2015 Policy, Definitions, II.X.
[10] Exhibit A, 2015 Policy, Notice, X.A.
[11] Exhibit A, 2015 Policy, Endorsement 4.
[12] Exhibit A, 2015 Policy, Definitions, II.FF.
[13] Exhibit A, 2015 Policy, Declarations.
[14] Exhibit A, 2015 Policy.

**FIRST MADE AGAINST THE INSUREDS AND REPORTED TO THE INSURER DURING THE POLICY PERIOD….**"[15]

12. The Insuring Agreement for the Employment Practices Liability coverage section in the 2016 Policy provides that "[t]he Insurer will pay on behalf of the Insureds all Damages and Claims Expenses for which the Insured becomes [sic] legally obligated to pay by reason of a Claim first made against an Insured and reported to the Insurer during the Policy Period…."[16]

13. The 2016 Policy defines "Claim" to include "a civil, administrative or regulatory proceeding against any Insured commenced by…the issuance of a notice of charge or formal investigative order, including without limitation any such proceeding by or in association with…the Equal Employment Opportunity Commission."[17] The 2016 Policy also defines "Claim" to include "a civil proceeding against any Insured seeking monetary Damages or non-monetary or injunctive relief, commenced by the service of a complaint or similar pleading.[18]

14. The Limit of Liability Section for the 2016 Policy provides, in part, "[a]ll Claims arising out of the same Wrongful Act and all Interrelated Wrongful Acts of the Insureds shall be deemed to be one Claim. Such Claim shall be deemed to be first made on the date the earliest of such Claim is first made, regardless of whether such date is before or during the Policy Period."[19]

15. "Wrongful Acts" are defined in the 2016 Policy to include "Wrongful Employment Practices committed or attempted by the Educational Institution or by any Insured Educator acting solely in their capacity as such and on behalf of the Educational Institution…."[20] "Wrongful Employment Practices" include "1. wrongful dismissal, discharge or termination,

---

[15] Exhibit B, 2016 Policy, Declarations.
[16] Exhibit B, 2016 Policy, Insuring Agreement I.C.
[17] Exhibit B, 2016 Policy, Definitions, II.D.4.
[18] Exhibit B, 2016 Policy, Definitions, II.D.2.
[19] Exhibit B, 2016 Policy, Limits of Liability, VIII.B.3.
[20] Exhibit B, 2016 Policy, Definitions, II.PP.

4

whether actual or constructive; . . . 3. Discrimination; . . . 4. Sexual Harassment or unlawful workplace harassment; . . . 8. wrongful discipline; 9. Retaliation…of any past, present or prospective full-time, part-time, seasonal and temporary Employee…of the Educational Institution."[21]

16.     "Interrelated Wrongful Acts" are defined in the 2016 Policy as "[a]ll Wrongful Acts that have as a common nexus any fact, circumstance, situation, event, transaction, cause of series of related facts, circumstances situations, events, transactions or causes."[22]

17.     The 2016 Policy includes the following definition for "Policy Period": "The period of time specified in Item 2 of the Declarations, subject to prior termination pursuant to Section VIX, Termination of the Policy."[23]

18.     Item 2 of the Declarations identifies the Policy Period for the 2016 Policy as spanning "From 12:01 a.m. 02/01/2016 To 12:01 a.m. 02/01/2017."[24]

**C.     Celeste Alexander's Sexual Harassment Claim**

19.     Celeste Alexander was a math teacher at Pine Bluff High School during the 2014-15 school year.[25] Michael Nellums was the principal of Pine Bluff High School and was Ms. Alexander's supervisor.[26]

20.     Ms. Alexander alleged in a lawsuit she filed against P.B.S.D. on September 22, 2016 that Mr. Nellums began sexually harassing her in or around November 2014.[27] She alleged that Mr. Nellums retaliated against her after she rejected his advances, by calling her to meetings where no one was present; ignoring her emails; improperly scrutinizing her work; and falsely

---

[21] Exhibit B, 2016 Policy, Definitions, II.QQ.
[22] Exhibit B, 2016 Policy, Definitions, II.X.
[23] Exhibit B, 2016 Policy, Definitions, II.FF.
[24] Exhibit B, 2016 Policy, Declarations.
[25] Exhibit C, Alexander Complaint, ¶ 17.
[26] Exhibit C, Alexander Complaint, ¶19.
[27] Exhibit C, Alexander Complaint, ¶20.

accusing her of unprofessional conduct.[28] Ms. Alexander was notified in April 2015 that she was one of several teachers terminated in a reduction of force.[29] In her Complaint against P.B.S.D. she alleged that her termination and failure to be rehired were in retaliation for her reaction to Mr. Nellums' alleged sexual harassment.[30] Ms. Alexander alleged in her Complaint that she reported the alleged sexual harassment to P.B.S.D. on or around June 3, 2015.[31]

21. Ms. Alexander filed a Charge of Discrimination with the EEOC on December 1, 2015 (Charge No. 493-2016-00340).[32] Her Charge lists P.B.S.D. as "the Employer…That I Believe Discriminated Against Me or Others." In her Charge, Ms. Alexander marked a box indicating that her discrimination was based on "Retaliation."

