**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF ARKANSAS**
**PINE BLUFF DIVISION**

| | | |
|---|---|---|
| **PINE BLUFF SCHOOL DISTRICT,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Civil Action No.: 5:18-cv-185-KGB** |
| | ) | |
| **ACE AMERICAN INSURANCE** | ) | |
| **COMPANY,** | ) | |
| | ) | |
| **Defendant.** | ) | |
| | ) | |

**ACE'S BRIEF SUPPORTING**
**MOTION FOR SUMMARY JUDGMENT**

Defendant ACE American Insurance Company requests that the Court enter summary judgment pursuant to Federal Rule of Civil Procedure 56 as to all causes of action Plaintiff asserts against ACE.

**I.  INTRODUCTION**

Pine Bluff School District ("P.B.S.D.") seeks insurance coverage from ACE American Insurance Company ("ACE") for an employment discrimination lawsuit filed by Celeste Alexander in September 2016. ACE denied coverage for Ms. Alexander's lawsuit because P.B.S.D. did not meet the reporting requirements for either of two separate ACE "claims-made and reported" policies. The reporting requirements are conditions precedent to coverage under those policies. P.B.S.D. seeks a declaration that it is entitled to insurance coverage for Ms. Alexander's lawsuit. P.B.S.D. also asserts breach of contract against ACE, and contends that the doctrines of waiver and estoppel prevent ACE from denying coverage.

ACE issued a "claims-made and reported" policy to P.B.S.D. for the period April 2, 2015 to February 1, 2016 (the "2015 Policy"). For a "Claim" to be covered under the 2015 Policy, it

1

must have been both "first made" against P.B.S.D. and "reported" to ACE during that Policy Period. In addition, the 2015 Policy affords P.B.S.D. a 60-day grace reporting period following policy expiration during which P.B.S.D. is permitted to report to ACE "Claims" that are "first made" against P.B.S.D. during the Policy Period which ended on February 1, 2016. That grace period expired on April 1, 2016. P.B.S.D. did not "report" to ACE any claim by Ms. Alexander during the 2015 Policy Period or the 60-day grace period following expiration of that policy. As a result, no coverage is afforded under the 2015 Policy for Ms. Alexander's discrimination lawsuit.

ACE issued a second "claims-made and reported" policy to P.B.S.D. for the period February 1, 2016 to February 1, 2017 (the "2016 Policy"). A condition precedent for coverage under 2016 Policy is that a "Claim" must be "first made" against P.B.S.D. during the Policy Period between February 1, 2016 and February 1, 2017. Both the 2015 and the 2016 ACE Policies provide that where multiple "Claims" (as defined) arise out of the same "Wrongful Act" or are considered "Interrelated Wrongful Acts" (as defined), those "Claims" are deemed to comprise a single "Claim" and deemed to have been "first made" on the date the earliest "Claim" is made against P.B.S.D.

Ms. Alexander filed a Charge of Discrimination with the EEOC against P.B.S.D. on December 1, 2015 during the 2015 Policy Period. The 2015 Policy defines "Claims" to include EEOC charges. P.B.S.D. did not report Ms. Alexander's EEOC Charge to ACE during the 2015 Policy Period or during the 60-day grace period following policy expiration of that policy. As a result, no coverage is afforded under the 2015 Policy for Ms. Alexander's EEOC discrimination charge.

Ms. Alexander subsequently filed a lawsuit against P.B.S.D. on September 22, 2016, during the 2016 Policy Period, which P.B.S.D. "reported" to ACE on October 3, 2016. The 2016 Policy defines "Claims" to include lawsuits. ACE originally agreed to defend P.B.S.D. in the lawsuit, subject to a complete reservation of rights while it investigated coverage for the Claim. ACE requested that P.B.S.D. provide a copy of the EEOC Charge of Discrimination Ms. Alexander had filed prior to the lawsuit, and ACE reserved the right to modify its coverage position following its review of the EEOC Charge. P.B.S.D. first provided the EEOC Charge to ACE over a year later in November 2017. Ms. Alexander's EEOC Charge and subsequently filed lawsuit are both "Claims" that arise from the same "Wrongful Acts" or series of "Interrelated Wrongful Acts" and therefore comprise a single Claim under the ACE Policies.

ACE first discovered in November 2017 that Alexander's Charge of Discrimination had been filed with the EEOC on December 1, 2015. It is undisputed P.B.S.D. received the EEOC Charge and responded to it during the 2015 Policy Period. Ms. Alexander's EEOC Charge is a "Claim first made" during the 2015 Policy Period. Both the EEOC Charge and Ms. Alexander's subsequently-filed and related lawsuit comprise a single Claim "first made" against P.B.S.D. during the 2015 Policy Period. Ms. Alexander's lawsuit therefore is not a Claim "first made" against P.B.S.D. during the 2016 Policy Period. No coverage is afforded under the 2016 Policy.

The Court must interpret the ACE Policies and determine coverage as a matter of law. There are only three critical material facts at issue: 1) are Ms. Alexander's EEOC charge and subsequently filed related lawsuit both Claims arising from the same Wrongful Acts, constituting a single Claim; 2) was that Claim "first made" against P.B.S.D. during the 2015 Policy Period; and 3) was that Claim "reported" to ACE in accordance with the insuring agreement reporting

requirements for the 2015 Policy. None of those material facts are in dispute. ACE is entitled to summary judgment.

