UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
PINE BLUFF DIVISION

PINE BLUFF SCHOOL DISTRICT,          )
                                     )
          Plaintiff,                 )
                                     )
v.                                   )          Civil Action No.: 5:18-cv-185-KGB
                                     )
ACE AMERICAN INSURANCE               )
COMPANY,                             )
                                     )
          Defendant.                 )
                                     )

### ACE AMERICAN INSURANCE COMPANY'S RESPONSES TO PLAINTIFF'S INTERROGATORIES AND REQUESTS FOR PRODUCTION

ACE American Insurance Company ("ACE"), submits its responses to Plaintiff's

Interrogatories and Requests for Production as follows:

**INTERROGATORY NO. 1**: Please state the name, address and telephone number of each person you intend to call as a witness at the trial of this matter.

**RESPONSE: ACE has not determined which witness(es) it may call in this case other than possibly representatives of Plaintiff, Plaintiff's defense counsel in the Alexander case, a representative from Plaintiff's insurance broker, and an ACE claims representative (identified in the Responses to Interrogatories No. 4 and 5 below). ACE will supplement this response in accordance with the requirements in any applicable Rules of Civil Procedure and any Case Management or Scheduling Order of the Court.**

**INTERROGATORY NO. 2**: Please identify each and every item of real or demonstrative evidence you intend to introduce into evidence at the trial in this case.

**RESPONSE: ACE currently anticipates introducing the exhibits to its Motion for Summary Judgment as evidence to be used at trial. ACE has not yet determined if it will introduce any additional evidence. ACE will supplement this response in accordance with the applicable Rules and any Order of the Court.**

**INTERROGATORY NO. 3**: Have you ever given a statement, either written or recorded, to anyone concerning this lawsuit and, if so, when was the statement given and to whom was it given?

1



PLAINTIFF'S EXHIBIT 1

**RESPONSE: ACE objects on grounds Interrogatory 3 is overly broad, vague, ambiguous, particularly with respect to the term "statement," unduly burdensome, and/or seeks work-product, including mental impressions, of ACE's legal counsel. ACE also objects to the extent this interrogatory seeks information which is beyond the scope of discovery permitted under the Federal Rules of Civil Procedure.**

**Subject to the objections, no ACE representatives have "given a statement...to anyone concerning this lawsuit."**

**INTERROGATORY NO. 4**: State separately the names, addresses and telephone numbers of any and all persons known to you or to anyone acting on your behalf, who have knowledge of the events described in the Complaint.

**RESPONSE: ACE objects on grounds Interrogatory 4 is overly broad, vague, ambiguous, unduly burdensome, and/or seeks work-product, including mental impressions, of ACE's legal counsel. ACE objects to interrogatory 4 to the extent it invades the attorney-client privilege. ACE also objects to the extent this interrogatory seeks information which is beyond the scope of discovery permitted under the Federal Rules of Civil Procedure.**

**Subject to the objections, Whit Kelly was the Claims Specialist who handled the Alexander Claim. He may be contacted through counsel. The other persons who ACE believes have knowledge of the events described in the Complaint include Plaintiff and its employees, agents, representatives, attorneys, insurance brokers, and others who are affiliated with Plaintiff.**

**Other persons with knowledge of the events described in the Complaint may include: underlying plaintiff Celeste Alexander; Alexander's attorney Tequiero Smith, Esq.; Pine Bluff co-defendant Michael Nellums; Nellums' attorney Khayyam Eddings, Esq.; Pine Bluff Superintendent Jeremy Owoh; former Pine Bluff Superintendent T.C. Wallace; Pine Bluff attorneys Cody Kees, Esq., Jay Bequette, and John Walker; and Bancorpsouth Insurance Services employees Bill Birch and Sara Collier. Plaintiff has access to the contact information for each of the persons listed above.**

**INTERROGATORY NO. 5**: Have you, your agents, investigators, or attorneys contacted or spoken to any of the persons named in the answers to these interrogatories? If so, separately set forth the name and address of each such person.

**RESPONSE: ACE objects on grounds Interrogatory 5 is overly broad, vague, ambiguous, unduly burdensome, and/or seeks work-product, including mental impressions, of ACE's legal counsel. ACE also objects to interrogatory 5 on the grounds that it invades the attorney-client privilege. ACE also objects to**

the extent this interrogatory seeks information which is beyond the scope of discovery permitted under the Federal Rules of Civil Procedure.

Subject to the objections, Whit Kelly was the Claims Specialist who handled the Alexander Claim. He communicated with some of the individuals identified in Interrogatory 4 when he was adjusting the Alexander Claim on behalf of ACE. Mr. Kelly received updates from defense counsel regarding the defense of the Alexander Claim. He also requested information relevant to when the Alexander Claim was first made against Plaintiff and when it was reported to ACE, and he issued coverage letters to Plaintiff on behalf of ACE.

Since the time this lawsuit was filed, no ACE representatives have communicated with any individuals not employed by ACE, other than ACE legal counsel.

**INTERROGATORY NO. 6**: Please (a) identify each person whom you expect to call as an expert witness at the trial; (b) state the subject matter on which each such expert witness is expected to testify; (c) state the substance of the facts and opinions to which the expert witness is expected to testify; and (d) give a summary of the grounds for each such opinion.

RESPONSE: ACE does not anticipate calling an expert witness, but has not yet determined if it will call an expert witness in this lawsuit. ACE will supplement this response in accordance with the applicable Rules of Civil Procedure and any Case Management or Scheduling Order of the Court.

**REQUEST FOR PRODUCTION NO. 1**: Please produce and permit inspection and copying of each and every item of real or demonstrative evidence you intend to introduce into evidence at the trial in this case.

RESPONSE: ACE objects on grounds Request 1 is overly broad, vague, ambiguous, unduly burdensome, and/or seeks work-product, including mental impressions, of ACE's legal counsel. ACE also objects to the extent this interrogatory seeks information which is beyond the scope of discovery permitted under the Federal Rules of Civil Procedure.

Subject to the objections, ACE currently anticipates introducing the exhibits to its Motion for Summary Judgment as its evidence to be used at trial. ACE has not yet determined if it will introduce any additional evidence. ACE will supplement this response in accordance with the applicable Rules and any Order of the Court.

**REQUEST FOR PRODUCTION NO. 2**: Please produce and permit inspection and copying of each and every statement of any kind, whether written, recorded, stenographically transcribed, or otherwise, obtained by you, your agents, investigators or anyone acting on your behalf from any of the persons named in these answers to interrogatories.

**RESPONSE:** ACE objects on grounds Request 2 is overly broad, vague, ambiguous, particularly with respect to the term "statement," unduly burdensome, and/or seeks work-product, including mental impressions, of ACE's legal counsel. ACE also objects to the extent this interrogatory seeks information which is beyond the scope of discovery permitted under the Federal Rules of Civil Procedure.

Subject to the objections, neither ACE nor its legal counsel has obtained any "statements" from any witnesses concerning this lawsuit. There are no documents responsive to this Request.

**REQUEST FOR PRODUCTION NO. 3**: Please produce a copy of any correspondence, email, record, or document relating to your involvement, insurance coverage, or hiring of legal counsel or defense of the case of Alexander v. Pine Bluff School District.

**RESPONSE:** ACE objects on grounds Request 3 is overly broad, vague, ambiguous, unduly burdensome, and/or seeks work-product, including mental impressions, of ACE's legal counsel. ACE also objects to the extent this interrogatory seeks information which is beyond the scope of discovery permitted under the Federal Rules of Civil Procedure.

Under Arkansas law, the interpretation of unambiguous policy language presents a question of law for the Court. ACE issued Policy No. G23670471 003 to Plaintiff for the policy period April 2, 2015 to February 1, 2016 (the "2015 Policy") [ECF No. 13-1] and Policy No. G23670471 004 to Plaintiff for the policy period February 1, 2016 to February 1, 2017 (the "2016 Policy") [ECF No. 13-2]. Both Policies are claims-made and reported policies. To satisfy the Insuring Agreement for either Policy, there must be a claim first made against an Insured during the Policy Period, and the Insured must have reported the claim to ACE during the same Policy Period in which the claim was first made, or within sixty (60) days after the end of the Policy Period. Both Policies define "Claim" to include "the issuance of a notice of charge...by or in association with...the Equal Employment Opportunity Commission...." Both Policies also provide that "[a]ll Claims arising out of the same Wrongful Act and all Interrelated Wrongful Acts of the Insureds shall be deemed to be one Claim. Such Claim shall be deemed to be first made on the date the earliest of such Claim is first made, regardless of whether such date is before or during the Policy Period."

Claimant Celeste Alexander filed a charge of discrimination with the Equal Employment Opportunity Commission on December 1, 2015 [ECF No. 13-4]. Plaintiff received notice of and responded to Alexander's EEOC Charge during the 2015 Policy Period [ECF Nos. 13-5, 13-6, 13-7]. Plaintiff did not report Celeste Alexander's Claim to ACE until October 3, 2016 [ECF No. 13-9]. The Insuring Agreement of the 2015 Policy is not satisfied because Plaintiff did not report the Claim in accordance with the requirements of the 2015

Policy. The Insuring Agreement of the 2016 Policy is not satisfied because the Claim was not "first made" against Plaintiff during the 2016 Policy Period. There are no other documents that are relevant to the above Request.