22. Ms. Alexander alleged in her EEOC Charge:

"I was hired September 19, 2014, as a Math Lab Coordinator/Math Teacher. I was identified for RIF in April 2015. I filed a sexual harassment complaint against my Principal in June 2015. I was not hired for the next school year and my employer hired uncertified and lesser-qualified math teachers in August 2015. I was told that I would never be rehired for making false allegations. I believe I was not rehired in retaliation for filing sexual harassment allegations in violation of Title VII of the Civil Rights Act of 1964, as amended."[33]

23. P.B.S.D. received the December 1, 2015 EEOC Charge and filed a response and provided documents to the EEOC. P.B.S.D. submitted a Mediation Statement to the EEOC on January 21, 2016,[34] and it submitted a Position Statement to the EEOC on January 28, 2016.[35] On January 29, 2016, P.B.S.D. submitted written responses and documents in response to 18 inquiries and requests for documentation that the EEOC requested from P.B.S.D..[36]

---

[28] Exhibit C, Alexander Complaint, ¶23.
[29] Exhibit C, Alexander Complaint, ¶24.
[30] Exhibit C, Alexander Complaint, ¶25.
[31] Exhibit C, Alexander Complaint, ¶26.
[32] Exhibit D, December 1, 2015 EEOC Charge.
[33] Exhibit D, December 1, 2015 EEOC Charge.
[34] Exhibit E, January 21, 2016 EEOC Mediation Statement.
[35] Exhibit F, January 28, 2016 EEOC Position Statement.
[36] Exhibit G, January 29, 2019 Response to EEOC's Request for Information.

24. The EEOC issued a Dismissal and Notice of Rights on June 24, 2016.[37] The EEOC's right to sue letter gave Alexander 90 days from her receipt of the Notice of Rights to file suit.[38]

25. Ms. Alexander filed a Complaint for Damages against P.B.S.D. and Nellums in the United States District Court for the Eastern District of Arkansas on September 22, 2016 (Civil Action No. 5:16-cv-00300-BSM).[39] Ms. Alexander alleged that she "timely filed a charge of discrimination against Defendant with the [EEOC],"[40] and that her lawsuit was "commenced within ninety (90) days of receipt of the 'Notice of Right to Sue.'"[41]

26. The Complaint alleged that Ms. Alexander "was not called back from the ROF or rehired, because of her complaints of sexual harassment" and that "[o]ther teachers were hired…despite being lesser qualified than Plaintiff Alexander in violation of [P.B.S.D.'s] Reduction of Force Policies."[42]

27. Ms. Alexander's December 1, 2015 EEOC Charge is a "Claim" as defined in the ACE Policies as: "a civil, administrative or regulatory proceeding against any Insured commenced by…the issuance of a notice of charge or formal investigative order, including without limitation any such proceeding by or in association with…the Equal Employment Opportunity Commission…."[43]

---

[37] Exhibit H, Dismissal and Notice of Rights.
[38] Exhibit H, Dismissal and Notice of Rights.
[39] Exhibit C, Alexander Complaint.
[40] Exhibit C, Alexander Complaint, ¶12.
[41] Exhibit C, Alexander Complaint, ¶14.
[42] Exhibit C, Alexander Complaint, ¶¶ 29, 32.
[43] Exhibit A, 2015 Policy, Definitions, II.D.4; Exhibit D, December 1, 2015 EEOC Charge.

28. Ms. Alexander's September 22, 2016 Complaint for Damages is a "Claim" as defined in the ACE Policies as: "a civil proceeding against any Insured seeking monetary Damages or non-monetary or injunctive relief, commenced by the service of a complaint…."[44]

29. The December 1, 2015 EEOC Charge and P.B.S.D.'s responses to the EEOC on January 26, 2016, January 28, 2016, and January 29, 2016 all occurred during the 2015 Policy Period between April 2, 2015 and February 1, 2016.