## II.    UNDISPUTED FACTS

### A.    The 2015 ACE Policy Applies Only To Claims "Reported" To ACE Between April 2, 2015 and April 1, 2016.

1.      ACE issued a "claims-made and reported" ACE Scholastic Advantage Educators Legal Liability Policy No. EON G23670471 003 to P.B.S.D. for the period April 2, 2015 to February 1, 2016 (the "2015 Policy").[1] One of the types of coverage the 2015 Policy provides is "Employment Practices Liability" coverage. The Declarations for the 2015 Policy contain the following language in bold capital letters:

> **THIS POLICY IS A CLAIMS MADE AND REPORTED POLICY.  EXCEPT AS OTHERWISE PROVIDED HEREIN, THIS POLICY COVERS ONLY CLAIMS FIRST MADE AGAINST THE INSUREDS AND REPORTED TO THE INSURER DURING THE POLICY PERIOD OR EXTENDED REPORTING PERIOD, IF APPLICABLE. AMOUNTS INCURRED FOR DAMAGES AND CLAIMS EXPENSES SHALL BE APPLIED AGAINST THE RETENTION AMOUNT.  PLEASE READ THIS POLICY CAREFULLY.**

2.      The Insuring Agreement for the Employment Practices Liability coverage section in the 2015 Policy provides that coverage is afforded by reason of a "Claim **first made** against an Insured **and reported** to the Insurer **during the Policy Period**:"

> The **Insurer** will pay on behalf of the **Insureds** all **Damages** and **Claims Expenses** for which the **Insureds** becomes legally obligated to pay by reason of a **Claim** first made against an **Insured** and reported to the **Insurer** during the **Policy Period** or, if elected, the **Extended Reporting Period**, for any **Wrongful Act** taking place prior to the end of the **Policy Period**.

3.      The 2015 Policy defines "Claim," in relevant part, as:

---

[1] Exhibit A, 2015 Policy.

**Claim**:

1. a written demand against any **Insured** for monetary **Damages** or non-monetary or injunctive relief;

2. a civil proceeding against any **Insured** seeking monetary **Damages** or non-monetary or injunctive relief, commenced by the service of a complaint or similar pleading;

3. a mediation or arbitration proceeding, but only if the **Insurer** has provided its prior written consent to such proceeding, against any **Insured** seeking monetary **Damages** or non-monetary or injunctive relief;

4. a civil, administrative or regulatory proceeding against any **Insured** commenced by:

   a. the issuance of a notice of charge or formal investigative order, including without limitation any such proceeding by or in association with:

      i. the Equal Employment Opportunity Commission, or

      ii. any other similar federal, state or local governmental authority located anywhere in the world;

   b. the service upon or other receipt by any **Insured** of a written notice or subpoena from the investigating authority identifying any **Insured** as an individual against whom a civil, administrative or regulatory investigation or proceeding is to be commenced;

4.      The Limit of Liability Section for the 2015 Policy provides, in part:

All **Claims** arising out of the same **Wrongful Act** and all **Interrelated Wrongful Acts** of the **Insureds** shall be deemed to be one **Claim**.  Such **Claim** shall be deemed to be first made on the date the earliest of such **Claim** is first made, regardless of whether such date is before or during the **Policy Period**.

5.      "Wrongful Acts" are defined in the 2015 Policy to include "Wrongful Employment Practices committed or attempted by the Educational Institution or by any Insured Educator acting solely in their capacity as such and on behalf of the Educational Institution…." "Wrongful Employment Practices" include "1. wrongful dismissal, discharge or termination, whether actual or constructive; . . . 3. Discrimination; . . . 4. Sexual Harassment or unlawful workplace harassment; . . . 8. wrongful discipline; 9. Retaliation…of any past, present or prospective full-time, part-time, seasonal and temporary Employee…of the Educational Institution."

6.      "Interrelated Wrongful Acts" are defined as:

> **Interrelated Wrongful Acts:** All **Wrongful Acts** that have as a common nexus any fact, circumstance, situation, event, transaction, cause or series of related facts, circumstances, situations, events, transactions or causes.

7.    The Notice Section for the 2015 Policy states that Claims must be reported to ACE as follows:

> **NOTICE**
>
> For coverage under this **Policy** (other than coverage for a **Crisis Event**):
>
> A.  The **Insured** shall, as a condition precedent to their rights under this **Policy**, give to the **Insurer** written notice of any **Claim** as soon as practicable, but in no event later than 30 days after:
>
>     1.  the end of the **Policy Period**, or
>
>     2.  with respect to **Claims** first made during any applicable Automatic or Optional **Extended Reporting Period**, the end of such Automatic or Optional **Extended Reporting Period**.

8.    Endorsement 4 to the 2015 Policy modifies the Notice provision and gives the insured an extended 60-day grace reporting period such that Claims must be reported to ACE no later than 60 days after the end of the "Policy Period":

> Section X, Notice, subsection A is amended by deleting the phrase "30 days" and inserting the phrase "60 days".

9.    The 2015 Policy includes the following definition for "Policy Period":

> **Policy Period:** The period of time specified in Item 2 of the Declarations, subject to prior termination pursuant to Section XIV, Termination of the **Policy**.

10.    Item 2 of the Declarations identifies the Policy Period for the 2015 Policy as:

> Item 2.   **Policy Period:**
>           From 12:01 a.m. 04/02/2015       To 12:01 a.m.  02/01/2016
>           (Local time at the address shown in Item 1)

11.    In order to satisfy the Insuring Agreement requirements for Employment Practices Liability coverage under the 2015 Policy, **a Claim (as defined) that is first made against P.B.S.D. between April 2, 2015 and February 1, 2016 must be reported in writing to ACE**

**"in no event later than" April 1, 2016 (i.e. "60 days after the end of the Policy Period").**
This requirement is "a condition precedent to [P.B.S.D.'s] rights under this Policy."