Subject to these objections, ACE will produce with these written responses relevant and non-privileged documents from its claim file for the Celeste Alexander Claim bearing Bates Stamp Nos. 0001-0409. Specifically with respect to "hiring of legal counsel" for Pine Bluff, the 2015 Policy and 2016 Policy both contain an Insured Choice of Defense Counsel Endorsement that grants "[t]he Insured...the right to appoint counsel...." ACE did not hire defense counsel in connection with the Celeste Alexander Claim. Pine Bluff already had retained counsel prior to when it reported the Claim to Ace on October 3, 2016.

Below is a description of the documents that ACE is producing along with these written responses:

- The 2015 Policy.
- The 2016 Policy.
- October 3, 2016 Loss Notice to ACE attaching First Notice of Loss forms, email description of the *Alexander* lawsuit from Pine Bluff's defense counsel, and *Alexander* Complaint.
- October 7, 2016 acknowledgement email from ACE to Pine Bluff.
- October 14, 2016 email from ACE to Pine Bluff acknowledging claim and assigning claim handler.
- October 20, 2016 email from ACE claim handler to Pine Bluff requesting claim information and documentation, including request for Alexander EEOC charge.
- October 24, 2016 email from Pine Bluff defense counsel to ACE claim handler attaching Complaint.
- October 24, 2016 email from Pine Bluff employee to ACE claim handler stating time frame when Alexander was employed.
- October 25, 2016 reservation of rights letter that requests copy of the pre-suit EEOC materials and reserves the right to amend and/or deny coverage and to withdraw from the defense.
- November 22, 2016 email from Pine Bluff defense counsel to ACE claim handler attaching Answer to Complaint.
- January 24, 2017 email from Pine Bluff defense counsel to ACE claim handler transmitting litigation plan.
- March 29, 2017 email and letter from Pine Bluff defense counsel to ACE claim handler discussing depositions.
- April 5, 2017 transmission of Scheduling Order from Pine Bluff defense counsel to ACE claim handler.
- May 17, 2017 transmission of deposition notices from Pine Bluff defense counsel to ACE claim handler.

- May 22, 2017 email communications between Pine Bluff defense counsel and ACE claim handler regarding mediation.
- May 30, 2017 email from Pine Bluff defense counsel to ACE claim handler providing deposition summary.
- July 12, 2017 email communications between Pine Bluff defense counsel and ACE claim handler regarding trial date and general case updates.
- September 19, 2017 email communications between Pine Bluff defense counsel and ACE claim handler regarding depositions and general case updates.
- October 2017 email from Pine Bluff defense counsel to ACE claim handler summarizing depositions and providing case update.
- October 28, 2017 email communications between Pine Bluff defense counsel and ACE claim handler regarding mediation.
- November 20, 2017 email transmission of Pine Bluff defense counsel's litigation report to ACE claim handler.
- November 22, 2017 email communications between Pine Bluff defense counsel and ACE claim handler wherein ACE claim handler requests "a copy of Alexander's grievance filed in June 2015 and a copy of the initial EEOC charge because ACE "never received a copy" from Pine Bluff.
- Copies of the June 3, 2015 grievance and the December 1, 2015 EEOC Charge Alexander filed against Pine Bluff and/or Michael Nellums.
- November 27, 2017 email exchanges between Pine Bluff defense counsel and ACE claim handler regarding other documents from EEOC proceedings.
- Email exchange between ACE claim handler and Pine Bluff insurance broker BancorpSouth regarding Pine Bluff's failure to provide requested documents and ACE's request for additional EEOC-related documents.
- December 15, 2017 email from Pine Bluff defense counsel to ACE claim handler transmitting Alexander's settlement demand.
- December 18, 2017 email exchange between Pine Bluff counsel and ACE claim handler regarding ACE's request for documents and regarding mediation.
- January 9, 2018 email exchange wherein Pine Bluff's defense counsel transmits the Alexander EEOC file to ACE for the first time.
- Copy of Alexander EEOC claim file, which includes Pine Bluff's January 21, 2016 EEOC Mediation Statement, January 28, 2016 EEOC Position Statement, and January 29, 2016 Amended/Substituted Response to EEOC's Request for Information.
- February 14, 2018 coverage letters to Pine Bluff and to Michael Nellums communicating ACE's updated coverage position.

**REQUEST FOR PRODUCTION NO. 4**: Please produce a copy of any insurance policy and declaration page of the policy that you or any subsidiary have ever held for Pine Bluff School District.

**RESPONSE: ACE objects on grounds Request 4 is overly broad, vague, ambiguous, unduly burdensome, and/or seeks work-product, including mental impressions, of ACE's legal counsel. ACE also objects to the extent this interrogatory seeks information which is beyond the scope of discovery permitted under the Federal Rules of Civil Procedure.**

**Subject to objections, the insurance policies identified in ACE's response to Request 3 are the only two policies that are relevant in this lawsuit. Those insurance policies are ECF Nos. 13-1 and 13-2 on the Court's docket. Copies of those policies also are produced herewith bearing Bates Stamp Nos. 0001-0097.**

## VERIFICATION

I, Whit Kelly, am a Claims Specialist at Chubb, the ultimate corporate parent of ACE American Insurance Company. I am the agent of ACE for the purpose of answering Plaintiff's First Set of Interrogatories and Requests for Production of Documents. I have reviewed the foregoing Responses to Plaintiff's First Set of Interrogatories and Requests for Production of Documents ("Responses"). The Responses were prepared in reliance upon the records kept in the ordinary course of business by ACE and which are currently in ACE's possession. These Responses are subject to inadvertent or undiscovered errors and are necessarily limited by the records and information still in existence, presently recollected, and thus far discovered. I reserve the right to supplement the Responses if it appears that omissions or errors have been made or that more accurate or additional information is available. Subject to these limitations, I declare under penalty of perjury that the foregoing Responses are true to the best of my knowledge and belief.

_____

Whit Kelly

David B. Vandergriff, Ark. Bar No. 77137
QUATTLEBAUM, GROOMS & TULL PLLC
111 Center Street, Suite 1900
Little Rock, AR 72201
Phone: 501-379-1780
Fax: 501-379-3880
Email: dbv@qgtlaw.com

*Attorneys for Defendant ACE American
Insurance Company*

## STATEMENT OF SERVICE

I, David B. Vandergriff, hereby state that on this 18th day of April, 2019 I served a true and correct copy of the foregoing on opposing counsel by email and 1st class mail with sufficient postage thereon, prepaid, as follows:

David A. Hodges, Esq.
Attorney at Law
212 Center Street, Fifth Floor
Little Rock, Arkansas 72201
Email: david@hodgeslaw.com

From:Kelly, Whit[Whit.Kelly@Chubb.com]
Sent:20 October 2016 13:48:36
To:'drmichaelrobinson2004@gmail.com'
Cc:'Bill Birch'; 'Sara Collier'; Cody Kees
Subject:PINE BLUFF SCHOOL DISTRICT/CELESTE ALEXANDER/JY16J0554015
Attachments:image001.png

Mr. Robinson,


I am the claims handler assigned to the above referenced matter. Please respond to the following questions at your earliest convenience.


1.      Please provide me with a copy of the EEOC charge filed by Ms. Alexander.

2.      Did the Insured receive any written demands, complaints, charges, correspondence, etc. from Alexander prior to the EEOC charge or lawsuit?

a.      Specifically, Alexander alleges that she reported the alleged sexual harassment through a grievance process in June 2015. Was that complaint in writing? If so, please provide me with copies of any documents relating to the grievance process.


3.       What was Alexanders annual salary at the time of her termination?

a.      Did the Insured offer her any severance when she was laid off?


4.      Is the Insured interested in the early resolution of this matter, including potential settlement discussions or mediation at some point?


5.      Chubb consents to the retention of Cody Kees to represent the Insured in this matter. Pending a review of coverage for this matter, we need to assign another attorney to represent Mr. Nellums individually. Please contact me to discuss this.

If you have any questions or concerns, feel free to contact me.


Best,


Chubb Logo

Whit Kelly, Esq.
Claims Specialist, North American Financial Lines Claims-EPL

11575 Great Oaks Way, Suite #200

Alpharetta, GA 30022
O 678-795-4292
E whit.kelly@chubb.com <mailto:whit.kelly@chubb.com>

ACE and Chubb are now one.

## PRELIMINARY LITIGATION REPORT AND EARLY RESOLUTION

**Date:** January 24, 2017

**To:** Whit Kelly

**From:** Cody Kees

**Re:** Celeste Alexander v. Pine Bluff School District and Michael Nellums

**Insured:** Pine Bluff School District

**Claimant:** Celeste Alexander

**Claim Number:** JY16J0554015

**Venue:** United States District for the Eastern District of Arkansas, Pine Bluff Division

**Case Number:** 5:16-cv-300-BSM

**Date of Adverse Action:** Plaintiff alleges sexual harassment against her by Defendant Nellums began in or around November, 2014. In or around April of 2015, Plaintiff was notified her contract was not being renewed with the District because of funding cuts. Plaintiff filed an EEOC charge on December 1, 2015.

### I.  INSTANT OVERVIEW.

A. **Parties Involved:**  Celeste Alexander, Plaintiff; Pine Bluff School District; Dr. Michael Nellums.

B. **Venue (Court or Administrative body where matter is pending, including contact information. Is venue a pro-claimant or defense oriented Location):** United States District Court, Eastern District of Arkansas, Pine Bluff Division. The venue is relatively pro-plaintiff.