D.  **P.B.S.D.'s Demand for Insurance Coverage from ACE**

30. P.B.S.D. first reported Ms. Alexander's Claim (her lawsuit) to ACE on October 3, 2016.[45] P.B.S.D.'s insurance agent attached to the loss notice a copy of the lawsuit and an email from P.B.S.D.'s counsel. The email states that "[t]here was a related EEOC claim and investigation by the Arkansas Department of Education Professional Licensure Standards Board, which dismissed the allegations. The EEOC issued a right to sue letter on June 24, 2016."[46]

31. ACE acknowledged receipt of Ms. Alexander's Claim and sent an email to P.B.S.D.'s Superintendent, Dr. Michael Robinson, on October 20, 2016.[47] ACE requested that P.B.S.D. provide "a copy of the EEOC charge filed against Ms. Alexander," along with "any documents relating to the [June 2015] grievance process."[48]

32. ACE sent P.B.S.D. a letter on October 25, 2016 requesting that P.B.S.D. provide ACE with "(i) a copy of the charge filed by Alexander with the U.S. Equal Employment Opportunity Commission ('EEOC') and (ii) a copy of any written demands, complaints, grievances, etc. from Alexander received by the Insured prior to the EEOC charge and lawsuit."

---

[44] Exhibit A, 2015 Policy, Definitions, II.D.2; Exhibit C, Alexander Complaint.
[45] Exhibit I, October 3, 2016 Loss Notice and Accompanying Communication.
[46] Exhibit I, October 3, 2016 Loss Notice and Accompanying Communication.
[47] Exhibit J, October 20, 2016 Email.
[48] Exhibit J, October 20, 2016 Email.

The October 25, 2016 ACE letter states that ACE "reserves the right to amend and/or deny coverage based on review of this information."[49]

33. ACE's October 25, 2016 letter includes a complete reservation of rights, including "the right to withdraw the defense provided in this matter and the right…to address additional coverage issues as they may arise, based upon the Policy and/or additional facts that may come to [ACE's] attention." ACE stated in its October 25, 2016 letter that "[n]othing contained in this letter, and no action on [ACE's] part in investigating these matters, should be construed as an admission of coverage or as a waiver of any right, remedy, or defense that may be available to [ACE]."[50]

34. P.B.S.D. first provided the EEOC Charge to ACE on November 22, 2017.[51]

35. On February 14, 2018 ACE issued a supplemental coverage position based on its discovery that the December 1, 2015 EEOC Charge and P.B.S.D.'s responses to the EEOC on January 26, 2016, January 28, 2016, and January 29, 2016 all occurred during the 2015 Policy Period from April 2, 2015 to February 1, 2016.[52]

36. ACE advised P.B.S.D. in the February 14, 2018 letter that there "is no coverage under the [2015] Policy" because ACE "was first provided with notice of this matter on October 3, 2016, more than 60 days after the end of the [2015] Policy."[53]

37. ACE advised P.B.S.D. that "coverage for this matter is precluded in its entirety" under the 2016 Policy because "the Claim in this matter is considered made…prior to the policy period of February 1, 2016 to February 1, 2017."[54]

---

[49] Exhibit K, October 25, 2016 Coverage Letter.
[50] Exhibit K, October 25, 2016 Coverage Letter.
[51] Exhibit L, Email Transmission from Pine Bluff Counsel to ACE.
[52] Exhibit M, February 14, 2018 Coverage Letter.
[53] Exhibit M, February 14, 2018 Coverage Letter.
[54] Exhibit M, February 14, 2018 Coverage Letter.

38. P.B.S.D. settled Ms. Alexander's Claim in March 2018 for $50,000. Ms. Alexander was awarded prevailing party fees pursuant to the terms of the settlement. On August 30, 2018, the Court entered an order awarding Alexander $100,000 in attorneys' fees and $19,367.37 in costs.[55]

39. P.B.S.D. filed this lawsuit against ACE on June 1, 2018. P.B.S.D. demands payment of the $50,000 settlement, the $119,367.37 prevailing party award, and $82,425.22 in Claims Expenses P.B.S.D. incurred defending against the *Alexander* lawsuit. [ECF No. 2].

        */s/David B. Vandergriff*
        David B. Vandergriff, ABN # 77137
        QUATTLEBAUM, GROOMS & TULL PLLC
        111 Center Street, Suite 1900
        Little Rock, AR 72201
        Phone: 501-379-1780
        Fax: 501-379-3880
        Email: dbv@qgtlaw.com

        *Attorneys for Defendant ACE American Insurance Company*

## CERTIFICATE OF SERVICE

I hereby certify that on this 25th day of January, 2019, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF System which will send notification of such filing to the following:

    David A. Hodges, Esq.
    david@hodgeslaw.com

        /s/ *David B. Vandergriff*

---

[55] Exhibit N, August 30, 2018 Order.