> **B**      **The 2016 ACE Policy Applies Only To Claims "First Made" Against P.B.S.D. Between February 1, 2016 And February 1, 2017.**

12.     ACE issued "claims-made and reported" ACE Scholastic Advantage Educators Legal Liability Policy No. EON G23670471 004 to P.B.S.D. for the period February 1, 2016 to February 1, 2017.[2] Like the 2015 Policy, the 2016 Policy also provides "Employment Practices Liability" coverage. Like the 2015 Policy, the Declarations for the 2016 Policy contain the following language in bold capital letters:

> **THIS POLICY IS A CLAIMS MADE AND REPORTED POLICY.  EXCEPT AS OTHERWISE PROVIDED HEREIN, THIS POLICY COVERS ONLY CLAIMS FIRST MADE AGAINST THE INSUREDS AND REPORTED TO THE INSURER DURING THE POLICY PERIOD OR EXTENDED REPORTING PERIOD, IF APPLICABLE. AMOUNTS INCURRED FOR DAMAGES AND CLAIMS EXPENSES SHALL BE APPLIED AGAINST THE RETENTION AMOUNT.  PLEASE READ THIS POLICY CAREFULLY.**

13.     The Insuring Agreement for the Employment Practices Liability coverage section in the 2016 Policy provides that coverage is afforded "by reason of a Claim 'first made' against an Insured and reported to the Insurer during the Policy Period….":

> The **Insurer** will pay on behalf of the **Insureds** all **Damages** and **Claims Expenses** for which the **Insureds** becomes legally obligated to pay by reason of a **Claim** first made against an **Insured** and reported to the **Insurer** during the **Policy Period** or, if elected, the **Extended Reporting Period**, for any **Wrongful Act** taking place prior to the end of the **Policy Period**.

14.     Like the 2015 Policy, the 2016 Policy provides the following definition for "Policy Period":

> **Policy Period:**  The period of time specified in Item 2 of the Declarations, subject to prior termination pursuant to Section XIV, Termination of the **Policy.**

15.     Item 2 of the Declarations lists the applicable Policy Period for the 2016 Policy as:

---

[2] Exhibit B, 2016 Policy.

| Item 2. | **Policy Period:** | |
|---|---|---|
| | From: 12:01 a.m. 02/01/2016 | To: 12:01 a.m 02/01/2017 |
| | (Local time at the address shown in Item 1) | |

16.     Like the 2015 Policy, the Limit of Liability Section for the 2016 Policy provides, in part:

All **Claims** arising out of the same **Wrongful Act** and all **Interrelated Wrongful Acts** of the **Insureds** shall be deemed to be one **Claim**.  Such **Claim** shall be deemed to be first made on the date the earliest of such **Claim** is first made, regardless of whether such date is before or during the **Policy Period**.

17.     Like the 2015 Policy, "Wrongful Acts" are defined in the 2016 Policy to include "Wrongful Employment Practices committed or attempted by the Educational Institution or by any Insured Educator acting solely in their capacity as such and on behalf of the Educational Institution…." "Wrongful Employment Practices" include "1. wrongful dismissal, discharge or termination, whether actual or constructive; . . . 3. Discrimination; . . . 4. Sexual Harassment or unlawful workplace harassment; . . . 8. wrongful discipline; 9. Retaliation…of any past, present or prospective full-time, part-time, seasonal and temporary Employee…of the Educational Institution."

18.     Like the 2015 Policy, "Interrelated Wrongful Acts" are defined in the 2016 Policy as:

Interrelated Wrongful Acts:  All **Wrongful Acts** that have as a common nexus any fact, circumstance, situation, event, transaction, cause or series of related facts, circumstances, situations, events, transactions or causes.

19.     In order to satisfy the Insuring Agreement requirements for Employment Practices Liability coverage under the 2016 Policy, the **Claim must have been "first made" against P.B.S.D. between February 1, 2016 and February 1, 2017.**

### C.    Celeste Alexander's Sexual Harassment Claim.

20.    Celeste Alexander was a math teacher at P.B.S.D. High School during the 2014-15 school year.[3] Michael Nellums was the principal of Pine Bluff High School and was Ms. Alexander's supervisor.[4]

21.    Ms. Alexander claims that Mr. Nellums began sexually harassing her in or around November 2014.[5] She claims that Mr. Nellums retaliated against her after she rejected his advances, by calling her to meetings where no one was present; ignoring her emails; improperly scrutinizing her work; and falsely accusing her of unprofessional conduct.[6] Ms. Alexander was notified in April 2015 that she was one of several teachers terminated in a reduction of force.[7] In her Complaint she alleges that her termination and failure to be rehired were in retaliation for her reaction to Mr. Nellums' alleged sexual harassment.[8] Ms. Alexander reported the alleged sexual harassment to P.B.S.D. on or around June 3, 2015.[9]

22.    Ms. Alexander filed a Charge of Discrimination with the EEOC on December 1, 2015 (Charge No. 493-2016-00340).[10] Her Charge lists P.B.S.D. as "the Employer…That I Believe Discriminated Against Me or Others." In her Charge, Ms. Alexander marked a box indicating that her discrimination was based on "Retaliation."

23.    Ms. Alexander alleged in her EEOC Charge:

---

[3] Exhibit C, Alexander Complaint, ¶ 17.
[4] Exhibit C, Alexander Complaint, ¶19.
[5] Exhibit C, Alexander Complaint, ¶20.
[6] Exhibit C, Alexander Complaint, ¶23.
[7] Exhibit C, Alexander Complaint, ¶24.
[8] Exhibit C, Alexander Complaint, ¶25.
[9] Exhibit C, Alexander Complaint, ¶26.
[10] Exhibit D, December 1, 2015 EEOC Charge.

> I was hired September 19, 2014, as a Math Lab Coordinator/Math Teacher. I was identified for RIF in April 2015. I filed a sexual harassment complaint against my Principal in June 2015. I was not hired for the next school year and my employer hired uncertified and lesser-qualified math teachers in August 2015.
>
> I was told that I would never be rehired for making false allegations.
>
> I believe I was not rehired in retaliation for filing sexual harassment allegations in violation of Title VII of the Civil Rights Act of 1964, as amended.