C. **Scheduling Order (Obtain, identify all pending or projected dates/deadlines):** No scheduling order has been entered. Once all defendants file an answer, the court will enter an initial scheduling order.

D. **Position Statement (Completed? To be Done? By who? When?):** The parties have previously participated in the EEOC process.

E. **Answer or Motion to Dismiss (If yes, when and please provide):** Answer filed on November 22, 2016.

F. **Judge/Investigator (Identify, contact information, any prior interaction):** Honorable Brian Miller.

G. **Information regarding Plaintiff's counsel (Identify, contact information, any prior interactions/other claims?):** TK Smith. No prior involvement with Attorney Smith. He/she has an Arkansas bar number, but appears to have an address in Atlanta, Georgia.

H. **Settlement Demand (If none, plan and timeline for obtaining):** None.

I. **Defense Counsel (Identify Primary Defense Lawyer, Contact information, and Confirmation that there is no conflict of interest with your law firm relating to any of the Ace Group of Insurance or Reinsurance Companies.):** Cody Kees and Jay Bequette for Pine Bluff School District. Missy Duke for Dr. Michael Nellums. No conflicts. Undersigned counsel previously reported a conflict in representation of Dr. Nellums, as he has open claims against the District, and separate counsel was assigned to his defense.

J. **Please confirm 1) whether claimant/plaintiff is Medicare eligible and if so, 2) whether claimant/plaintiff if a Medicare beneficiary. This could delay or otherwise affect ACE's ability to fund a settlement due to an insurer's Medicare reporting obligations.** Unknown at this time.

II.   **CASE SUMMARY.**

A.   **Procedural Background:** Lawsuit filed on September 22, 2016. Answer filed on November 22, 2016. EEOC Charge filed on December 1, 2015, with a right to sue letter on June 22, 2016.

B.   **Factual Summary (Brief description of events giving rise to Claim, key witnesses, key documents, etc.):** Plaintiff brings suit pursuant to 28 U.S.C. § 1331 and 42 U.S.C. § 200 and the Arkansas Civil Rights Act, alleging sexual harassment and retaliation. Plaintiff claims she began to undergo sexual harassment by Defendant Nellums in or around November of 2014, which ultimately led to her position with the District being terminated at the end of the 2014-2015 school year. Plaintiff's claims of sexual harassment against Dr. Nellums were investigated by both the Pine Bluff School District and the Arkansas Department of Education, with both entities unable to substantiate Plaintiff's claims. The District has presented non-discriminatory reasons for non-renewing Plaintiff's contract, as she was under a contract with Title I funds. Title I funds were no longer available, and the position was eliminated in its entirety.

C.   **Critical Legal Issues (This need not include case law or citations)**
   a. **Briefly summarize each cause of action**
      i. Violation of Constitutional Rights: Plaintiff claims Dr. Nellums, as an actor for the District, sexually harassed her in violation of her Constitutional rights, and the District retaliated against her by eliminating her position.
      ii. Violation of Arkansas Civil Rights.

2

      **b. Any liability for each cause of action?** Potentially.  However, at least initially, we believe the claims are defensible.

      **c. Any defenses to each cause of action?** Yes

          i. Violation of Constitutional Rights: The District had non-discriminatory reasons for non-renewing Plaintiff's contract.  She was under a contract, paid for with Title I funds.  Title I funds were no longer available and the position was eliminated in its entirety.

          ii. Violation of State Law Claims: See above.

**D.**     **Issues of Concern (Identify any potential problems/difficulty that may be encountered in the defense of the case):** None at this time.

**E.**     **Damages (Should include the maximum potential damages which can be awarded for each separate cause of action.  With regard to compensatory damages we are interested in the general damages, such as pain and suffering, which are likely to be awarded as well as the special damages (economic damages such as back pay, front pay, etc.).  Please also include salary information, whether any severance offers were made, and any non-monetary settlement demands.):** Plaintiff has alleged compensatory and punitive damages.

**F.**     **Exposure (Based on current understanding, is liability finding more likely than not?  What is the percentage of a defense verdict on each cause of action?  What is the probable range of damage award?  Attorney Fee Award?** Based on initial facts known to undersigned counsel, including independent investigations by both the District and the Arkansas Department of Education, we believe the District has a strong defense.

**G.**     **Punitive Damages Claim (Yes or No?  Applicable Statute or Case law):** A punitive damage claim has been raised.

**H.**     **Necessary Discovery (Identify essential discovery, explain why necessary and include estimated cost) (Please identify any significant discovery issues in the matter.):** After the court has entered a scheduling order, we will need to propound initial discovery.  The deposition of Ms. Alexander will be needed, and the case will be ripe for a motion for summary judgment.

**I.**     **Motion Practice (Are there grounds for filing a dispositive motion?  What are the grounds for filing the motion?  What is the likelihood of success on the merits?)** Yes.  A motion for summary judgment should be filed after initial discovery is completed based on the District's legal defenses (see above).

**J.**     **Anticipate Defense Costs (Projected Budget for Defending Case):** a budget will be submitted in the near future.

      **a. Administrative Level:**

      **b. Initial Investigation/Evaluation:**

      **c. Summary Judgment:**

      **d. Trial:**

ACE (PB) 0191

III.        SETTLEMENT OPPORTUNITIES AND EARLY RESOLUTION

Please provide analysis and recommendations regarding early settlement.  Counsel should provide an explanation as to why the claim may or may not be a candidate for early resolution.  Counsel should outline a strategy for early resolution.  Counsel should make a recommendation regarding settlement value based on current knowledge of liability and damage exposure and likely costs of defense.

Based on the District's defenses, we do not recommend settlement at this time.

ACE (PB) 0192

FROM: Cody Kees
TO: Kelly, Whit
CC: Khayyam M. Eddings; Jay Bequette
BCC:
SUBJECT: RE: Plaintiff Alexander's Revised Deposition Notices
Whit,

I write with a quick update on this matter during a 3 day marathon of depositions this week.  I believe both the District and Nellums have met the $25k SIR, for both, so this case is now completely in Chubb's hands.

PI's counsel completed his 9th deposition of District employees yesterday and takes Principal Nellums depo today and one last PBSD corporate rep.  That would be 11 total for PI.  This was unnecessary discovery to beef up his fee claim.

We are deposing Plaintiff tomorrow and from there we may have 2 or 3 fact witnesses that we need to be deposed just to solidify their testimony, as there have been repeated names mentioned by OA, indicating these folks have harmful information.   Again, it may just be OA posturing, but we will work to schedule these remaining depos in one day to save cost.

Yesterday was a good day for the defense.  We solidified our position that PI was on a one year contract (well-known to her when she accepted employment) pending continued grant funding that was not available for the 15-16 school year.  Furthermore, our people reiterated past testimony that PI's job was no longer needed because the math lab she ran was closed due to state requirements regarding student instructional time.  Closing PI's math lab was not retaliation, it was required to meet state standards and we keep PI employed trying in earnest to find her math-related duties, to which she always objected.   I think we can articulate the legitimate, non-discriminatory reasons that PI was not awarded a continued contract, which all occurred before reports of

ACE (PB) 0267

sexual harassment by Nellums, all which were unknown by the ultimate decision maker's, as Nellums does not hire or fire.

At the same time, as we have discussed, the District did not follow all its policies to a T, which will be Pl's main rebuttal to our MSJ.

MSJ's are being prepared and will be filed by December 4th.  From there the complete briefing of the MSJ's should be complete by January and as we discussed before, I think mediation with a magistrate judge ( the one assigned is quite good), would be helpful.  At the very least it may help OA see his view of this case remains inflated.  Trial is in April, so mediation in Jan- February, even it not successful, could give us an opportunity for reasonable resolution before trial.

My thoughts remain that the case is defensible at trial, but as we have discussed, and as you know based on your case load from this insured, the insured can be a wild card, although our folks have been impressive in depositions.  At the same time, I could never see a jury awarding damages and a judge then awarding fees (as fees are recoverable) anywhere close to the policy limits OA has presently demanded.

We will keep you advised.  After Pl's deposition I will work with Khayyam to get you a financial evaluation of potential exposure as I know you will need to roundtable this case.

Thanks, Whit.

From: Cody Kees

ACE (PB) 0268

Sent: Tuesday, September 19, 2017 2:18 PM
To: 'Kelly, Whit' <Whit.Kelly@Chubb.com>
Subject: RE: Plaintiff Alexander's Revised Deposition Notices

Hey Whit,

We have the plaintiff's deposition scheduled for October, still working
on nailing down an exact date.  The plaintiff's attorney also has about
3 more staff members he wants to depose.  I anticipate he will solicit a
demand at that time.

From: Kelly, Whit [mailto:Whit.Kelly@Chubb.com]
Sent: Tuesday, September 19, 2017 10:20 AM
To: Cody Kees <ckees@bbpalaw.com>
Subject: RE: Plaintiff Alexander's Revised Deposition Notices

Cody,

I am following up to see if there have been any developments to this
matter. Have we deposed plaintiff or scheduled her deposition?

Also, have we been able to solicit a demand from plaintiff?

Best,

Chubb Logo

ACE (PB) 0269

Whit Kelly, Esq.

Claims Specialist, North American Financial Lines Claims-EPL

11575 Great Oaks Way, Suite #200

Alpharetta, GA 30022

O 678-795-4292

E whit.kelly@chubb.com <mailto:whit.kelly@chubb.com>

ACE and Chubb are now one.