24.     P.B.S.D. received the December 1, 2015 EEOC Charge and filed a response and provided documents to the EEOC. P.B.S.D. submitted a Mediation Statement to the EEOC on January 21, 2016,[11] and it submitted a Position Statement to the EEOC on January 28, 2016.[12] On January 29, 2016, P.B.S.D. submitted written responses and documents in response to 18 inquiries and requests for documentation that the EEOC requested from P.B.S.D..[13]

25.     The EEOC issued a Dismissal and Notice of Rights on June 24, 2016.[14] The EEOC's right to sue letter gave Alexander 90 days from her receipt of the Notice of Rights to file suit.

26.     Ms. Alexander filed a Complaint for Damages against P.B.S.D. and Nellums in the United States District Court for the Eastern District of Arkansas on September 22, 2016 (Civil Action No. 5:16-cv-00300-BSM).[15] Ms. Alexander alleged that she "timely filed a charge of discrimination against Defendant with the [EEOC],"[16] and that her lawsuit was "commenced within ninety (90) days of receipt of the 'Notice of Right to Sue.'"[17]

27.     Ms. Alexander's Complaint contains identical allegations to those set out in her EEOC Charge. The Complaint alleges that she "was not called back from the ROF or rehired, because of her complaints of sexual harassment" and that "[o]ther teachers were hired…despite

---

[11] Exhibit E, January 21, 2016 EEOC Mediation Statement.
[12] Exhibit F, January 28, 2016 EEOC Position Statement.
[13] Exhibit G, January 29, 2016 Response to EEOC's Request for Information.
[14] Exhibit H, Dismissal and Notice of Rights.
[15] Exhibit C, Alexander Complaint.
[16] Exhibit C, Alexander Complaint, ¶12.
[17] Exhibit C, Alexander Complaint, ¶14.

being lesser qualified than Plaintiff Alexander in violation of [P.B.S.D.'s] Reduction of Force Policies." [18]

### D. Ms. Alexander's EEOC Charge Is A Claim "First Made" Against P.B.S.D. During the 2015 Policy Period.

28.     The 2015 Policy defines "Claim" to include "a civil, administrative or regulatory proceeding against any Insured commenced by…the issuance of a notice of charge or formal investigative order, including without limitation any such proceeding by or in association with…the Equal Employment Opportunity Commission…."[19] Alexander's EEOC Charge is a "Claim" as defined in the 2015 Policy.

29.     The 2015 Policy provides that "[a]ll Claims arising out of the same Wrongful Act and all Interrelated Wrongful Acts of the Insureds shall be deemed to be one Claim. Such Claim shall be deemed to be first made on the date the earliest of such Claim is first made, regardless of whether such date is before or during the Policy Period." [20] The EEOC Charge and Alexander's subsequent lawsuit containing the identical allegations as those asserted in the EEOC Charge are "deemed to be one Claim…first made on the date" the EEOC Charge was filed.

30.     The December 1, 2015 EEOC Charge and P.B.S.D.'s responses to the EEOC on January 26, 2016, January 28, 2016, and January 29, 2016 all occurred during the 2015 Policy Period of April 2, 2015 to February 1, 2016. The Claim for which P.B.S.D. seeks insurance coverage in this lawsuit was "first made" against P.B.S.D. during the 2015 Policy Period.

---

[18] Exhibit C, Alexander Complaint, ¶¶ 29, 32.
[19] Exhibit A, 2015 Policy.
[20] Exhibit A, 2015 Policy.

**E.** **Ms. Alexander's Claim Was Not "Reported" To ACE On Or Before Expiration Of The Grace Period For the 2015 Policy Ending April 1, 2016.**

31.     The 2015 Policy provides that it is a "condition precedent" to coverage that P.B.S.D. "give to [ACE] written notice of any Claim as soon as practicable, but **in no event later than 60 days after...the end of the Policy Period.**"[21]

32.     P.B.S.D. did not report Ms. Alexander's Claim to ACE until October 3, 2016.[22] P.B.S.D.'s insurance agent attached to the loss notice a copy of the lawsuit and an email from P.B.S.D.'s counsel. The email states that "[t]here was a **related EEOC claim** and investigation by the Arkansas Department of Education Professional Licensure Standards Board, which dismissed the allegations. The EEOC issued a right to sue letter on June 24, 2016."

**F.** **P.B.S.D.'s Demand for Insurance Coverage from ACE.**

33.     ACE acknowledged receipt of Ms. Alexander's Claim and sent an email to P.B.S.D.'s Superintendent, Dr. Michael Robinson, on October 20, 2016.[23] ACE requested that P.B.S.D. provide "a copy of the EEOC charge filed against Ms. Alexander," along with "any documents relating to the [June 2015] grievance process."

34.     ACE issued a preliminary coverage letter to P.B.S.D. on October 25, 2016.[24] ACE evaluated coverage for the lawsuit under the 2016 Policy because ACE was not made aware that Ms. Alexander actually had filed her EEOC Charge against P.B.S.D. during the 2015 Policy Period.