From: Cody Kees [mailto:ckees@bbpalaw.com]
Sent: Wednesday, July 12, 2017 2:29 PM
To: Kelly, Whit
Subject: RE: Plaintiff Alexander's Revised Deposition Notices

We received a trial day of April 2, 2018 and a MSJ deadline of December
4.  We have a request out for all of Plaintiff's medical records and
then we will be in a good position to take her deposition.  There has
been no discussion of formal mediation, but I am sure the court will
provide mediation prior to trial.

From: Kelly, Whit [mailto:Whit.Kelly@Chubb.com]
Sent: Wednesday, July 12, 2017 7:45 AM
To: Cody Kees <ckees@bbpalaw.com>
Subject: RE: Plaintiff Alexander's Revised Deposition Notices

Cody,

Following up to see if there have been any developments to this matter?
Have there been any further discussions regarding mediation or

settlement?


Best,


Chubb Logo

Whit Kelly, Esq.
Claims Specialist, North American Financial Lines Claims-EPL

11575 Great Oaks Way, Suite #200

Alpharetta, GA 30022
O 678-795-4292
E whit.kelly@chubb.com <mailto:whit.kelly@chubb.com>

ACE and Chubb are now one.


From: Kelly, Whit
Sent: Tuesday, May 30, 2017 4:47 PM
To: 'Cody Kees'
Subject: RE: Plaintiff Alexander's Revised Deposition Notices


Cody,


Thank you for this update/analysis.


Can you provide me with a total for defense costs incurred thus far and
a projected budget through trial?

Best,


Chubb Logo

Whit Kelly, Esq.
Claims Specialist, North American Financial Lines Claims-EPL

11575 Great Oaks Way, Suite #200

Alpharetta, GA 30022
O 678-795-4292
E whit.kelly@chubb.com <mailto:whit.kelly@chubb.com>

ACE and Chubb are now one.



From: Cody Kees [mailto:ckees@bbpalaw.com]
Sent: Tuesday, May 30, 2017 1:50 PM
To: Kelly, Whit
Subject: RE: Plaintiff Alexander's Revised Deposition Notices



Whit,



I am leaving for a week but wanted to get you a quick update on this
case before I left and I attach a timeline of events I created.  That
timeline is probably only helpful to me since I have reviewed the
documents, there is a lot of paper being generated.



The plaintiff's attorney took the deposition of Cheryl Caldwell (math
coach), Cheryl Hatley (chief of staff) and Dr. Reginald Wilson (HS
assist Principal) last week.  I anticipate we will take plaintiff's
deposition in the late summer after we have received her medical

ACE (PB) 0272

records.  To date she will not provide us a medical authorization and it
appears we are going to have to file a motion to compel.  Plaintiff is
very involved in her case, attending all the depositions.  She kept
copious notes during her one school year employment with the District
(2014-2015) and kept recordings, as if she was preparing for litigation.
Plaintiff's counsel has indicated he has another round of depos he wants
to conduct.  He is spending a lot of money to prosecute this case.

The plaintiff is undertaking exhaustive discovery over a case that
appears to have strong liability defenses and where plaintiff mitigated
her damages.  After listening to the testimony to date it appears
plaintiff's theory is that when she denied Dr. Nellum's (her principal)
sexual advances he then undertook a course of action to cause her job
hardship and ultimately made her part of the District's reduction in
force (RIF) in April 2015, meaning she was not re-issued a new contract
for 2015-2016.  As part of the RIF she had recall rights for up to 2
years for any position she was certified, which is all secondary math,
but the District never recalled her.  She argues this was in retaliation
for reporting sexual harassment against Nellums.  However, the testimony
of witnesses is that Plaintiff was a poor employee and she can actually
reapply to the District at any time.  Her mother works for the District
and we are not sure why she has not reapplied if she is interested,
other than to beef up her lawsuit.  There is also the looming defense
position that she did not report any sexual harassment until June of
2015, after the RIF had been conducted and her contract had expired. So,
based on the chronology it could not have possibly been in retaliation.
The District did not follow the RIF policy in that we arguably should
have sought her out for future employment after April of 2015, although
nothing was stopping her from applying.  In fact, she is currently back
on the campus, but it is through her position at the neighboring
college.   We have solid testimony that her position as the math lab
coordinator was ended due to finances and other reasons not related to
her.   There is evidence we offered her a calculus position at the start
of the 2014-2015 school year and she turned it down.  She only wanted to
be the math lab coordinator.  Still, under our policy she had recall
rights after April of 2015.

Employment records indicate she was out of work for about a full year,

ACE (PB) 0273

and her PB job paid roughly $50,000.

From: Kelly, Whit [mailto:Whit.Kelly@Chubb.com]
Sent: Monday, May 22, 2017 1:38 PM
To: Cody Kees <ckees@bbpalaw.com>
Subject: RE: Plaintiff Alexander's Revised Deposition Notices

Cody,

I highly doubt this is a "policy limits" case. However, we are
interested in exploring settlement based on your assessment of the case.
If you provide me with a damages/liability report and budget after the
plaintiff's deposition, it would be much appreciated.

Best,

Chubb Logo

Whit Kelly, Esq.
Claims Specialist, North American Financial Lines Claims-EPL

11575 Great Oaks Way, Suite #200

Alpharetta, GA 30022
O 678-795-4292
E whit.kelly@chubb.com <mailto:whit.kelly@chubb.com>

ACE and Chubb are now one.

ACE (PB) 0274

From: Cody Kees [mailto:ckees@bbpalaw.com]
Sent: Monday, May 22, 2017 10:53 AM
To: Kelly, Whit
Subject: RE: Plaintiff Alexander's Revised Deposition Notices

We have never received a written demand, but her lawyer has indicated he
thinks this is a policy limits case.  That is likely just grandstanding,
but he still has an inflated view of the case at this early stage.  I
think we need to get her deposition taken and evaluate the case from
there.  Otherwise, I don't think we could accomplish a reasonable
mediation at this point.

From: Kelly, Whit [mailto:Whit.Kelly@Chubb.com]
Sent: Monday, May 22, 2017 9:16 AM
To: Cody Kees <ckees@bbpalaw.com>
Subject: RE: Plaintiff Alexander's Revised Deposition Notices

Cody,

Have we received a demand from Alexander? Could we possibly push for
mediation?

Best,

Chubb Logo

Whit Kelly, Esq.
Claims Specialist, North American Financial Lines Claims-EPL

11575 Great Oaks Way, Suite #200

Alpharetta, GA 30022
O 678-795-4292
E whit.kelly@chubb.com <mailto:whit.kelly@chubb.com>

ACE and Chubb are now one.


From: Cody Kees [mailto:ckees@bbpalaw.com]
Sent: Wednesday, May 17, 2017 2:33 PM
To: Kelly, Whit
Subject: FW: Plaintiff Alexander's Revised Deposition Notices


PINE BLUFF SCHOOL DISTRICT/CELESTE ALEXANDER/JY16J0554015


Whit,


By way of update, Plaintiff is taking 4 additional depositions next
week.   Plaintiff plans to do exhaustive discovery.


From: Beth A. Barrett [mailto:beth@justiceatwork.com]
Sent: Wednesday, May 17, 2017 10:25 AM
To: Cody Kees <ckees@bbpalaw.com>; keddings@fridayfirm.com
<mailto:keddings@fridayfirm.com>
Cc: TK Smith <tksmith@justiceatwork.com>
Subject: Plaintiff Alexander's Revised Deposition Notices


Counselors,

Attached please find Plaintiff Alexander's revised deposition notices

ACE (PB) 0276

for the following:

1.Continuing 30(b)(6)
2.Cheryl Hatley
3.Cheryl Caldwell
4.Dr. Reginald Wilson.

Please contact me with any questions or concerns.

Thank you,

Beth


Beth A. Barrett

Litigation Paralegal



cid:image002.jpg@01D14E0F.360A84B0


1100 Peachtree Street, NE, Suite 500

Atlanta, Georgia 30309

Telephone:  404-214-0120

Cell: 440-371-4962

Facsimile:   404-214-0125

Email:  Beth@JusticeAtWork.com <mailto:Beth@JusticeAtWork.com>


Follow us on Facebook <https://www.facebook.com/BarrettandFarahany>  *

ACE (PB) 0277

Twitter <https://twitter.com/BarrettFarahany>  * LinkedIn
<http://www.linkedin.com/company/barrett-&-farahany-llp?trk=hb_tab_compy
_id_824652>  * Atlanta Employment Law Blog
<http://www.barrettandfarahany.com/blog/>

Note: In the absence of an engagement agreement or contract of
representation, no information contained in this email constitutes an
undertaking of representation or an expression of a binding legal
opinion.

———————————————————————

CONFIDENTIALITY NOTE: The information contained in this message and all
attachments is privileged and confidential information intended only for
the use of the individual or entity named above. If you are not the
intended recipient, any review, use, distribution, copying or forwarding
of this message is strictly prohibited. If you have received this
message in error, please immediately notify us by email at A
<mailto:Beth@JusticeAtWork.com>  and/or call the sender at (404)
214-0120 and please delete the original and all copies of the message.