35.     In its very first coverage letter to P.B.S.D. within weeks of receiving notice of the lawsuit, ACE requested that P.B.S.D. provide ACE with "(i) a copy of the charge filed by Alexander with the U.S. Equal Employment Opportunity Commission ('EEOC') and (ii) a copy

---

[21] Exhibit A, 2015 Policy.
[22] Exhibit I, October 3, 2016 Loss Notice and Accompanying Communication.
[23] Exhibit J, October 20, 2016 Email.
[24] Exhibit K, October 25, 2016 Coverage Letter.

of any written demands, complaints, grievances, etc. from Alexander received by the Insured prior to the EEOC charge and lawsuit." ACE stated that it "reserve[d] the right to amend and/or deny coverage based on review of this information."[25]

36.     ACE's October 25, 2016 preliminary coverage letter communicated that its position was subject to a complete reservation of rights, including "the right to withdraw the defense provided in this matter and the right…to address additional coverage issues as they may arise, based upon the Policy and/or additional facts that may come to [ACE's] attention." ACE made clear that "[n]othing contained in this letter, and no action on [ACE's] part in investigating these matters, should be construed as an admission of coverage or as a waiver of any right, remedy, or defense that may be available to [ACE]." [26]

37.     ACE requested a copy of Ms. Alexander's EEOC Charge in its initial October 2016 letter, but P.B.S.D. did not provide the EEOC Charge to ACE until over a year later on November 22, 2017.[27]

38.     Upon finally receiving the EEOC information it had requested a year prior at the time the claim was reported, ACE reevaluated coverage. It issued a supplemental coverage position based on its discovery that Ms. Alexander actually had "first made" her claim against P.B.S.D. during the 2015 Policy Period by way of her EEOC Charge.[28] ACE advised P.B.S.D. that the 2015 Policy did not cover Ms. Alexander's Claim because P.B.S.D. did not report the Claim to ACE until six months after the expiration of the 60-day grace reporting period for the 2015 Policy.

---

[25] Exhibit K, October 25, 2016 Coverage Letter.
[26] Exhibit K, October 25, 2016 Coverage Letter.
[27] Exhibit L, Email Transmission from Pine Bluff Counsel to ACE.
[28] Exhibit M, February 14, 2018 Coverage Letter.

39.     ACE also advised P.B.S.D. that the 2016 Policy did not cover Ms. Alexander's Claim because the EEOC Charge and the lawsuit were a single Claim deemed to have been "first made" prior to inception of the 2016 Policy.

40.     P.B.S.D. settled Ms. Alexander's Claim in March 2018 for $50,000. Ms. Alexander was awarded prevailing party fees pursuant to the terms of the settlement. On August 30, 2018, the Court entered an order awarding Alexander $100,000 in attorneys' fees and $19,367.37 in costs.[29] P.B.S.D. filed this lawsuit against ACE on June 1, 2018. P.B.S.D. demands payment of the $50,000 settlement, the $119,367.37 prevailing party award, and $82,425.22 in Claims Expenses P.B.S.D. incurred defending against the *Alexander* lawsuit.

## III.    LEGAL ARGUMENT

### A.     The Claims-Made And Reported Policy Requirements Are Unambiguous. The Court Is Required To Enforce Them. It Is P.B.S.D.'s Burden To Prove Those Requirements Are Satisfied.

"Under Arkansas law, insurance contracts are to be construed according to general contract principles." *Perkins v. Clinton State Bank*, 593 F.2d 327, 334 (8th Cir. 1979) (applying Arkansas law). It is well established that the interpretation of unambiguous policy provisions is a question of law for the Court. *See United Fire & Cas. Co. v. Reyes*, 2014 WL 12160734, at *2 (E.D. Ark. Apr. 1, 2014) ("The Court finds that the interpretation of the notice provisions of the [policy] is a question of law for the Court.").

"It is…a longstanding rule that, where the terms of the policy are clear and unambiguous, the policy language controls." *Noland v. Farmers Ins. Co., Inc.*, 892 S.W.2d 271, 272 (Ark. 1995). Insurance policy language is not ambiguous unless "it is susceptible to more than one equally reasonable construction." *Chandler v. American Cas. Co.*, 833 F. Supp. 735, 737 n.4 (E.D. Ark. 1993). "When the language is clear, it must be given its plain an obvious meaning and

---

[29] Exhibit N, August 30, 2018 Order.

should not be interpreted to bind an insurer to a risk which it plainly excluded…." *Carver v. Allstate Ins. Co.*, 76 S.W.3d 901, 904 (Ark. Ct. App. 2002).

"If the insuring agreement clause defining coverage is the basis of an insurer[']s denial of coverage, the burden is on the insured to prove their claim is covered." *Mid-Continent Cas. Co. v. Sullivan*, 2008 WL 5412839, at *1 (E.D. Ark. Dec. 23, 2008) (citing *Southern Farm Bureau Cas. Ins. Co. v. Fields*, 553 S.W.2d 278 (Ark. 1977)). It is an insuring agreement requirement in the ACE Policies that claims be both "first made" and "reported to [ACE] during the Policy Period." Those requirements are conditions precedent to coverage under both ACE Policies. As a result, P.B.S.D. bears the burden of proof to establish coverage in this case.

**B.** **The December 1, 2015 EEOC Charge and Subsequent Lawsuit Comprise a Single Claim First Made During the 2015 Policy Period.**

Both the 2015 and 2016 Policies provide that "[a]ll Claims arising out of the same Wrongful Act and all Interrelated Wrongful Acts of the Insureds shall be deemed to be one Claim. Such Claim shall be deemed to be **first made** on the date the earliest of such Claim is first made, regardless of whether such date is before or during the Policy Period."[30] Ms. Alexander's EEOC Charge and her Complaint alleged the same discriminatory and retaliatory Wrongful Acts, namely that she was included in a reduction of force and not re-hired because she resisted Mr. Nellums' alleged sexual advances and afterwards filed an internal complaint for sexual harassment with the P.B.S.D.[31] P.B.S.D.'s own counsel in the underlying litigation acknowledged when reporting the claim that Ms. Alexander's EEOC Charge and subsequent lawsuit are "related."[32]

---

[30] Exhibit A, 2015 Policy; Exhibit B, 2016 Policy (emphasis supplied).
[31] Compare Exhibit C, Alexander Complaint, with Exhibit D, December 1, 2015 EEOC Charge.
[32] Exhibit I, October 3, 2016 Loss Notice and Accompanying Communication.