This email (including any attachments) is intended for the designated
recipient(s) only, and may be confidential, non-public, proprietary,
and/or protected by the attorney-client or other privilege. Unauthorized
reading, distribution, copying or other use of this communication is
prohibited and may be unlawful. Receipt by anyone other than the
intended recipient(s) should not be deemed a waiver of any privilege or
protection. If you are not the intended recipient or if you believe that
you have received this email in error, please notify the sender
immediately and delete all copies from your computer system without
reading, saving, printing, forwarding or using it in any manner.
Although it has been checked for viruses and other malicious software

ACE (PB) 0278

("malware"), we do not warrant, represent or guarantee in any way that this communication is free of malware or potentially damaging defects. All liability for any actual or alleged loss, damage, or injury arising out of or resulting in any way from the receipt, opening or use of this email is expressly disclaimed.

This email (including any attachments) is intended for the designated recipient(s) only, and may be confidential, non-public, proprietary, and/or protected by the attorney-client or other privilege. Unauthorized reading, distribution, copying or other use of this communication is prohibited and may be unlawful. Receipt by anyone other than the intended recipient(s) should not be deemed a waiver of any privilege or protection. If you are not the intended recipient or if you believe that you have received this email in error, please notify the sender immediately and delete all copies from your computer system without reading, saving, printing, forwarding or using it in any manner. Although it has been checked for viruses and other malicious software ("malware"), we do not warrant, represent or guarantee in any way that this communication is free of malware or potentially damaging defects. All liability for any actual or alleged loss, damage, or injury arising out of or resulting in any way from the receipt, opening or use of this email is expressly disclaimed.

This email (including any attachments) is intended for the designated recipient(s) only, and may be confidential, non-public, proprietary, and/or protected by the attorney-client or other privilege. Unauthorized reading, distribution, copying or other use of this communication is prohibited and may be unlawful. Receipt by anyone other than the intended recipient(s) should not be deemed a waiver of any privilege or protection. If you are not the intended recipient or if you believe that you have received this email in error, please notify the sender immediately and delete all copies from your computer system without reading, saving, printing, forwarding or using it in any manner. Although it has been checked for viruses and other malicious software ("malware"), we do not warrant, represent or guarantee in any way that this communication is free of malware or potentially damaging defects.

All liability for any actual or alleged loss, damage, or injury arising
out of or resulting in any way from the receipt, opening or use of this
email is expressly disclaimed.

---

This email (including any attachments) is intended for the designated
recipient(s) only, and may be confidential, non-public, proprietary,
and/or protected by the attorney-client or other privilege. Unauthorized
reading, distribution, copying or other use of this communication is
prohibited and may be unlawful. Receipt by anyone other than the
intended recipient(s) should not be deemed a waiver of any privilege or
protection. If you are not the intended recipient or if you believe that
you have received this email in error, please notify the sender
immediately and delete all copies from your computer system without
reading, saving, printing, forwarding or using it in any manner.
Although it has been checked for viruses and other malicious software
("malware"), we do not warrant, represent or guarantee in any way that
this communication is free of malware or potentially damaging defects.
All liability for any actual or alleged loss, damage, or injury arising
out of or resulting in any way from the receipt, opening or use of this
email is expressly disclaimed.

---

ACE (PB) 0280

**PRELIMINARY LITIGATION REPORT AND EARLY RESOLUTION**

**Date:**              November 20, 2017

**To:**                Whit Kelly

**From:**              Cody Kees

**Re:**                Case assessment prior to mediation

**Insured:**           Pine Bluff School District and Michael Nellums

**Claimant:**          Celeste Alexander

**Claim Number:** JY16J0554015

**Venue:**             United States District Court – Eastern District of Arkansas

**Case Number:**  Civil Action 5:16-CV-00300-BSM

**Date of Termination:** Plaintiff's contract was non-renewed.  Contract had a contract end date of June 2, 2015.

   I.  **INSTANT OVERVIEW.**

      A.  **Parties Involved**

> Celeste Alexander, Plaintiff
> Michael Nellums
> Pine Bluff School District, Defendants

      B.  **Venue**

>     The case is filed in the United States District Court for the Eastern District of Arkansas, Pine Bluff Division.  Pine Bluff Division draws jurors from nine (9) counties, including: Arkansas, Chicot, Cleveland, Dallas, Desha, Drew, Grant, Jefferson and Lincoln.  Of all the divisions within the Eastern District, the Pine Bluff Division is the most Plaintiff-friendly and most likely to return a higher monetary verdict.  However, since a school district is a named defendant, there could be some trepidation by jurors to find a large award against a school.

ACE (PB) 0291

**C. Scheduling Order**

|  |  |
|---|---|
| Trial Date: | April 2, 2018 |
| Discovery Deadline: | November 8, 2017 |
| MSJ Deadline: | December 4, 2017 |
| Mediation Deadline: | December 14, 2017 |

**D. Position Statement**

Completed

**E. Answer or Motion to Dismiss**

Answers have been filed and Motions for Summary Judgment will be filed prior to the December 4, 2017 deadline.

**F. Judge/Investigator**

Honorable Brian Miller. Judge Miller is a good judge and will rule impartially from the bench.

**G. Information regarding Plaintiff's counsel**

T.K. Smith. Mr. Smith practices with a large plaintiffs employment firm in Atlanta, Georgia. Mr. Smith, while young, has significant litigation experience, including trial work. Plaintiff's counsel has been very aggressive in his prosecution of this case, and there is no reason to believe he would not try the case if necessary to obtain the amount he believes the case is worth.

**H. Settlement Demand**

Presently, Plaintiff's counsel has demanded policy limits of one million dollars ($1,000,000.00). After the completion of all discovery, Plaintiff's counsel stated he would provide an updated demand, which has yet to be received. Still, it is likely he will be demanding in excess of five hundred-thousand dollars ($500,000.00) at mediation.

**I. Defense Counsel**

Pine Bluff School District
Cody Kees and Jay Bequette
Bequette & Billingsley, P.A.
425 West Capitol Avenue, Suite 3200
Little Rock, AR 72201


Dr. Michael Nellums

ACE (PB) 0292

Khayyam M. Eddings
Friday, Eldredge & Clark, LLP
400 W. Capitol Avenue, Suite 2000
Little Rock, AR 72201

## II.   CASE SUMMARY.

### A.   Procedural Background

Plaintiff filed a claim with the EEOC on December 1, 2015, and was given a Right to Sue letter on June 25, 2016.  She soon thereafter filed the present federal complaint.

### B.   Factual Summary

Prior to Plaintiff's employment with the Pine Bluff School District, she was employed at the University of Arkansas at Pine Bluff ("UAPB") in a math instructor position.  She filed a formal complaint against her supervisor on August 25, 2014, claiming retaliation.  Essentially, she claimed that her supervisor was implementing policies which were in violation of state law, and when she brought this to his attention, he then began a scheme of events which she felt was retaliatory.  This led to her resignation from UAPB, where she had worked for over six years.

These events are significant as they indicate Plaintiff has a history of filing workplace grievances and could damage her credibility.

On September 11, 2014, Plaintiff filed an application with the Pine Bluff School District to be a secondary math teacher.  Principal Nellums completed a recommendation form for her employment to be the coordinator of a newly created math lab.  Around this same time, Plaintiff received a call from Principal Don Booth of Jack Robey Junior High of the Pine Bluff School District regarding Plaintiff's possible interest in a math position at the junior high.  Plaintiff never returned Mr. Booth's call, but signed a recommendation of employment for the math lab coordinator position at the high school on September 18, 2014, with a contract start date of September 19, 2014.

On September 22, 2014, Plaintiff declined the District's offer of employment because it included teaching one calculus class, for which Plaintiff claims she was not qualified to teach.  Notably, Plaintiff has a Ph.D. in mathematics from Pepperdine University.  Principal Nellums made changes to Plaintiff's schedule, allowing her to only have duties over the math lab, and she signed her contract on September 24, 2014.  This fact is significant as it is clear evidence Plaintiff was only interested in employment as a math lab coordinator, not as a class instructor.

ACE (PB) 0293

Plaintiff's contract has been a major focal point of this entire lawsuit. The contract clearly states that it is for one year only, pending continuation of Title I grant funding. Plaintiff disagrees the contract was for one year, but claims that the contract conditions were added to the contract after she signed it. Essentially, Plaintiff claims that she signed a contract and that the conditions of employment, including the condition that the contract was only for one year pending continuation of Title I funding, were added afterwards. To support this claim that the contract terms were not known to her when she signed the contract, Plaintiff has relied on her testimony, as well as a copy of the contract which had a misspelling, compared to another copy of the contract which did not contain the same error. To date, it is not clear why a copy of the contract exists which has a misspelling, which does tend to suggest there were multiple contracts. However, the contract was printed in "triplicate" on carbon paper. Its contents were entered onto the contract with a typewriter. A likely explanation could be that the alignment of the contents of contract were misaligned when they bled over from one carbon copied page to the next. Nonetheless, there is no evidence that the contract was altered after Plaintiff signed it. Furthermore, there has been testimony from multiple witnesses that it was well-known to Plaintiff that the position was only for one (1) year, pending continuation of Title I funding. The fact that the position was funded through Title I is important, as Title I funding fluctuates yearly, whereas operational funds do not.

Principal Nellums testified zealously that Ms. Alexander knew that the position was only for one (1) year and this was explained to her. Bernice Martin-Russell, the District's federal programs director at the time of Plaintiff's hire, also testified that Plaintiff was aware that the position was only for one year and the contract may not be renewed, as Plaintiff was not being paid from state funds, which are guaranteed every year, but Title I funds, which vary annually. This was the same testimony provided by Alicia Smith, the Systemic Improvement Officer for the District, who also explained that Title I funds vary from year to year, and this is why Plaintiff's contract was not guaranteed for renewal.