Courts consistently enforce "Interrelated Wrongful Acts" language identical to that in the ACE Policies when evaluating the time at which employment discrimination claims are "first made" against an insured employer. *See Cracker Barrel Old Country Store, Inc. v. Cincinnati Ins. Co.*, 499 Fed. Appx. 559, 564 (6th Cir. 2012) ("A charge filed with the EEOC by an employee that turns into a civil suit…based on the same 'wrongful act' may thus be one 'claim' deemed made" when the earliest claim is first made against the insured); *John Hiester Chrysler Jeep, LLC v. Greenwich Ins. Co.*, 2017 WL 6210897, at *5 (E.D.N.C. Dec. 8, 2017) ("[A]lthough Harris and Davis each filed federal suit[s] on April 28, 2016, these suits allege the same wrongful conduct of [the insured] found in the Harris and Davis EEOC charges and, pursuant to the terms of the policies, are not separate claims."); *Twin City Fire Ins. Co. v. Permatron Corp.*, 2018, WL 1565599, at *6 (N.D. Ill. Mar. 30, 2018) (EEOC charge filed in September 2014 and subsequent lawsuit filed in June 2015 deemed to comprise a single claim "first made" in September 2014 when the EEOC charge was filed).

Ms. Alexander's 2015 EEOC Charge is a "Claim" as defined in the ACE Policies because it is "a civil, administrative or regulatory proceeding against any Insured commenced by the issuance of a notice of charge…with the Equal Employment Opportunity Commission." The EEOC issued a Notice of Right to Sue in connection with that Charge, and Ms. Alexander subsequently filed a lawsuit against P.B.S.D. The lawsuit also satisfies the definition of "Claim."[33] However, because both Claims arise out of the same Wrongful Act and Interrelated Wrongful Acts of P.B.S.D., both claims "shall be deemed to be one Claim…first made" when the EEOC Charge was filed on December 1, 2015.

---

[33] Subpart 2 of the Claim definition provides that a "Claim" includes "a civil proceeding against any Insured seeking monetary Damages or non-monetary or injunctive relief, commenced by the service of a complaint or similar pleading."

### C.      The 2015 Policy Does Not Cover Ms. Alexander's Claim Because It Was Not "Reported" To ACE On Or Before April 1, 2016.

P.B.S.D. never can satisfy its initial burden of proving coverage under the Insuring Agreement in the 2015 Policy. It is undisputed that Ms. Alexander's Claim was first made during the 2015 Policy Period, but was not "reported to [ACE] during the Policy Period" or during the 60-day grace reporting period. P.B.S.D. did not report her Claim to ACE until October 3, 2016.[34] That was more than six months after the 2015 Policy reporting period ended on April 1, 2016 and almost ten months after she filed her EEOC Charge on December 1, 2015.

"Under Arkansas law, a 'claims made and reported policy' can only be triggered if the claim is made in writing and given to the insurer during the policy period." *Homebank of Ark. v. Kan. Bankers Sur. Co.*, 2008 WL 2704670, at *5 (E.D. Ark. July 7, 2008). "Arkansas law does not require any showing of prejudice to the insurer when the insured fails to give notice of loss, and the giving of notice was made a condition precedent to coverage." *Id. See also Continental Cas. Co. v. Jewell, Moser, Fletcher & Holleman*, 2005 WL 1925964, at *2 (E.D. Ark. Aug. 11, 2005) ("Arkansas courts are clear that in order for a 'claims made and reported policy' to apply, the claim must be made in writing and given to the insurer during the policy period.").

The rest of the country also is in line with the Arkansas courts which have enforced claims-made and reported policies as written. *See, e.g.*, *Paint Shuttle, Inc.* v. *Continental Cas. Co.,* 733 N.E.2d 513, 522 (Ind. Ct. App. 2000). ("The notice provision of a 'claims made' policy is not simply part of the insured's duty to cooperate [as in the case with an occurrence policy], it defines the limits of the insurer's obligation … If the insured does not give notice within the contractually required time period, there is simply no coverage under the policy."); *Solar Time, Ltd. v. XL Specialty Ins. Co.,* 142 Fed. Appx. 430 (11th Cir. 2005) (if a claim is not reported

---

[34] Exhibit I, October 3, 2016 Loss Notice and Accompanying Communication.

during the policy period of a claims-made and reported policy, no liability attaches under the policy); *First Am. Title Ins. Co. v. Cont'l Cas. Co.*, 709 F.3d 1170 (5th Cir. 2013) (claim reporting is central to claims-made and reported policies).

Numerous courts have strictly upheld the reporting requirements of claims-made and reported policies and held that the failure to timely report an EEOC charge destroys coverage for a subsequently filed and related employment discrimination lawsuit. For example, *Janjer Enterprises., Inc. v. Executive Risk Indemnity, Inc.*, 97 Fed. Appx. 410 (4th Cir. 2004), involved consecutively issued claims-made and reported employment practices liability policies for the periods 8/19/00 to 8/19/01 and 8/19/01 to 8/19/02. The claimant filed an EEOC charge on March 2, 2001 (during the 2000-01 policy period) and subsequently filed a lawsuit in October 4, 2001 (during the 2001-02 policy period) asserting the same wrongful conduct alleged in the EEOC charge.