Bernice Martin-Russell further testified that Title I funds for the 2015-2016 year needed to be diverted to salaries for school improvement specialist, which was a requirement by the state due to the District's academic distress. This appears to be very credible evidence on the part of the District that Title I funds needed to be utilized in other areas for the 2015-2016 school year as opposed to the Plaintiff's position. Moreover, there is testimony from multiple individuals that the math lab, for which Plaintiff was hired to coordinate and run, simply did not work and was closed just months after it began due to violations of Arkansas instructional guidelines, or "seat time."

Tiffani Bone, the Assistant Superintendent for Learning Services during Plaintiff's employ with the District, testified that the math lab

ACE (PB) 0294

essentially violated state law, as it "pulled" students from core math classes, thereby violating laws and regulations requiring a certain amount of math instruction for every student, also known as "seat time." The math lab was designed to be supplemental instruction, and Plaintiff was pulling students from their regular math classes for instruction during that course time, a violation of the "seat time" law. Ms. Bone advised the high school that the math lab could not be used for this purpose. There were multiple other District employees who testified to the same.

Documentation to Pine Bluff High School math teachers on January 23, 2015, officially stated that the lab was suspended. Thereafter, Plaintiff was given other duties to essentially fill her time. She would "push in" to other math classes and help the teachers with instructional learning. Plaintiff was very defiant about this role, as she felt it was a job for a paraprofessional, not someone with a doctoral degree. There is substantial documentation throughout the spring semester of 2015 where Plaintiff was essentially insubordinate, or at the very minimum, not a team player, as the high school attempted to find something for her to do.

In April of 2015, Plaintiff was part of a large reduction-in-force ("RIF") that included over sixty employees. Unfortunately, the RIF was released to the newspaper before the impacted employees were given notice. Nonetheless, Plaintiff was given notice on April 23, 2014, that she was being placed in the RIF and that her contract would not be renewed. Plaintiff's counsel has made a large issue of the fact that Plaintiff was RIF'd, which is different than the contract terms which stated that she was only a one-year contract. Best practice would have been for the District to have simply non-renewed Plaintiff's contract, and not placed her in the RIF, which was unnecessary, as she was afforded recall rights as a RIF'd employee. The District really had no reason to RIF Plaintiff since she was only on a one-year contract, but nonetheless, she was placed in the RIF, and thereby given recall rights.

Pursuant to the District's RIF policy, Plaintiff had recall rights to any position for which she was qualified for up to two (2) calendar years. This would include any math position, as Plaintiff has full math certification. It is not in dispute that the Pine Bluff School District has never "recalled" Plaintiff to any position since the RIF in 2015. At the same time, Plaintiff admitted that she has never applied for any position with the Pine Bluff School District, but claims the District was supposed to reach out to her. There will be testimony at trial that Plaintiff would have been considered for any position for which she applied if she would have followed the application process, as is practice.

At trial, the District will likely have to admit it violated its RIF policy because it did not reach out to Plaintiff in an effort to recall her when math

ACE (PB) 0295

positions came open. At the same time, while the District may have violated its policies, this is not direct evidence of retaliation or discrimination, as the District had a custom and/or practice of asking RIF'd employees to tell the District if they had an interest to return, which Plaintiff never did.

Following Plaintiff's notice that she was placed in the RIF in April of 2015, she filed a grievance against Nellums for sexual harassment on June 3, 2015. Noteworthy, her grievance against Nellums for sexual harassment was filed after the District had already made its decision to non-renew her contract for the 2015-2016 school year. In Plaintiff's grievance against Nellums, she cites three alleged sexual encounters with Nellums: November 6, November 10 and November 21, 2014. Plaintiff described the encounters in detail in her deposition, none of which appear to be pervasive and severe enough to rise to the level of actionable discrimination as required by the Eighth Circuit. Such allegations of harassment included Nellums touching her shoulder and back and asking her about her personal life.

After Plaintiff's grievance was filed against Nellums for sexual harassment, the District initiated a very detailed investigation, led by Mary Harvey, the Director of Human Resources for the District, at the time. There were no findings that Dr. Nellums in any way sexually harassed Plaintiff. In fact, evidence suggested that the sexual harassment did not take place. The charge of sexual harassment was also investigated by the Arkansas Department of Education, Professional Licensure Standards Board, which also found that there was no evidence of sexual harassment by Principal Nellums against Dr. Alexander. There was actually evidence that any interaction between the two, such as phone calls, was consensual.

As for Plaintiff and her presentation at trial, she presents very well in terms of appearance, but we feel that she will not be well liked by a jury. Her claims of sexual harassment by Principal Nellums are almost baseless. It is very unlikely a jury would believe they took place, especially since some of the interactions were alleged to have taken place in public where other people were around, and no one could corroborate her assertions. A jury may very well find Plaintiff to be untruthful. Furthermore, Plaintiff exudes a great deal of entitlement. It was clear that she was upset that she could not run the math lab as she wanted and was downright insubordinate when her superiors asked her to perform other duties. It is worth noting that her contract required her to perform other duties as assigned. Simply put, Plaintiff wanted to perform the teaching duties that she wanted, not what the District needed.

C.     **Critical Legal Issues**
       a. **Analyze each cause of action**
       b. **Any liability to the causes of action**
       c. **Any defenses to the causes of action**
1.     **Retaliation by the Pine Bluff School District under both the Civil Rights Act**

ACE (PB) 0296

of 1964 (Title VII) and the Arkansas Civil Rights Act ("ACRA")

Plaintiff claims that the District failed to renew her contract or otherwise RIF'd her from employment because of her protected activities of reporting alleged sexual harassment by Principal Nellums.

It is undisputed that Plaintiff's contract was non-renewed/RIF'd in April of 2015, but she did not file a grievance against Principal Nellums until June 3, 2015, well after the decision had been made to non-renew/RIF her contract. Accordingly, she cannot claim that the adverse employment action was a result of any protected activity, since such activity was well after the fact. However, Plaintiff alleges that Principal Nellums and his assistant principals, acting on his behalf, made decisions and created a workplace in which she felt was retaliatory due to her denying Principal Nellums' advancements in the fall of 2014. For instance, she claims that the conflicting directives regarding the math lab, the multiple changes to her schedule, moving her from the math lab to teachers' classrooms, was all done because she denied Principal Nellums' advancements in November of 2014. However, the District will argue that this was not retaliation but was business judgment on the part of the District which was in no way intentional discrimination, a defense that has been upheld by the Eighth Circuit.

Next, Plaintiff claims retaliation in that the Pine Bluff School District failed to "recall" her pursuant to her RIF recall rights for the two years after the RIF, due to her protected activity of reporting allegations of alleged sexual discrimination against Nellums. It is undisputed the District never "reached out" to Dr. Alexander in an attempt to rehire her for any open math position, such as calling her or sending her letters seeking her employment, despite the fact the District was in need of math teachers. The District will have to admit it violated its RIF policy in this regard. However, District administrators will testify Dr. Alexander was free to apply at any point, as did other former employees of the District, including RIF'd employees. A mere violation of District policies does not automatically infer sexual discrimination, per case law.

Furthermore, in this case, Plaintiff's mother was and is the math chairperson for the high school and could have notified Plaintiff of any job opportunities that may have become available. Moreover, as required by state law, all math openings are posted online and readily available to Plaintiff, who is still a resident of Pine Bluff.

Plaintiff is now working for UAPB and in her capacity, she is on the high school campus in a math support role through a grant provided by the college. This would further infer that Plaintiff has been well aware of opportunities to teach at the Pine Bluff High School if she so desired.

ACE (PB) 0297

Finally, Plaintiff admitted in her deposition that she was never told by anyone that she was no longer to work at the Pine Bluff High School.  It was simply her belief that based on her negative interactions with Principal Nellums, and the findings by the District that no sexual harassment occurred, that she was not welcome to teach at the District.  She admitted that this was never told to her by the superintendent, Dr. Michael Robinson, or any other board member, who are all the decision makers in regards to employment of staff members.

2.      **Sexual Harassment by All Defendants**

The case of sexual harassment by Principal Nellums is quite weak. The United States Supreme Court has cautioned courts to be alert for workplace behavior that does not rise to the level of actionable harassment. For Principal Nellums' conduct to be considered sexual harassment, it must be conduct so extreme, and not merely rude or unpleasant, to affect the terms and conditions of employment.   Courts will look to the totality of circumstances, including the frequency and severity of the discriminatory conduct, or whether such conduct was physically threatening or humiliating conduct as opposed to mere offensive utterances, and whether the conduct unreasonably interfered with the employee's work performance. Courts in the Eighth Circuit have held that a male supervisor's inappropriate behavior towards a female employee was not sufficiently severe or pervasive so as to alter terms and conditions of her employment where the supervisor kissed the employee on two occasions, placed his arms around her on three occasions, and requested that she remove an ingrown hair from his chin.