The claim was not reported to the insurer until October 19, 2001, after the reporting period for the 2000-01 policy had expired. The Fourth Circuit affirmed summary judgment for the insurer. The policy provided that "Related Claims will be treated as a Single Claim made at the time the first of such Related Claims was made." The Fourth Circuit determined that the EEOC charge and subsequently filed discrimination lawsuit comprised a single claim "first made" during the 2000-01 policy period, but not reported during the policy. The insurer was held to have "properly disclaimed coverage" because the insured failed to timely report the claim to the insurer pursuant to the reporting requirements of the 2000-01 policy. *Id.* at 415.[35]

---

[35] *See also Specialty Food Systems Inc. v. Reliance Ins. Co.*, 200 F.3d 816 (5th Cir. 1999) (affirming summary judgment for insurer on grounds EEOC charge made during one claims-made and reported policy period and discrimination suit filed during renewal claims-made and reported policy period comprised single claim that was made during first policy period but was not timely reported to insurer); *Sierra Luciano v. Congar Int'l Corp.*, 2018 WL 1725770 (D.P.R. Mar. 30, 2018) (granting summary judgment for insurer where employment discrimination lawsuit was deemed to be first made on "the date on which the first plaintiff filed a complaint with the EEOC" but

Here, the 2015 Policy mandates that Ms. Alexander's EEOC Charge and subsequent Complaint "shall be deemed to be one Claim…first made" at the time the EEOC Charge was filed. P.B.S.D. received Ms. Alexander's Claim during the 2015 Policy Period. It responded to the EEOC during the 2015 Policy Period through written submissions dated January 21, 2016,[36] January 28, 2016,[37] and January 29, 2016.[38] But it neglected to report her Claim to ACE until October 3, 2016, more than eight months after the 2015 Policy expired and more than six months after the 60-day grace reporting period in the 2015 Policy expired. ACE is entitled to summary judgment for any coverage sought under the 2015 Policy.

**D.    The 2016 Policy Does Not Cover Ms. Alexander's Claim Because It Was Not "First Made" Against P.B.S.D. During The Policy Period.**

When Ms. Alexander's Claim was reported to ACE on October 3, 2016, the 2015 Policy had expired by its terms on February 1, 2016, and only the 2016 Policy was in effect. The Insuring Agreement for the 2016 Policy requires that Claims must be "first made" during the Policy Period February 1, 2016 through February 1, 2017. The 2016 Policy likewise provides that "[a]ll Claims arising out of the same Wrongful Act and all Interrelated Wrongful Acts of the Insureds shall be deemed to be one Claim. Such Claim shall be deemed to be first made on the date the earliest of such Claim is first made, **regardless of whether such date is before** or during the Policy Period."[39] P.B.S.D. never can prove that Ms. Alexander's Claim was "first made" against P.B.S.D. during the 2016 Policy Period because her lawsuit filed during the 2016 Policy Period, "aris[es] out of the same Wrongful Act," and is an "Interrelated Wrongful Act"

---

claim was not reported to insurer until after "sixty (60) days after the termination of the Policy Period" in which the EEOC charge was made).

[36] Exhibit E, January 21, 2016 EEOC Mediation Statement.

[37] Exhibit F, January 28, 2016 EEOC Position Statement.

[38] Exhibit G, January 29, 2016 Response to EEOC's Request for Information.

[39] Exhibit B, 2016 Policy (emphasis supplied).

with the Wrongful Acts alleged in the EEOC Charge. As a result, P.B.S.D. never can satisfy its initial burden of proving coverage under the 2016 Policy.

In *Continental Casualty Co. v. Walker*, 741 F. Supp. 2d. 987 (E.D. Ark. 2008), the insurer issued a series of consecutive claims-made and reported policies to an insured, with the last policy period being April 27, 2004 to April 27, 2005. This District Court granted summary judgment to the insurer where the insured sought coverage under an already-expired policy for a claim first made on October 17, 2005, "nearly six months after the policy period had expired." *Id.* at 991. The court found summary judgment was appropriate because the lawsuit for which the insured sought coverage "does not constitute a claim **first made** against an insured and reported in writing to Continental during the policy period…." *Id.* (emphasis supplied).

P.B.S.D. already had received and responded to Ms. Alexander's EEOC Charge prior to the inception of the 2016 Policy. It therefore is impossible that her Claim was "first made" during the 2016 Policy Period. *See LA Weigh Loss Ctrs., Inc. v. Lexington Ins. Co.*, 2006 WL 689109, at *5 (Pa. Ct.C.P. Mar. 1, 2006) ("[S]ince the underlying class action lawsuit was a progression of the prior EEOC administrative charges filed prior to the Lexington policy period, Lexington does not have a duty to provide coverage, as the claim was first made before the Lexington policy period became effective. Accordingly, Lexington's motion for summary judgment…is granted.").

ACE is entitled to summary judgment to claims for coverage under the 2016 Policy.

### E.     Waiver and Estoppel Cannot Create Coverage Where the Plain Language of the ACE Policy Reporting Requirements Have Not Been Met.

P.B.S.D. asserts in Counts III and IV of its Complaint that ACE "waived any and all alleged defenses to coverage" and that ACE is "estopped from claiming no coverage." The arguments that coverage has been created by waiver or estoppel should be rejected. The general

rule in Arkansas is that "the doctrine of waiver or estoppel cannot be given the effect of enlarging or extending coverage as defined in the contract." *J-McDaniel Const. Co., Inc. v. Mid-Continent Cas. Co.*, 761 F.3d 916, 919 (8th Cir. 2014) (citing *Harasyn v. St. Paul Guardian Ins. Co.*, 75 S.W.3d 696, 702 (Ark. 2002)).