Another case where the Eighth Circuit held that a hostile work environment was not present was where the supervisor rubbed the employee's back and shoulders, called her a "baby doll," and "accused her of not wanting to be one of his girls," and suggesting in a long-distance phone call "that she should be in bed with him," insinuating that she "could go further in the company if she got along with him."  Another Eighth Circuit case held no sexual harassment or hostile workplace where a plaintiff asserted that the harasser asked him to watch pornographic movies and to masturbate together, suggesting that the plaintiff would advance professionally if the plaintiff caused the harasser to orgasm, kissed the plaintiff on the mouth, grabbed the plaintiff's buttocks, and brushed the plaintiff's groin.  All of these acts were not considered to be actionable harassment.

Given the Eighth Circuit's holdings on these cases, it is very unlikely Judge Miller would allow Plaintiff's harassment claim against Principal Nellums to move forward when there were only three occasions of alleged harassment, which included actions such as Principal Nellums touching Plaintiff on the shoulder and back, asking her to come over to his house to see his deck ("it actually was a deck, we have photographic evidence of such, and

ACE (PB) 0298

it is well constructed and a reasonable person would want to view it"), and phone calls between Nellums and Alexander, which Alexander initiated and stayed on the line for multiple minutes.

### 3. Outrage

In order for Plaintiff to claim outrage against the Defendants, she must demonstrate elements:

i. The defendant intended to inflict emotional distress or should have recognized emotional distress as a likely result of conduct;

ii. Defendant's conduct was extreme, outrageous and utterly intolerable in a civilized community;

iii. The defendant's actions caused anguish or distress to the plaintiff; and

iv. The emotional distress suffered was severe and the type that no reasonable person should be expected to endure it.

For all the reasons listed above, it is very unlikely Plaintiff's outrage claim would proceed to a jury. The conduct here by Nellums could not reasonably consider to rise to the level of outrage and would likely be dismissed by the judge.

Plaintiff's final claims are contractual theories, in that she had an ongoing contractual relationship with the District. This will be defended by the clear reading of the contract, which stated it was for one (1) year only, pending Title I funds. The District will present credible testimony that the math lab for which Plaintiff was hired simply did not work due to its direct conflict with Arkansas instructional time law, and the need for the District to allocate Title I funds to other areas, such as state required instructional facilitators for the 2015-2016 school year.

### D. Issues of Concern

There is a very high probability that Defendant Nellums will be dismissed from this case on dispositive motion because no reasonable person could infer that his limited interactions with Plaintiff would rise to the level of either sexual harassment or that of a hostile workplace.

There is the concern that the District admittedly violated its RIF policy by not recalling Plaintiff to a position for which she was certified, math teacher. At the same time, a violation of a District personnel policy is not per se discrimination, as long as the employer does not unlawfully discriminate in doing so. Here, the District will testify that its failure to recall Plaintiff under the RIF policy was in no way related to her protected activity of complaints against Nellums, but simply because it was unaware she had any interest in returning to the District. This is one of Plaintiff's claims which could potentially survive summary judgment, as it is a

ACE (PB) 0299

fact question as to the motive of the District in not following its recall policy.

### E.   Damages

Title VII damages for an employer with 500+ employees is capped at $300,000.00. In addition to the $300,000.00 cap, Plaintiff could be awarded "back-pay," which includes not only wages but also the value of lost benefits, and is typically limited to when the Plaintiff mitigated her back-pay by receiving new employment. Plaintiff received new employment as a math specialist at the University of Arkansas at Pine Bluff roughly a year after her departure from the District, allowing her roughly $50,000.00 in back-pay. $300,000.00 cap on compensatory damages would include Plaintiff's claims for emotional distress. Plaintiff has not treated with any physician regarding emotional distress, and this appears to be a weak claim.

Plaintiff's attorneys' fees are recoverable under Title VII if Plaintiff is a prevailing party at trial. There are several factors a court will consider in determining a fee award, one of which is the amount of relief obtained by Plaintiff in comparison to that which was demanded. The court will also look to the hours expended by Plaintiff's counsel and whether they are reasonable and reflect appropriate billing judgment. Here, we would argue that Plaintiff unnecessarily protracted discovery in an attempt to inflate billing in the event of recovery.

### F.   Exposure

See Section III.

### G.   Punitive Damages Claim

Plaintiff has alleged punitive damages, but the standard is quite high and it is unlikely a judge would allow punitive damages to go before the jury. Generally, punitive damages require malice on the part of Defendants, or proof that Defendants intentionally pursued a course of conduct for the purpose of causing injury or damage. Furthermore, the amount of punitive damages is often lowered to be consistent with that of the compensatory award, if any.

### H.   Necessary Discovery

All discovery is complete.

### I.   Motion Practice

Motions for summary judgement will be filed prior to the deadline. It is our estimation Principal Nellums has a greater than 85% of being dismissed from the case on a motion for summary judgment, largely because his actions do not rise to sexual harassment and he was not a decision-maker in regards to Plaintiff's

760491-3

10

ACE (PB) 0300

continued employment with the District.   The District's motion for summary judgment is less favorable, but I would still estimate its success at greater than 65%. The less favorable outlook is because the District admittedly violated its RIF policy.

**J.**     **Anticipate Defense Costs**

    **a.  Administrative Level:** N/A

    **b.  Initial Investigation/Evaluation:** N/A

    **c.  Summary Judgment:** $10,000.00.  (2 Defendants)

    **d.  Trial:** $30,000.00.  (2 Defendants)

**III.**     **SETTLEMENT OPPORTUNITIES AND EARLY RESOLUTION**

**Please provide analysis and recommendations regarding early settlement.  Counsel should provide an explanation as to why the claim may or may not be a candidate for early resolution.  Counsel should outline a strategy for early resolution.  Counsel should make a recommendation regarding settlement value based on current knowledge of liability and damage exposure and likely costs of defense.**

Mediation is scheduled for December 14, 2017. A fair settlement for Plaintiff would be one year's lost wages of $50,000.00.  This leaves Plaintiff's attorneys' fees and cost which are unknown but likely exceed $100,000.00 at this time, at least based on his inflated hourly rate and unnecessary protraction of the discovery process.  A reasonable attorneys' fee at this time, prior to any trial preparation, would be around $30,000.00 to $50,000.00.  Accordingly, I would place settlement value of the case presently between $75,000.00 to $125,000.00.  This amount gives consideration to the overall verdict Plaintiff could receive at trial, including attorneys' fees, but also considers the fact that the entire case could be dismissed on a Motion for Summary Judgment. It is unlikely the judge would decide the Motion for Summary Judgment well in advance of trial, so trial preparations would need to take place pending the ruling.

ACE (PB) 0301

FROM: Cody Kees
TO: Kelly, Whit
CC: Khayyam M. Eddings; Jay Bequette
BCC:
SUBJECT: RE: Mediation; Alexander v. PBSD, et al.
They are attached.  Thanks


From: Kelly, Whit [mailto:Whit.Kelly@Chubb.com]
Sent: Wednesday, November 22, 2017 8:55 AM
To: Cody Kees <ckees@bbpalaw.com>
Cc: Khayyam M. Eddings <KEddings@fridayfirm.com>; Jay Bequette
<jbequette@bbpalaw.com>
Subject: RE: Mediation; Alexander v. PBSD, et al.


Cody,


Thank you for the report. Do you have a copy of Alexander's grievance
filed in June 2015 and a copy of the initial EEOC charge? I am reviewing
our file and noticed that we never received a copy. I need these
documents for our file.


I have set up a meeting with my manager to discuss this matter early
next week. I will be in touch after our meeting to discuss our strategy.
Best,


Chubb Logo

Whit Kelly, Esq.
Claims Specialist, North American Financial Lines Claims-EPL

11575 Great Oaks Way, Suite #300

ACE (PB) 0302

Alpharetta, GA 30022

O 678-795-4292

C 334-790-4449

E whit.kelly@chubb.com <mailto:whit.kelly@chubb.com>

ACE and Chubb are now one.

From: Cody Kees [mailto:ckees@bbpalaw.com]

Sent: Tuesday, November 21, 2017 12:09 PM

To: Kelly, Whit

Cc: Khayyam M. Eddings; Jay Bequette

Subject: RE: Mediation; Alexander v. PBSD, et al.

Whit,

Attached is the Preliminary Litigation Report.

From: Cody Kees

Sent: Saturday, October 28, 2017 10:39 AM

To: Whit Kelly (whit.kelly@chubb.com) <whit.kelly@chubb.com>

Cc: Khayyam M. Eddings <KEddings@fridayfirm.com>; Jay Bequette

<jbequette@bbpalaw.com>

Subject: FW: Mediation; Alexander v. PBSD, et al.

Whit,

Below is a request from opposing counsel to mediate the matter.

Remember, the MSJ deadline is December 4th, although it will be months

before we get a ruling prior to the April 2-6 trial date.    Mediating

ACE (PB) 0303

on one of the November dates may save some defense cost in preparing an MSJ, but by the December date we will have already filed our MSJs and that might give us some leverage in mediation, to the extent OA thinks our briefing is good and convincing.  Also, ground work for the MSJs has already started because of the fact intensive nature of the claims.

I tend to think we wait and mediate in December so Plaintiff will have seen our briefing, which I think will be a good reminder that case law is fairly conservative in the areas of hostile workplace/retaliation. Also, I don't know how long you need to get this case round tabled and ready for mediation.

With that said, Plaintiff will be submitting a demand at my request and I can assure you it will be inflated.  He has incurred legal fees of at least $100,000, although that is at a higher prevailing rate than AR courts are accustomed ($400/ hour) and he did excessive discovery.  I easily expect a $500,000 demand, if not higher, and at least based on initial discussions, doubt Plaintiff will settle for anything shy of $250,000.   Of course, I could be wrong, hence why mediation is always good to at least see where Plaintiff really stands.