In *Columbia Insurance Group, Inc. v. Park Plus Management Co.*, 2015 WL 2341273 (W.D. Ark. May 14, 2015), the insurer defended a general liability claim for five months before asserting a "late notice" defense. In a subsequent insurance coverage declaratory judgment action, the court granted summary judgment for the insurer, rejecting the insured's argument that waiver or estoppel could resurrect coverage where the insured failed to timely report the claim. The court reasoned that the insurer's letter indicating its agreement to provide a defense "should not be considered a waiver of any of the…Policy provisions." *Id.* at *3. The court also pointed out that the insured "cannot claim that [the insurer] induced them to believe that their loss was covered by the CGL Policy by defending them in the lawsuit" and that the insured did not "change their position in such manner that would operate as a virtual fraud if [the insurer] asserts its rights…." *Id.*

Other courts have rejected waiver and estoppel arguments by insureds in insurance coverage lawsuits with facts relevant to those facts at issue here. In *MF Nut Co., LLC v. Continental Cas. Co.*, 2013 WL 164425 (D. Hawaii Jan. 15, 2013), an insured tendered several related EEOC charges to its liability insurer, Continental. Some of the EEOC charges were filed during the Continental policy period, but others were made prior to the policy period. The Continental "claims representative…did not realize that some of the charges were filed prior to the Policy period." *Id.* at *7. Continental accepted the defense and permitted the insured to select its own counsel. For two years, "Continental never disputed coverage and did not indicate that it

was defending [the insured] pursuant to a reservation of rights." *2. The EEOC issued a "for cause" determination, offered a settlement proposal, and eventually filed suit against the insured. Continental subsequently determined that some of the related EEOC charges were first made prior to the Continental policy period. It disclaimed coverage based on a policy provision that related claims are "deemed to have been made on the date of the earliest claim." *Id.* at *3.

The court in *MF* concluded that the EEOC charges alleged similar and related types of discrimination. It held as a matter of law "that Continental does not have a duty to defend" the insured because "[a]lthough some of the later EEOC Charges were filed within the Policy period, all of them…are deemed to be a single claim first made" prior to the Continental policy. *Id.* at *12. The court then specifically rejected the insured's arguments that waiver and estoppel prevented Continental "from withdrawing its defense and/or from denying its indemnity obligations." The court held that "waiver and estoppel may not be used to broaden the coverage of an insurance policy beyond what the insured bargained for." *Id.* at *14. The court found that even though there was "no evidence that Continental provided a reservation of rights letter that was received by [the insured]," there was "no evidence that [the insured] suffered any detriment or was prejudiced because of Continental's withdrawal of its defense." The insured "was allowed to continue with its choice of counsel," and the insured "failed to demonstrate that Continental's withdrawal prejudiced it or deprived it of any opportunity to pursue a settlement with the EEOC." *Id.* at *14.

The reasoning of the courts in the *Columbia* and *MF* cases squarely applies here to defeat P.B.S.D.'s waiver and estoppel arguments. Arkansas law does not permit the doctrines of waiver and estoppel to broaden the scope of coverage afforded by a policy. *J-McDaniel Construction*, 761 F.3d at 919. ACE specifically requested a copy of the EEOC Charge in its initial coverage

letter to P.B.S.D. It "reserve[d] the right to amend and/or deny coverage based on review of this information," and it reserved "the right to withdraw the defense…based upon the Policy and/or additional facts that may come to [ACE's] attention."[40] P.B.S.D. cannot satisfy its burden to prove prejudice as a result of ACE's coverage position. P.B.S.D. was defended throughout the entirety of Ms. Alexander's lawsuit by counsel of its choosing. No actions by ACE prevented P.B.S.D. from entering into a settlement with Ms. Alexander. The doctrines of waiver and estoppel cannot be raised here to create coverage that never existed in the first place, where P.B.S.D. failed to meet required conditions precedent to coverage set forth in the claims-made and reported requirements of insuring agreement.

## IV.    CONCLUSION

The December 1, 2015 EEOC Charge and the Alexander Complaint both constitute "Claims" made against P.B.S.D. Because those Claims both arise out of the same Wrongful Acts and involve Interrelated Wrongful Acts, they comprise a single Claim deemed to have been first made when the EEOC Charge was filed. Ms. Alexander's Claim was first made during the 2015 Policy, but P.B.S.D. did not report it to ACE until October 3, 2016, more than six months after the 60-day grace reporting period in the 2015 Policy expired on April 1, 2016. A condition precedent to coverage was not satisfied, therefore Ms. Alexander's Claim is not covered under the 2015 Policy.

Ms. Alexander's Claim was "reported" to ACE on October 3, 2016, during the 2016 Policy Period. However, it was not "first made" against P.B.S.D. during the 2016 Policy Period.

---

[40] The *MF* court rejected the insured's waiver and estoppel arguments even where the insurer failed to deliver any coverage letter to the insured. *See also Columbia Ins. Group, Inc. v. Ark. Infrastructure, Inc.*, 2016 WL 6832629, at *4 (E.D. Ark. Nov. 18, 2016) ("The fact that Columbia defended the case does not change the terms of the Policy. Defendants do not cite and the Court is unaware of any Arkansas case holding that an insurer's defense of its insured without a reservation of rights or non-waiver agreement operates as a waiver of any future claim of non-coverage."). ACE, on the other hand, definitively reserved the right to alter its coverage position upon receipt and review of the EEOC Charge.

Instead, it is a Claim "first made" against P.B.S.D. substantially <u>prior</u> to the 2016 Policy even coming into existence. As a result, Ms. Alexander's Claim is not covered by the 2016 Policy.

The reporting provisions of the ACE Policies are unambiguous. The material facts are not in dispute. The law is clear. ACE is entitled to summary judgment and the dismissal of P.B.S.D.'s Complaint with prejudice.

*/s/David B. Vandergriff*
David B. Vandergriff, ABN # 77137
QUATTLEBAUM, GROOMS & TULL PLLC
111 Center Street, Suite 1900
Little Rock, AR 72201
Phone: 501-379-1780
Fax: 501-379-3880
Email: dbv@qgtlaw.com

*Attorneys for Defendant ACE American Insurance Company*

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 25th day of January, 2019, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF System which will send notification of such filing to the following:

David A. Hodges, Esq.
david@hodgeslaw.com

*/s/ David B. Vandergriff*