As for case evaluation, let me know what particular areas you want feedback on.  I don't recall ever doing an official litigation report before on your cases.  I think the hostile workplace case is very weak, nothing the Plaintiff described that Principal Nellums did even comes close to what the 8th Circuit has held is actionable hostile workplace. Furthermore, the alleged actions were not known to the District until after Plaintiff had been non-renewed.

As for Plaintiff's non-renewal, we have very good legitimate and non-discriminatory reasons for the non-renewal; Plaintiff's position was eliminated due to funding cuts, poor program evaluations and that the lab she was managing could not be operated because of state instructional time laws.  Still, the concern remains that the PBSD did

not offer Plaintiff a position back in the District when they
non-renewed her contract, although she maintained recall rights to any
math position for 2 years.  She alleges this was retaliation, and she
can prove her protected activity of reporting alleged sexual harassment/
hostile work environment against Principal Nellums was known to the
decision makers who were ultimately responsible for recommending
employment to the school board of directors.   We violated our policy,
and while that can be a pretext for discrimination, if we violated the
policy for everyone, then it's not actionable retaliation.  As far as I
can tell thus far, the District never recalled any employees from the
non-renewal that Plaintiff was a part of, so any failure of our policies
was applied to everyone, not just Plaintiff.  Still, there is a concern
that at least some part of her retaliation claim could get to a jury.


I would estimate our success on our MSJ at greater than 65%.  I think
Principal Nellums has a greater than 85% of getting out on MSJ, largely
because his actions do not rise to sexual harassment and he was not a
decision maker in regard to Plaintiff's continued employment with the
District.


If the case were to proceed to trial, Plaintiff has lost wages of
roughly $50,000 and her emotional distress claim. She makes a poor
witness and I don't think a southern Arkansas jury will like her sob
story.  While she could have a small recovery, I don't think it exceeds
$50,000, at best, especially considering testimony from the District
that she was free to apply at the District anytime and even today.
That leaves Plaintiff's counsel's fee recovery, which has many factors,
one of which is the success he obtained for his client given his demand.
He will have records to reflect extensive work, so I would estimate a
judge at best would award $75,000-$100,000.  This award would be greater
if Plaintiff's award is greater.


Thanks,

ACE (PB) 0305

Cody

From: TK Smith [mailto:tksmith@justiceatwork.com]
Sent: Wednesday, October 25, 2017 10:36 PM
To: Khayyam M. Eddings <KEddings@fridayfirm.com>; Cody Kees
<ckees@bbpalaw.com>
Cc: Beth A. Barrett <beth@justiceatwork.com>
Subject: Mediation; Alexander v. PBSD, et al.

If you two want to mediate I would recommend the following to serve as
mediators: Frank Hamlin, Chris Gomlicker, Angelia Tolbert, or Judge
Henry Jones.

I'm available: Nov. 13-17; 20-22 and Dec. 14-15.

Let me know if any of this works for you.

TK Smith

Of Counsel

cid:image002.jpg@01D14E0F.360A84B0

1100 Peachtree Street, NE

Suite 500

ACE (PB) 0306

Atlanta, Georgia 30309

Telephone:  404-214-0120

Facsimile:  404-214-0125

Email: tksmith@JusticeAtWork.com <mailto:tksmith@JusticeAtWork.com>

JusticeAtWork.com
<https://urldefense.proofpoint.com/v2/url?u=http-3A__justiceatwork.com_&
d=DwMFAg&c=9TnM8cDdIndCtQknbqO0eA&r=ACAERSvur446JMoSgDtfzn28yD
7qCqe_A&m=DSwd3wOXFG44R4tJUMFifO4gpYfdfz91i5ENR8X3SEc&s=0ExcxRjc7XWwrDMt
JVWl27s0hMeBzT92H95930JP2Sk&e=>

Follow us on Facebook
<https://urldefense.proofpoint.com/v2/url?u=https-3A__www.facebook.com_B
arrettandFarahany&d=DwMFAg&c=9TnM8cDdIndCtQknbqO0eA&r=ACAERSvur446JMoSgD
tfzn92cGhhTEuz28yD7qCqe_A&m=DSwd3wOXFG44R4tJUMFifO4gpYfdfz91i5ENR8X3SEc&
s=VmpUGGDUtyG4SCkSCmaQygPzroeHkCenz5_UtcOEeaE&e=>  * Twitter
<https://urldefense.proofpoint.com/v2/url?u=https-3A__twitter.com_Barret
tFarahany&d=DwMFAg&c=9TnM8cDdIndCtQknbqO0eA&r=ACAERSvur446JMoSgDtfzn92cG
hhTEuz28yD7qCqe_A&m=DSwd3wOXFG44R4tJUMFifO4gpYfdfz91i5ENR8X3SEc&s=MM71Jp
eAUR8Z6fSfBXpKFSiRIbonZjhykKNFEcgD-HE&e=>  * LinkedIn
<https://urldefense.proofpoint.com/v2/url?u=http-3A__www.linkedin.com_co
mpany_barrett-2D-26-2Dfarahany-2Dllp-3Ftrk-3Dhb-5Ftab-5Fcompy-5Fid-5F824
652&d=DwMFAg&c=9TnM8cDdIndCtQknbqO0eA&r=ACAERSvur446JMoSgDtfzn92cGhhTEuz
28yD7qCqe_A&m=DSwd3wOXFG44R4tJUMFifO4gpYfdfz91i5ENR8X3SEc&s=swuE-UMgkwuf
lwhnN0BwZLo5vIeQ-BDpsLu0ySqfAtU&e=>  * Atlanta Employment Law Blog
<https://urldefense.proofpoint.com/v2/url?u=http-3A__www.barrettandfarah
any.com_blog_&d=DwMFAg&c=9TnM8cDdIndCtQknbqO0eA&r=ACAERSvur446JMoSgDtfzn
92cGhhTEuz28yD7qCqe_A&m=DSwd3wOXFG44R4tJUMFifO4gpYfdfz91i5ENR8X3SEc&s=2B
z-akIz_TLpR8fCqllyXGK5FATTV-TnztEAfBrZKPM&e=>

Note: In the absence of an engagement agreement or contract of
representation, no information contained in this email constitutes an
undertaking of representation or an expression of a binding legal
opinion.

ACE (PB) 0307

---

CONFIDENTIALITY NOTE: The information contained in this message and all attachments is privileged and confidential information intended only for the use of the individual or entity named above. If you are not the intended recipient, any review, use, distribution, copying or forwarding of this message is strictly prohibited. If you have received this message in error, please immediately notify us by email at tksmith@JusticeAtWork.com <mailto:tksmith@JusticeAtWork.com>  and/or call the sender at (404) 214-0120 and please delete the original and all copies of the message.

---

This email (including any attachments) is intended for the designated recipient(s) only, and may be confidential, non-public, proprietary, and/or protected by the attorney-client or other privilege. Unauthorized reading, distribution, copying or other use of this communication is prohibited and may be unlawful. Receipt by anyone other than the intended recipient(s) should not be deemed a waiver of any privilege or protection. If you are not the intended recipient or if you believe that you have received this email in error, please notify the sender immediately and delete all copies from your computer system without reading, saving, printing, forwarding or using it in any manner. Although it has been checked for viruses and other malicious software ("malware"), we do not warrant, represent or guarantee in any way that this communication is free of malware or potentially damaging defects. All liability for any actual or alleged loss, damage, or injury arising out of or resulting in any way from the receipt, opening or use of this email is expressly disclaimed.

FROM: Kelly, Whit
TO: Sara Collier; 'Bill Birch'
CC:
BCC:
SUBJECT: PINE BLUFF SD/CELESTE ALEXANDER/JY16J0554015
Bill and Sara,


This matter is set for mediation on December 14, 2017. In preparation of
mediation, Cody Kees of Bequette Billingsley sent me a report/analysis
of this matter. In reading the analysis, I was reminded that we still
had not received information from the Insured that I had initially
requested when this was first reported.


As you can see in the attached reservation of rights letter, I requested
a copy of the initial EEOC charge and any other correspondence from Ms.
Alexander or her attorney. I did not receive this information when I
first requested it from the Insured on October 20, 2016. Cody responded
to my initial inquiry and provided me with a copy of the lawsuit filed
by Alexander but no other documents. After reading the report, I
followed up with Cody to see if he had the information I initially
requested as it was referenced in his report. He provided me with a copy
of the initial grievance filed by Alexander and a copy of the charge
filed by Alexander.


Given this new information, I am reevaluating coverage for this matter.
To complete my coverage evaluation, I need a copy of the Notice of
Charge sent to the School District by the EEOC or a copy of any position
statements filed by the School District (or any other correspondence
sent by their previous counsel). Alternatively, if copies are not
available, the School District can provide us with a statement regarding
when they received the initial EEOC charge and whether a response was
filed and when.


If you have any questions or want to discuss further, I can be

available.


Best,


Chubb Logo

Whit Kelly, Esq.
Claims Specialist, North American Financial Lines Claims-EPL

11575 Great Oaks Way, Suite #300

Alpharetta, GA 30022
O 678-795-4292

C 334-790-4449
E whit.kelly@chubb.com <mailto:whit.kelly@chubb.com>

ACE and Chubb are now one.